Atkinson & DeBartolo, P.C.
The Galleria, 2 Bridge Avenue
Building Two, Third Floor
P.O. Box 8415
Red Bank, New Jersey 07701
732-530-5300
Attorneys for Alexander Figliolia
By: Bunce D. Atkinson, Esq.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

In re:

ALEXANDER FIGLIOLIA,

        Debtor.

Chapter 11

Case No. 17-20755

**FIRST MODIFIED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING THE LIQUIDATION CHAPTER 11 PLAN PROPOSED BY ALEXANDER FIGLIOLIA.**

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS ORIGINAL PLAN OF LIQUIDATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF LIQUIDATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

Dated: 11/29/18

Proponent     <u>Alexander Figliolia</u>

By:     <u>*/s/ Alexander Figliolia*</u>

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................ 5

    A.  Purpose of This Document .......................................................................................... 5

    B.  Confirmation Procedures ............................................................................................ 7

        1.  Time and Place of the Confirmation Hearing .................................................... 8

        2.  Deadline for Voting for or Against the Plan ...................................................... 8

        3.  Deadline for Objecting to the Confirmation of the Plan .................................... 8

        4.  Identity of Person to Contact for More Information Regarding the Plan .............. 8

    C.  Disclaimer .................................................................................................................. 8

II. BACKGROUND ............................................................................................................ 10

    A.  Description and History of the Debtor's Business ...................................................... 10

    B.  Principals/Affiliates of Debtor's Business ................................................................ 10

    C.  Management of the Debtor Before and During the Bankruptcy ................................. 10

    D.  Events Leading to Chapter 11 Filing ........................................................................ 10

    E.  Significant Events During the Bankruptcy ............................................................... 10

        1.  Bankruptcy Proceedings .................................................................................. 10

        2.  Other Legal Proceedings .................................................................................. 12

        3.  Actual and Projected Recovery of Preferential or Fraudulent Transfers .............. 13

        4.  Procedures Implemented to Resolve Financial Problems ..................................... 13

        5.  Current and Historical Financial Conditions ..................................................... 13

III. SUMMARY OF THE PLAN OF REORGANIZATION ............................................... 14

    A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan ............ 14

    B.  Unclassified Claims ................................................................................................. 14

        1.  Administrative Expenses and Fees .................................................................... 14

        2.  Priority Tax Claims .......................................................................................... 16

    C.  Classified Claims and Interests ................................................................................ 18

        1.  Classes of Secured Claims ................................................................................ 18

        2.  Classes of Priority Unsecured Claims ............................................................... 18

        3.  Class of General Unsecured Claims ................................................................... 20

    4.   Class(es) of Interest Holders ........................................................................................ 20

  D.  Means of Effectuating the Plan ........................................................................................ 21

    1.   Funding for the Plan ................................................................................................ 21

    2.   Post-confirmation Management ............................................................................. 21

    3.   Disbursing Agent ..................................................................................................... 21

  E.  Other Provisions of the Plan ............................................................................................ 22

    1.   Executory Contracts and Unexpired Leases ........................................................ 22

    2.   Changes in Rates Subject to Regulatory Commission Approval ...................... 22

    3.   Retention of Jurisdiction ......................................................................................... 22

    4.   Procedures for Resolving Contested Claims ....................................................... 22

    5.   Effective Date ........................................................................................................... 23

    6.   Modification .............................................................................................................. 23

  F.  Tax Consequences of Plan ............................................................................................... 23

  G.  Risk Factors ........................................................................................................................ 23

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ............................................... 24

  A.  Who May Vote or Object .................................................................................................. 25

    1.   Who May Object to Confirmation of the Plan .................................................... 25

    2.   Who May Vote to Accept/Reject the Plan .......................................................... 25

       a. What Is an Allowed Claim/Interest ................................................................... 24

       b. What Is an Impaired Claim/Interest .................................................................. 24

    3.   Who Is Not Entitled to Vote .................................................................................. 26

    4.   Who Can Vote in More Than One Class .............................................................. 26

    5.   Votes Necessary to Confirm the Plan ................................................................... 27

    6.   Votes Necessary for a Class to Accept the Plan ................................................. 27

    7.   Treatment of Nonaccepting Classes ..................................................................... 27

    8.   Request for Confirmation Despite Nonacceptance by Impaired Class(es) .......... 28

  B.  Liquidation Analysis ......................................................................................................... 28

  C.  Feasibility ............................................................................................................................ 30

V. EFFECT OF CONFIRMATION OF PLAN ............................................................................. 32

  A.  Discharge ............................................................................................................................ 32

  B.  Revesting of Property in the Debtor ............................................................................... 32

  C.  Modification of Plan .......................................................................................................... 33

D.  Post-Confirmation Conversion/Dismissal....................................................................................... 33

## I.

## INTRODUCTION

Alexander Figliolia is the debtor in a Chapter 11 Bankruptcy. On May 25, 2017 the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 bankruptcy petition under the United States Bankruptcy Code ("Code"), 11 *U.S.C.* § 101, et seq., Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS EXHIBIT A.

This is a liquidation plan. The Plan provides for the sale of the Proponents home located at 105 Middletown Road, Holmdel, New Jersey, which is co-owned by the non-debtor spouse, Janet Figliolia. Pending the sale, the Proponent proposes to pay $10,000.00 to an account of the existing first mortgage, and make quarterly payments for priority claims, and the Plan provides for payment in full of all secured creditors and priority claimants with a dividend to unsecured creditors from the sale of the home.

### A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

## READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO

<u>**KNOW ABOUT**</u>:

    (1)    WHO CAN VOTE OR OBJECT,

    (2)    THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,

    (3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

    (4)    WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,

    (5)    THE EFFECT OF CONFIRMATION, AND

    (6)    THE FEASIBILITY OF THE PLAN.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has

approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.    Confirmation Procedures**

Persons Potentially Eligible to Vote on the Plan

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. All shareholders of record as of the date of approval of this Disclosure Statement may vote on the Plan. The Ballot Form that you received does not constitute a proof of claim. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, U.S. Court House, (insert address). The Clerk of the Bankruptcy Court will not provide this information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND

7

INTEREST HOLDERS IN THIS CASE.

### 1.    Time and Place of the Confirmation Hearing

The hearing at which the Court will determine whether to confirm the Plan will take place on

_____13_____, at _____ {A.M./P.M.}, in Courtroom _____, United States

Bankruptcy Court, 402 East State Street, Trenton, New Jersey 08608.

### 2.    Deadline for Voting for or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

return the ballot in the enclosed envelope to Counsel for the Plan Proponent, Bunce D. Atkinson,

Esq., c/o Atkinson & DeBartolo, P.C., P.O. Box 8415, Red Bank, New Jersey 07701.

Your ballot must be received by _____15_____ or it will not be counted.

### 3.    Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon

Counsel for the Plan Proponent, Bunce D. Atkinson, Esq., c/o Atkinson & DeBartolo, P.C., P.O.

Box 8415, Red Bank, New Jersey 07701 by _____17_____.

### 4.    Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Counsel for

the Plan Proponent, Bunce D. Atkinson, Esq., c/o Atkinson & DeBartolo, P.C., P.O. Box 8415, Red

Bank, New Jersey 07701, phone number: (732) 530-5300.

### C.    Disclaimer

The financial data relied upon in formulating the plan is based on Debtor's financial records

and projections.  The information contained in this Disclosure Statement is provided by the Debtor.

The Plan Proponent represents that everything stated in the Disclosure Statement is true to the best

of the Proponent's knowledge.

PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.

## II.

## BACKGROUND

**A.    Description and History of the Debtor's Business**

The Debtor is an individual who is 74 years old.  He works as a consultant for Alex

Figliolia Water & Sewer, LLC, an entity in which he has no ownership interest.  The Limited

Liability Company is owned by the Debtor's brother.

**B.    Principals/Affiliates of Debtor's Business** N/A.

**C.    Management of the Debtor Before and During the Bankruptcy**.

The Debtor who is an individual will continue to manage his financial affairs

**D.    Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The Debtor filed his Chapter 11 petition on May 25, 2017 in an effort to save his home located

at 105 Middletown Road, Holmdel, New Jersey, which he owns jointly with his non-debtor wife,

Janet Figliolia.  At the time of the filing of the petition, a foreclosure action was pending in the

Superior Court of New Jersey entitled *Bank of New York Mellon v. Alexander Figliolia, et al.,* Docket

No. F-031570-16.  During the pendency of the foreclosure case, the Debtor was unsuccessful in

attempting to amicably resolve the lawsuit with the holder of the first mortgage with a mortgage

modification agreement.

**E.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this

case:

1. The Debtor filed his petition for relief under Chapter 11 on May 25, 2017.

2. The First Meeting of Creditors was conducted on August 17, 2017.

3. An Order was entered granting the employment of Atkinson & DeBartolo, P.C. as counsel for the Debtor on June 16, 2017.

4. An Order was entered granting the employment of Barbara Rizzi, CPA, as accountant for the Debtor on June 19, 2017.

5. An Order granting a motion to extend time to object to discharge filed by Robert Napolitano was entered on October 6, 2017.

6. An Order extending the time of exclusivity period for filing Debtor's Disclosure Statement and Plan for an additional 60 days until November 22, 2017 was entered on October 19, 2017.

7. An Order granting attorney fees and costs to Atkinson & DeBartolo, P.C. through August 28, 2017 was entered on November 2, 2017.

8. On November 3, 2017, Biagio and Filomena Napolitano filed an adversary proceeding, Case No. 17-01702, seeking to have a debt claimed to be due and owing to them declared nondischargeable.

9. On December 20, 2017, an Order was entered granting Debtor's motion to modify the Proof of Claim #10 of the State of New Jersey to a general unsecured claim.

10. On December 20, 2017, an Order was entered granting Debtor's motion to modify the Proof of Claim #1 of the State of New York to a general unsecured claim and expunging a portion of the claim.

11. On February 14, 2018, an Order was entered requiring the Debtor to file his Disclosure Statement and Plan by April 30, 2018.

12. On November 5, 2018 the hearing on the Amended Disclosure Statement and Plan

was extended to December 3, 2018.

13. On November 5, 2018, Atkinson & DeBartolo, P.C. filed a Fee Application for $21,660.00 plus costs of $210.62 for the period April 19, 2018 through October 31, 2018. The hearing on the application is scheduled for December 6, 2018.

The Court has approved the employment of the following professionals:

1. Atkinson & DeBartolo, P.C., as attorneys for the Debtor-In-Possession by Order entered June 16, 2017.

2. Barbara Rizza, CPA as the certified public account for the Debtor by Order entered June 19, 2017.

Currently, the following significant adversary proceedings and motions are still pending:

An adversary proceeding, Biagio Napolitano and Filomena Napolitano v. Alexander Figliolia, Adv. No. 17-20755, in which the Plaintiffs seek to have a debt declared nondischargeable pursuant to 11 *U.S.C.* § 523(a)(2) is presently pending. Default was entered on March 29, 2018. The parties have agreed to enter into a Consent Order to vacate the default to permit the Debtor to file an Answer or otherwise file a Notice of Motion seeking to dismiss the Complaint. The Debtor intends to file a motion to expunge or modify Claim 6-2 of the IRS, and Claim 13 of the City of New York.

## 2.    Other Legal Proceedings

In addition to the proceedings discussed above, the Debtor is currently involved in the following non-bankruptcy legal proceedings: The Debtor is a defendant in a case pending in the United States District Court, Eastern District of New York, *Campoverde v. Alex Figliolia Water & Sewer, LLC, et al.,* Case No. 15-cv-7353. The Debtor has consented to relief from the automatic stay to enable the United States District Court to determine whether the Debtor is individually liable, and if so, for what amount. In the event the Debtor is determined to be liable, the amount of the general

12

unsecured claim #15 of Campoverde will be as determined in the United States District Court.

### 3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers

There are no actual or projected recoveries of preferential transfers or fraudulent transfers.

### 4.    Procedures Implemented to Resolve Financial Problems

During the pendency of the Chapter 11, the Debtor experienced health issues that required surgery. This resulted in the Debtor not being able to perform as many hours of service as a consultant as he would have liked. As the Debtor has started to heal, he has increased his workload in an effort to increase his income for purposes effectuating a Plan. The Debtor earned approximately $425,000.00 per annum in 2014 and 2015. The Debtor is increasing his workload to attain this rate of income so he can make required payments under the Plan pending a sale of the home.

### 5.    Current and Historical Financial Conditions

The Debtor's primary asset is his single family home located at 105 Middletown Road, Holmdel, New Jersey, which he owns jointly with his non-debtor spouse, Janet Figliolia. The home has been assessed by the Township of Holmdel for real estate tax purposes at $4,270,400.00. In connection with the Chapter 11 proceeding, the Debtor obtained a market analysis from Bottone Realty Group, Inc. valuing the real property at $4,900,000.00. The home is located on 4.41 acres. The Debtor is current in the payment of the second mortgage, and is current on his monthly operating reports. Pending confirmation, the Debtor will make adequate protection payments to the first mortgagee of $10,000.00 per month commencing November 2018. Interest will continue to accrue at the contractual rate. Because the $10,000.00 is less than the regular monthly payment, the total debt will increase. Based upon the two most recently filed Monthly Operating Reports for the month of July 2018 and August 2018, the Debtor received $23,254.00 of income from Social Security in the month of July 2018, and $18,754.00 in August 2018. His income totaled $32,315.45 in February

13

2018 from his Social Security income of $2,226.20 together with $30,079.25 of consulting income,

$29,088.20 in March 2018, $26,754.70 in April and $39,254.20 in May 2018. A copy of the Debtor's

most recent Monthly Operating Report is attached hereto.

III.

SUMMARY OF THE PLAN OF REORGANIZATION

**A.      What Creditors and Interest Holders Will Receive Under the Proposed Plan**

The Plan classifies claims and interests in various classes. The Plan states whether each class

of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will

receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes. They are not considered impaired

and they do not vote on the Plan because they are automatically entitled to specific treatment

provided for them in the Bankruptcy Code.  As such, the Proponent has _not_ placed the following

claims in a class:

**1.      Administrative Expenses and Fees**

Administrative expenses are claims for fees, costs or expenses of administering the Debtor's

Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional

compensation requests pursuant to Sections 330 and 331 of the Code.  The Code requires that all

administrative expenses including fees payable to the Bankruptcy Court and the Office of the

United States Trustee which were incurred during the pendency of the case must be paid on the

Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists _all_ of the Debtor's unpaid administrative fees and expenses

("Compensation"), an estimate of future professional fees and other administrative claims and fees

14

and their treatment under the Plan:

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Atkinson & DeBartolo, PC | $27,000.00 | Subject to Court Approval of fees and costs. Paid in full on Effective Date unless otherwise agreed. | Administrative/Priority |
| Barbara Rizzi, CPA | $0.00 | Paid in full on Effective Date unless otherwise agreed | Administrative/Priority |
|  |  |  |  |
|  |  |  |  |
| Clerk's Office Fees | $0.00 | Paid in full on Effective Date |  |
| Office of U.S. Trustee Fees | $0.00 | Paid in full on Effective Date | Administrative/Priority |
|  | $27,000.00 |  |  |

### Court Approval of Professional Compensation Required:

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application.  Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan.  Failure to file such an application timely shall result in

15

the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute.

As indicated above, the Debtor will need to pay $$27,000.00 of administrative claims and fees on the effective date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

### 2.  Priority Tax Claims

Priority tax claims are certain unsecured income, employment, and other taxes described by section 507(a)(8) of the Code.[39] Unless the holder of such a section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim in regular installments paid [with interest as determined by applicable non-bankruptcy law] over a period not exceeding 5 years from the order for relief.

The following chart lists all of the Debtor's Section 507(a)(8)[40] priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| • State of NJ, Div. of Taxation<br>• Type of tax =TGI-EE for years<br>  2014 through 2016<br>• Date tax assessed =<br>  04/2015 through 04/2017 | Total amount claimed is $73,418.73 | • Pymt interval=quarterly based upon 5 year payout.<br>• Pymt amt/interval = quarterly, $4,056.36<br>• Begin date =04/01/2019<br>• End date = 5 years or by a balloon payment for the balance upon sale of the home.<br>• Interest Rate%=4%<br>• Total Payout Amount=100% upon sale of home. |
| • State of NJ, Div. of Taxation<br>• Type of tax =GIT-ER<br>• Date tax assessed =12/2014 through 12/2016 | $2,707.57 | • Pymt interval =quarterly based upon 5 year payout<br>• Pymt amt/interval =$149.58<br>• Begin date =04/01/2019<br>• End date =5 years or by a balloon payment for the balance upon sale of the home.<br>• Interest Rate %=4%<br>• Total Payout Amount% = 100% upon sale of the home subject to claim being expunged |
| • Internal Revenue Service<br>• Type of tax =1040, years 2013 through 2016<br>• Date tax assessed =12/1/2014 through 11/27/2017 | $436,807.46 including interest. | • Pymt interval =quarterly based upon 5 year payout<br>• Pymt amt/interval =$24,133.41<br>• Begin date =04/01/2019<br>• End date =$24,133.41 with a balloon payment for the balance upon sale of the home.<br>• Interest Rate% = 4%<br>• Total Payout Amount  % = 100% upon the sale of the home. |
| • Name = Internal Revenue Service<br>• Type of tax = FICA, FUTA, and civil penalties for period 3rd Quarter 2006, 2nd Quarter 2006, 1st Quarter 2007, 2nd Quarter 2008.<br>• Date tax assessed =12/28/2009 for civil penalties for FUTA and FICA | $235,933.88 (disputed) | • Pymt interval =quarterly<br>• Pymt amt/interval =$1,000.00<br>• Begin date =following determination of extent and validity of the claim<br>• End date =5 years after commencement of payment unless paid sooner by sale of house with a balloon payment<br>• Interest Rate %= 4%<br>• Total Payout Amount  % =100% of allowed claim as may be allowed upon sale of home, in the event payment is made Debtor shall seek a refund based upon not being obligated for these taxes. |

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes of creditors containing the holders of the Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of:<br>•Name =Bank of New York Mellon<br>•Collateral description =105 Middletown Road, Holmdel, New Jersey<br>•Collateral value =$4,900,000<br>•Claimed Priority of security int. =1st lien<br>•Principal owed =2,955,329.37.00<br>•Pre-pet.arrearage amount = $293,732.02<br>•Post-pet.arrearage amount = unknown, to be paid on sale<br>•Total claim  amount =$3,136,294.00 | No | Yes | • Pymt interval =monthly<br>• Pymt amt/interval =$10,000.00 per month<br>• Balloon pymt =$3,136.294.00 plus any accrued interest or escrow advances prior to confirmation, and any unpaid post-confirmation interest.<br>• Begin date =effective date of Plan<br>• End date =24 months after effective date of Plan or upon sale of home if sooner.<br>• Interest rate    =4%<br>• Total payout   % =100%<br>• Treatment of lien = Paid in full upon sale of home. |
| 2 | Secured Claim of:<br>•Name = Bank of NY Mellon<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$4,900,000.00<br>•Claimed Priority of security int. =2nd mortgage lien<br>•Principal owed =$1,486,207.62<br>•Pre-pet. arrearage amount =$0<br>•Post-pet. arrearage amount =$0<br>•Total claim amount =$1,490,684.90 | No | No | • Pymt interval =monthly<br>• Pymt amt/interval =$5,774.06<br>• Balloon pymt =$1,192,163.09<br>• Begin date =Upon confirmation<br>• End date =11/25/2030<br>• Interest rate    =3.5%<br>• Total payout   % =100%<br>• Treatment of lien =No change to the loan document, remain as second mortgage. |

| 3 | Secured Claim of:<br>•Name = IRS<br>•Collateral description<br>=105 Middletown Road, Holmdel, NJ<br>•Collateral value =$4,900,000.00<br>•Claimed Priority of security int. =3rd lien<br>•Principal owed =$10,900.00<br>•Pre-pet. arrearage amount =$0<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $10,900.00 | No | Yes | • Pymt interval =quarterly<br>•Pymt amt/interval=$389.28<br>• Balloon pymt= N/A<br>• Begin date =04/1/2019<br>• End date =sale of home or 5 years, whichever is sooner<br>• Interest rate    =4%<br>• Total payout - % =100% upon sale of home.<br>•Treatment of lien = remain as 3rd lien on real property |
| 4 | Secured Claim of:<br>•Name =City of NY<br>•Collateral description<br>=None listed<br>•Collateral value = $0<br>•Claimed Priority of security int. =None listed<br>•Principal owed =$375,000.00<br>•Pre-pet. arrearage amount =N/A<br>•Post-pet. arrearage amount =N/A<br>•Total claim amount =$375,000.00 | No | Yes<br>Debtor will seek to modify claim to a general unsecured claim | • Pymt interval =None<br>• Pymt amt/interval =None<br>• Balloon pymt =None<br>• Begin date =N/A<br>• End date =N/A<br>• Interest rate    =N/A<br>• Total payout _% =N/A<br>• Treatment of lien =No lien |

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7)[53] priority unsecured claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| N/A | Priority unsecured claim pursuant to<br>• Total amt of claims = | N/A | • Paid in full in cash on Effective Date |
| N/A | Priority unsecured claim pursuant to<br>• Total amt of claims = | N/A | • Paid in full in cash on Effective Date |

### 3.    Class of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code

Section 507(a). The following chart identifies this Plan's treatment of the class containing all of

Debtor's general unsecured claims:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 5 | General unsecured claims<br>• Total amt of claims =$8,408,120.40 | YES | • Pymt interval =One time<br>• Pymt amt/interval =$50,000.<br>• Begin date =3 years following effective date of Plan or upon sale of home remaining from the sale.<br>• End date =2 years following effective date of Plan or upon sale of home if there is sufficient proceeds from Debtor's share of the sale<br>• Interest rate    =0%<br>• Total payout % =$50,000.00 upon sale of home from Debtor's interest after payment of his exemption. |

### 4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor

are interest holders. If the Debtor is a partnership, the interest holders include both general and

limited partners. If the Debtor is an individual, the Debtor is the interest holder. The following

chart identifies the Plan's treatment of the class[61] of interest holders:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 6 | Alexander Figliolia | No | Retain ownership interest of home with non-debtor spouse, and exempt property. |

## D.    Means of Effectuating the Plan

### 1.    Funding for the Plan

The Plan will be funded by the following: The Debtor will utilize his Social Security income and his consulting income from Alex Figliolia Water & Sewer, LLC to fund his Plan for the monthly and quarterly payments. A balloon payments will be made from the sale of the Debtor's interest in the marital home, which is co-owned by his wife, Janet Figliolia. Janet Figliolia will consent to the sale. The property will be listed for sale within 45 days of confirmation, and shall be sold within 12 months following confirmation. If a contract of sale is pending at the end of 12 months, and the closing is scheduled to take place within 60 days, the date of sale will be extended to pre-contract date. If a contract is not obtained within 12 months, the property will be sold at public auction within 60 days. The first mortgage holder shall be entitled to credit bid. Failure to conduct an auction will permit the first mortgage holder to file a certification of default and obtain immediate stay relief,.

### 2.    Post-confirmation Management

By the Debtor, Alexander Figliolia

### 3.    Disbursing Agent

The Debtor, Alexander Figliolia, shall act as the disbursing agent for the purpose of making

all distributions to the IRS for its secured claim, the priority creditors and the general unsecured class provided for under the Plan. The Plan Proponent will pay direct the first and second mortgage. The Disbursing Agent shall be compensated as set forth in the Plan.

## E.    Other Provisions of the Plan

### 1.    Executory Contracts and Unexpired Leases

The Plan provides that all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor in writing or previously assumed by Court Order, shall be deemed rejected. All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

### 2.    Changes in Rates Subject to Regulatory Commission Approval

This Debtor is not   subject to governmental regulatory commission approval of its rates.[66]

### 3.    Retention of Jurisdiction

The Court will retain jurisdiction as provided in III, C, of the Plan.

### 4.    Procedures for Resolving Contested Claims

The Debtor and/or the Disbursing Agent shall have 60 days subsequent to confirmation to object to the allowance of claims, except for the claim of Campoverde which is being determined by the United States District Court for the Eastern District of New York. The Proponent has reviewed the claims that have been filed. The

Proponent intends to object or cause the Disbursing Agent to object to the following number and amounts of claims in each class:

22

1. The IRS priority Claim 6-3.

2. The secured claim of the City of New York.

### 5.    Effective Date

The Plan will become effective on the Effective Date, which is the date on which the order of confirmation becomes final.

### 6.    Modification

The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

## F.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences that the Plan will have on the Debtor's tax liability: The Debtor does not believe there are any tax consequences to his Plan.

## G.    Risk Factors

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary

with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation: Because the real property is worth more than the three secured claims, and the Debtor's wife and co-owner has consented to the sale, and following the sale Debtor will have sufficient income to pay any remaining priority and unsecured Plan payments.  The primary risk is the Debtor's age of 74 and the Plan provides for him to continue consulting for 5 years.

## IV.

### CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.   The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible.  These requirements are not the only requirements for confirmation.

## A.   Who May Vote or Object

### 1.   Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.   Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

#### a.   What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS OCTOBER 4, 2017.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

#### b.   What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a

class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that classes 1, 3, 4 and 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class 2 is unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who Is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8)[73]; and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an

unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8.).

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (b) in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (b) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown".   The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 *U.S.C.* §1129(b) and applicable case law.

27

8.      **Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The party proposing this Plan asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

**B.      Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.   The Plan Proponent maintains that this requirement is met here for the following reasons:

In the event the Plan is not confirmed, and the case is converted to a Chapter 7, and the holder of the first mortgage and/or the second mortgage holder will seek relief from the automatic stay.  Based upon the lack of equity in the property that could pay a dividend to general unsecured creditors after

payment of administrative expenses, it is believed a Chapter 7 Trustee would abandon his interest in the property.  A Chapter 7 Trustee could not sell the home which is owned jointly with the non-debtor spouse, Janet Figliolia, unless the Trustee was successful in a lawsuit brought pursuant to 11 USC 363(h).  Based upon the lack of equity, the Trustee would not do so. The case would be a no asset case with priority creditors and unsecured creditors receiving nothing.  The IRS as the holder of a third lien would be foreclosed, as could the second mortgage holder. Under the Debtor's Plan, the first and second mortgages will be paid in full, the IRS third lien will be paid in full, and allowed priority claims will be paid in full.  Additionally, there will be a dividend of $50,000.00 to general unsecured creditors from the sale of the house after payment of Debtor's exemption. If there is insufficient money available from Debtor's share of the home, the payment to unsecured creditors will be made 5 years following confirmation.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation:

**Assets**

| | | | |
|---|---|---|---|
| Real property (owned jointly w/Janet Figliolia, his wife who would be entitled to 50% of any net equity). | | | $4,900,000.00 |
| | | | |
| Minus: 1st Mortgage | | $3,136,294.00 | |
| 2nd Mortgage | | $1,490,684.00 | |
| IRS Lien | | $    10,000.00 | |
| Any exemption | | $    18,000.00 | |
| Costs of Sale | $294,000.00 | | |
| | | | |
| Net equity | | | $        0.00 |
| | | | |
| Personal Property | $10,500.00 | | |
| Watch -exempt | $ 5,000.00 | | |
| Clothing-exempt | $ 5,000.00 | | |
| Used golf clubs-exempt | $    500.00 | | |

Net Equity                                            -$    (48,978.00)

**Liabilities**

Priority Claims:
Chapter 7 admin. expenses    $ 0.00

Chapter 11 admin. Expenses $30,000.

Other priority claims        $ 0.00

Total priority claims                    $30,000.00

Amount available for unsecured claims
(total assets minus priority claims)     $       0.00

Total unsecured claims                   $8,408,120.40
 Estimated dividend in Chapter 7
(amount available - unsecured claims)    0%

**C.    Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date   $27,000.00

**To Pay:** Administrative claims                    -27,000.00

**To Pay:** Statutory costs & charges                -    0.00

**To Pay:** Other Plan Payments due on Effective Date  -    0.00

Balance after paying these amounts . . . . . . .    $____0.00

30

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $ 8,958.58 | Cash in DIP Account September 30, 2018 |
| +18,041.42 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| + | Borrowing |
| + | Capital Contributions |
| + | Other |
| + 27,000.00 | Total |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent believes that this second aspect of the feasibility requirement is met for the following reasons: The Debtor will have sufficient income from his Social Security income and his consulting for Alex Figliolia Water & Sewer LLC to fund his Plan pending the sale of the home. During the years 2014 and 2015, the Proponent had income as a consultant of approximately $468,000.00 per annum plus Social Security income. Because the company for which he provides consulting work is owned by his brother, there is little likelihood that the Plan Proponent will be unable to continue to perform consulting services. Additionally, the Plan Proponent is dedicating his Social Security to the Plan. It is unlikely to decrease in the next five (5) years.

In summary, the Plan proposes to pay $20,576.09 each month pending the sale of the home. Upon sale of the home, the Debtor will need a maximum of $10,576.09. It will be less if priority payments are paid from the closing. As Debtor's financial projections demonstrate, Debtor will have an average cash flow, after paying living expenses and post-confirmation taxes, of $30.75 during the first year of the Plan. The final Plan payment is expected to be paid in twelve (12) months from January 1, 2019 upon sale of the home. The Plan proponent contends that Debtor's financial projections are feasible in light of the financial records maintained by the debtor prior to and during

the pendency of the bankruptcy case. Debtor's average monthly cash flow, after paying operating expenses and post-confirmation taxes, during the bankruptcy case is $2,500.00. Furthermore, as discussed earlier in this Disclosure Statement at Section (II.E.4), Debtor has implemented procedures to increase income and has obtained consent of the non-debtor spouse to sell the jointly owned home.

Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

## V.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

The Plan provides that upon confirmation of the Plan, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141. However, any liability imposed by the Plan will not be discharged. If Confirmation of the Plan does not occur or if, after Confirmation occurs, the Debtor elects to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate. The provisions of the Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

### B.    Revesting of Property in the Debtor

Except as provided in the Plan, the confirmation of the Plan revests all of the property of

the estate in the Debtor.

## C.    Modification of Plan

The Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan before confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

## D.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b).   If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.[91]

Date: 11/29/18

/s/ Alexander Figliolia
**ALEXANDER J. FIGLIOLIA**

## Alex Figliolia Cash Flow Analysis

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 |
| Social Security Income | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 |
| Total Income | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 |
| 1st Mortgage - 3,126,294 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| 2nd Mortgage - 1,192,163.09 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 |
| IRS 389.28 Monthly 10,500 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NJ 4,055.36 Quarterly - 73,418.73 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 |
| NJ 149.58 Quarterly GIT-ER - 2,707.57 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 |
| IRS 24,133.41 Quarterly 1040 - 436,807.46 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly - 235,933.88 disputed | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec Claims 50,000 - 8,408,120.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 |
| Home Insurance 35,950.00 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Household Repairs | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 |
| Current Taxes | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Total Expense | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 | 41,223.45 |
| Net Cash Flow | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 | 30.75 |

## Alex Figliolia Cash Flow Analysis

| | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 |
| Social Security Income | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 |
| Total Income | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 |
| Rent: | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 |
| IRS 389.28 Monthly 10,900 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NJ 4,056.36 Quarterly | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 |
| NJ 149.58 Quarterly GIT-ER | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 |
| IRS 24,133.41 Quarterly 1040 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec Claims 50,000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Current Taxes | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Total Expense | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 |
| Net Cash Flow | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 |

## Alex Figliolia Cash Flow Analysis

| | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 |
| Social Security Income | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 |
| Total Income | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 |
| Rent | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 |
| IRS 389.28 Monthly | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NJ 4,056.36 Quarterly | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 |
| NJ 149.58 Quarterly GIT-ER | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 |
| IRS 24,133.41 Quarterly 1040 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec Claims 50,000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Current Taxes | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Total Expense | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 | 38,429.06 |
| Net Cash Flow | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 | 2,825.14 |

**Alex Figliolia Cash Flow Analysis**

| | Month 37 | Month 38 | Month 39 | Month 40 | Month 41 | Month 42 | Month 43 | Month 44 | Month 45 | Month 46 | Month 47 | Month 48 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 |
| Social Security Income | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 |
| Total Income | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 | 41,254.20 |
| Rent | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 |
| IRS 389.28 Monthly | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NI 4,056.36 Quarterly | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 |
| NJ 149.58 Quarterly GIT-ER | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 |
| IRS 24,133.41 Quarterly 1040 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec Claims 50,000 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 |
| Utilities | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Current Taxes | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Total Expense | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 | 40,512.39 |
| Net Cash Flow | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 | 741.81 |

**Alex Figliolia Cash Flow Analysis**

| | Month 49 | Month 50 | Month 51 | Month 52 | Month 53 | Month 54 | Month 55 | Month 56 | Month 57 | Month 58 | Month 59 | Month 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 |
| Social Security Income | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 | 2,254.20 |
| **Total Income** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** | **41,254.20** |
| Rent | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 |
| IRS 389.28 Monthly | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NJ 4,056.36 Quarterly | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 | 1,352.12 |
| NJ 149.58 Quarterly GIT-ER | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 | 49.86 |
| IRS 24,133.41 Quarterly 1040 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec Claims 50,000 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 |
| Utilities | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Current Taxes | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **Total Expense** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** | **40,512.39** |
| **Net Cash Flow** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** | **741.81** |

**Miscellaneous:**

17-20755-MBK Alexander J Figliolia

Type: bk                    Chapter: 11 v                    Office: 3 (Trenton)
Assets: y                   Judge: MBK                      Case Flag: EXTOBDIS

## U.S. Bankruptcy Court

## District of New Jersey

Notice of Electronic Filing

The following transaction was received from Bunce Atkinson entered on 11/28/2018 at 9:08 AM EST and filed on 11/28/2018
**Case Name:**       Alexander J Figliolia
**Case Number:**     17-20755-MBK
**Document Number:** 107

**Docket Text:**
Monthly Operating Report for Filing Period October 2018 filed by Bunce Atkinson on behalf of Alexander J Figliolia. (Atkinson, Bunce)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**October 2018 Op Rept.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1002741850 [Date=11/28/2018] [FileNumber=52095751
-0] [01b12b82ddcb8ca7191fd08ffe8642047bbd6470cc3afc107f444a43e0a5b2485
56a45aea5db771c923ee376ecaaac6cbc70834f00067e87ea22826f1a9153bf]]

**17-20755-MBK Notice will be electronically mailed to:**

Bunce Atkinson on behalf of Accountant Barbara Rizzi
bunceatkinson@aol.com

Bunce Atkinson on behalf of Attorney Atkinson & DeBartolo, PC
bunceatkinson@aol.com

Bunce Atkinson on behalf of Attorney Atkinson & DeBartolo, PC
bunceatkinson@aol.com, NJ09@ecfcbis.com,maraujo@atkinsondebartolo.org

Bunce Atkinson on behalf of Debtor Alexander J Figliolia
bunceatkinson@aol.com

Lauren Bielskie on behalf of U.S. Trustee U.S. Trustee
lauren.bielskie@usdoj.gov

Lauren Bielskie on behalf of U.S. Trustee United States Trustee
lauren.bielskie@usdoj.gov

Melissa N. Licker on behalf of Creditor THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK as Trustee for CHL Mortgage Pass-Through Trust 2003-48 Mortgage Pass-Through Certificates, Series 2003-48 by Nationstar Mortgage LLC, the servici

Sean M. O'Brien on behalf of Creditor THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORKSUCCESSOR INDENTURED TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS INDENTURED TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-K
sobrien@flwlaw.com

Scott C. Pyfer on behalf of Creditor Biagio Napolitano
scott@pyferlawgroup.com, scottpyfer@gmail.com

Scott C. Pyfer on behalf of Creditor Filomena Napolitano
scott@pyferlawgroup.com, scottpyfer@gmail.com

Scott C. Pyfer on behalf of Creditor Robert Napolitano
scott@pyferlawgroup.com, scottpyfer@gmail.com

Scott C. Pyfer on behalf of Plaintiff Biagio Napolitano
scott@pyferlawgroup.com, scottpyfer@gmail.com

Scott C. Pyfer on behalf of Plaintiff Filomena Napolitano
scott@pyferlawgroup.com, scottpyfer@gmail.com

Brandon David Sherr on behalf of Creditor Segundo Marcial Saeteros-Campoverde
bsherr@zellerlegal.com, mgutierrez@zellerlegal.com,jazeller@zellerlegal.com

Rebecca Ann Solarz on behalf of Creditor THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORKSUCCESSOR INDENTURED TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS INDENTURED TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-K
rsolarz@kmllawgroup.com

U.S. Trustee
USTPRegion03.NE.ECF@usdoj.gov

**17-20755-MBK Notice will not be electronically mailed to:**

UNITED STATES BANKRUPTCY COURT
_____ DISTRICT OF _____

In re _Alex Figlidia_                                Case No. _17-20755 MBK_
                                                     Reporting Period: _10/1/18 - 10/31/18_

MONTHLY OPERATING REPORT
(INDIVIDUAL WAGE EARNERS)
File with Court and submit copy to United States Trustee within 20 days after end of month

Include FORM MOR-1 (INDV) if debtor is a wage earner.
Substitute FORM MOR-2 (RE) for MOR-2 if case is a Single Asset Real Estate case.
Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | Form No. | | |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 (INDV) | | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | BR. | |
| Copies of bank statements | | B Stat. | |
| Cash disbursements journals | | GL | |
| Statement of Operations | | PL | ✓ |
| Balance Sheet | | BS | ✓ |
| Status of Postpetition Taxes | | | |
| Copies of IRS Form 6123 or payment receipt | | | |
| Copies of tax returns filed during reporting period | | | |
| Summary of Unpaid Postpetition Debts | | | |
| Listing of aged accounts payable | | | |
| Accounts Receivable Reconciliation and Aging | | | |
| Debtor Questionnaire | | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that the documents attached to this report
are true and correct to the best of my knowledge and belief.

X _Alejandro Figlialia_                              Date    _11/19/2018_
Signature of Debtor


_____
Signature of Joint Debtor                            Date


_____
Signature of Authorized Individual*                  Date


_____
Printed Name of Authorized Individual                Title of Authorized Individual


*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM MOR (INDV)
(9/99)

In re _Alex Fieldia_
        Debtor

Case No. _17-20755 / MBK_
Reporting Period: _10/1/18   10/31/18_

### INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS - continuation sheet

| BREAKDOWN OF "OTHER" CATEGORY | Current Month Actual | Cumulative Filing to Date Actual |
|---|---|---|
| **Other Income** | | |
| Commissions Konsult | 17,500.00 | 309,263.50 |
| **Other Taxes** | | |
| Fed | 0 | 9,446.00 |
| **Other Ordinary Disbursements** | | |
| Bank Charge | .75 | 17.75 |
| **Other Reorganization Expenses** | | |
| | | |
| | | |
| | | |
| | | |

FORM MOR-1 (INDV) (CON'T)
(9/99)

In re: _Alex Figlidlia_
         Debtor

Case No. _17-20755/MBK_
Reporting Period _10/1/18 - 10/31/18_

## INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS
( This Form must be submitted for each Bank Account maintained by the Debtor)

Amounts reported should be per the debtor's books, not the bank statement. The beginning cash should be the ending cash from the prior month or, if this is the first report, the amount should be the balance on the date the petition was filed. Attach the bank statements and a detailed list of all disbursements made during the report period that includes the date, the check number, the payee, the transaction description, and the amount. A bank reconciliation must be attached for each account. [See MOR-1 (INDV) (CONT)]

| | | |
|---|---|---|
| Cash - Beginning of Month | 9,8108.93 | 145,053.84 |
| | | |
| Wages (Net) | | |
| Interest and Dividend Income | | |
| Alimony and Child Support | | |
| Social Security and Pension Income | 2,254.20 | 41,015.00 |
| Sale of Assets | | |
| Other Income (attach schedule) _Commission_ | 17,500.00 | 309,853.50 |
| Total Receipts | 19,754.20 | 350,868.50 |
| | | |
| Mortgage Payment(s) | 5,974.06 | 98,159.02 |
| Rental Payment(s) | | |
| Other Secured Note Payments | | |
| Utilities | 5,582.29 | 83,810.00 |
| Insurance | | |
| Auto Expense | 768.94 | 63,984.93 |
| Lease Payments | | |
| IRA Contributions | | |
| Repairs and Maintenance | | 4,995.92 |
| Medical Expenses | | |
| Household Expenses | 2,515.00 | 47,1627.31 |
| Charitable Contributions | | |
| Alimony and Child Support Payments | | |
| Taxes - Real Estate | | |
| Taxes - Personal Property | | |
| Taxes - Other (attach schedule) | | 9,440.00 |
| Travel and Entertainment | | |
| Gifts | | |
| Other (attach schedule) _Bank Charge_ | .75 | 11.75 |
| Total Ordinary Disbursements | 14,7041.017 | 303,891.53 |
| | | |
| Professional Fees | 0 | 80,440.53 |
| U. S. Trustee Fees | 974.30 | 4,550.00 |
| Other Reorganization Expenses (attach schedule) | | |
| Total Reorganization Items | 974.30 | 32,040.52 |
| Total Disbursements (Ordinary + Reorganization) | 15,015.34 | 1340,132.00 |
| | | |
| Net Cash Flow (Total Receipts - Total Disbursements) | 4,738.86 | 10,736.49 |
| Cash - End of Month (Must equal reconciled bank statement) | 13,401.14 | 155,134.28 |

FORM MOR-1(INDV)
(9/99)

4:54 PM

11/21/18

## Alex Figliolia
## Reconciliation Summary
### Amboy Bank DIP, Period Ending 10/31/2018

|  | Oct 31, 18 |
|---|---|
| **Beginning Balance** | 8,983.83 |
|     Cleared Transactions | |
|         Checks and Payments - 9 Items | -13,264.59 |
|         Deposits and Credits - 3 Items | 17,500.00 |
|     Total Cleared Transactions | 4,235.41 |
| **Cleared Balance** | 13,219.24 |
|     Uncleared Transactions | |
|         Checks and Payments - 1 Item | -150.00 |
|     Total Uncleared Transactions | -150.00 |
| **Register Balance as of 10/31/2018** | 13,069.24 |
|     New Transactions | |
|         Deposits and Credits - 1 Item | 7,000.00 |
|     Total New Transactions | 7,000.00 |
| **Ending Balance** | 20,069.24 |

4:54 PM
11/21/18

# Alex Figliolia
## Reconciliation Detail
### Amboy Bank DIP, Period Ending 10/31/2018

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 8,983.83 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 9 items** | | | | | | |
| Check | 10/01/2018 | 206 | Chapel Hill Cleaners | X | -165.00 | -165.00 |
| Check | 10/15/2018 | dm | Verizon | X | -1,140.97 | -1,305.97 |
| Check | 10/17/2018 | dm | CMS Medicare Pay... | X | -503.40 | -1,809.37 |
| Check | 10/22/2018 | 208 | United States Truste... | X | -974.30 | -2,783.67 |
| Check | 10/25/2018 | dm | New Jersey Natural ... | X | -1,204.27 | -3,987.94 |
| Check | 10/25/2018 | 228 | Horizon Blue Cross ... | X | -265.54 | -4,253.48 |
| Check | 10/30/2018 | dm | Bank of America | X | -5,774.06 | -10,027.54 |
| Check | 10/30/2018 | dm | First Energy | X | -2,898.00 | -12,925.54 |
| Check | 10/30/2018 | dm | First Energy | X | -339.05 | -13,264.59 |
| Total Checks and Payments | | | | | -13,264.59 | -13,264.59 |
| **Deposits and Credits - 3 items** | | | | | | |
| Deposit | 10/04/2018 | | | X | 6,500.00 | 6,500.00 |
| Deposit | 10/19/2018 | | | X | 6,000.00 | 12,500.00 |
| Deposit | 10/26/2018 | | | X | 5,000.00 | 17,500.00 |
| Total Deposits and Credits | | | | | 17,500.00 | 17,500.00 |
| Total Cleared Transactions | | | | | 4,235.41 | 4,235.41 |
| **Cleared Balance** | | | | | 4,235.41 | 13,219.24 |
| **Uncleared Transactions** | | | | | | |
| **Checks and Payments - 1 item** | | | | | | |
| Check | 10/26/2018 | 229 | Chapel Hill Cleaners | | -150.00 | -150.00 |
| Total Checks and Payments | | | | | -150.00 | -150.00 |
| Total Uncleared Transactions | | | | | -150.00 | -150.00 |
| **Register Balance as of 10/31/2018** | | | | | 4,085.41 | 13,069.24 |
| **New Transactions** | | | | | | |
| **Deposits and Credits - 1 item** | | | | | | |
| Deposit | 11/16/2018 | | | | 7,000.00 | 7,000.00 |
| Total Deposits and Credits | | | | | 7,000.00 | 7,000.00 |
| Total New Transactions | | | | | 7,000.00 | 7,000.00 |
| **Ending Balance** | | | | | 11,085.41 | 20,069.24 |

11/20/2018



Amboy Bank | Checking account

**SENIOR CHECKING –** ⬛⬛⬛ ✔

## Transactions

🗓 Scheduled    ⊙ Pending    ◉ Posted

| | Date | Description | Amount | Balance |
|---|---|---|---|---|
| ◉ | Nov 16, 2018 | DEPOSIT | 7,000.00 | 19,241.69 |
| ◉ | Nov 09, 2018 | CHECK 209 | -250.00 | 12,241.69 |
| ◉ | Nov 09, 2018 | CHECK 229 | -150.00 | 12,491.69 |
| ◉ | Nov 08, 2018 | 5662220 AMERICAN-WATER UTIL-PMNT | -575.60 | 12,641.69 |
| ◉ | Nov 07, 2018 | 9496009 PMNTUS SVC FEE SERVICEFEE | -1.95 | 13,217.29 |
| ◉ | Oct 31, 2018 | CHECK 228 | -265.54 | 13,219.24 |
| ◉ | Oct 30, 2018 | XXXXX2013 Bank of America MORTGAGE | -5,774.06 | 13,484.78 |
| ◉ | Oct 30, 2018 | 100009694421 FIRSTENERGY OPCO FE ECHECK | -2,898.00 | 19,258.84 |
| ◉ | Oct 30, 2018 | 100054438609 FIRSTENERGY OPCO FE ECHECK | -339.05 | 22,156.84 |
| ◉ | Oct 29, 2018 | CHECK 208 | -974.30 | 22,495.89 |
| ◉ | Oct 26, 2018 | DEPOSIT | 5,000.00 | 23,470.19 |
| ◉ | Oct 25, 2018 | 13855320102418 NJ NATURALGAS EBILL | -1,204.27 | 18,470.19 |
| ◉ | Oct 19, 2018 | CHECK 206 | -165.00 | 19,674.46 |
| ◉ | Oct 19, 2018 | DEPOSIT | 6,000.00 | 19,839.46 |
| ◉ | Oct 17, 2018 | CMS MEDICARE PAYMENT 0207 | -503.40 | 13,839.46 |
| ◉ | Oct 15, 2018 | 7852368161 FIS*VERIZON BILL PAY | -1,137.47 | 14,342.86 |
| ◉ | Oct 15, 2018 | 7852368162 BILLMATRIX BILLPAYFEE | -3.50 | 15,480.33 |
| ◉ | Oct 05, 2018 | DEPOSIT | 6,500.00 | 15,483.83 |
| ◉ | Sep 28, 2018 | 100054438609 FIRSTENERGY OPCO FE ECHECK | -139.98 | |
| ◉ | Sep 28, 2018 | 100009694421 FIRSTENERGY OPCO FE ECHECK | -2,898.00 | |
| ◉ | Sep 27, 2018 | XXXXX2013 Bank of America MORTGAGE | -5,774.06 | |
| ◉ | Sep 26, 2018 | Check #205 | -265.54 | |
| ◉ | Sep 21, 2018 | Deposit | 6,000.00 | |
| ◉ | Sep 17, 2018 | 7217404 PMNTUS SVC FEE SERVICEFEE | -1.95 | |
| ◉ | Sep 17, 2018 | 5650442 AMERICAN-WATER UTIL-PMNT | -377.25 | |
| ◉ | Sep 17, 2018 | CMS MEDICARE PAYMENT 0204 | -503.40 | |
| ◉ | Sep 11, 2018 | Check #201 | -182.00 | |
| ◉ | Sep 07, 2018 | Deposit | 5,500.00 | |
| ◉ | Sep 04, 2018 | 9507285890001 VERIZON VZ BillPay | -560.05 | |
| ◉ | Sep 04, 2018 | 13526218083018 NJ NATURALGAS EBILL | -628.87 | |

11/20/2018

Amboy Bank | Checking account

| | Date | Description | Amount | Balance |
|---|---|---|---|---|
| | Aug 31, 2018 | 100054438609 FIRSTENERGY OPCO FE ECHECK | -291.07 | |
| | Aug 31, 2018 | 100009694421 FIRSTENERGY OPCO FE ECHECK | -2,898.00 | |
| | Aug 31, 2018 | XXXXX2013 Bank of America MORTGAGE | -5,774.06 | |
| | Aug 29, 2018 | Deposit | 5,000.00 | |
| | Aug 28, 2018 | Check #202 | -1.00 | |
| | Aug 28, 2018 | Check #203 | -265.54 | |
| | Aug 21, 2018 | Deposit | 5,500.00 | |
| | Aug 21, 2018 | CMS MEDICARE PAYMENT 0177 | -513.40 | |
| | Aug 15, 2018 | 4763630 PMNTUS SVC FEE SERVICEFEE | -1.95 | |
| | Aug 15, 2018 | 1593523 AMERICAN-WATER UTIL-PMNT | -696.85 | |
| | Aug 06, 2018 | 6342973162 BILLMATRIX BILLPAYFEE | -3.50 | |
| | Aug 06, 2018 | 6342973161 FIS*VERIZON BILL PAY | -563.33 | |
| | Aug 03, 2018 | Deposit | 6,000.00 | |

5:00 PM

11/21/18

# Alex Figliolia
## Reconciliation Summary
### Direct Express Card, Period Ending 10/31/2018

|  | Oct 31, 18 |
|---|---|
| Beginning Balance | 279.10 |
| Cleared Transactions | |
| Checks and Payments - 2 items | -2,200.75 |
| Deposits and Credits - 1 item | 2,254.20 |
| **Total Cleared Transactions** | 53.45 |
| Cleared Balance | 332.55 |
| Register Balance as of 10/31/2018 | 332.55 |
| Ending Balance | 332.55 |

5:00 PM
11/21/18

### Alex Figliolia
## Reconciliation Detail
### Direct Express Card, Period Ending 10/31/2018

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 279.10 |
|   Cleared Transactions | | | | | | |
|     Checks and Payments - 2 items | | | | | | |
| Check | 10/01/2018 | | | X | -0.75 | -0.75 |
| Check | 10/17/2018 | dm | TD Bank Cash With... | X | -2,200.00 | -2,200.75 |
|     Total Checks and Payments | | | | | -2,200.75 | -2,200.75 |
|     Deposits and Credits - 1 item | | | | | | |
| Deposit | 10/10/2018 | | | X | 2,254.20 | 2,254.20 |
|     Total Deposits and Credits | | | | | 2,254.20 | 2,254.20 |
|   Total Cleared Transactions | | | | | 53.45 | 53.45 |
| **Cleared Balance** | | | | | 53.45 | 53.45 |
| Register Balance as of 10/31/2018 | | | | | 53.45 | 332.55 |
| **Ending Balance** | | | | | 53.45 | 332.55 |
| | | | | | 53.45 | 332.55 |

PAGE. 1/ 1





MEMBER FDIC



**DIRECTEXPRESS**
Direct Express® Debit Card Program
P.O. Box 245998
San Antonio, TX 78224

To contact us

**Customer Service:** (888) 741-1115

Hearing impaired: (866) 569-0447
International: (765) 778-6290 (Collect)

Visit our web site
www.USDirectExpress.com

Write to us
Direct Express® Card Services
P.O. Box 245998
San Antonio, TX 78224

## Monthly Account Statement

L2ACBADTGF  051905

ALEX J FIGLIOLIA
105 MIDDLETOWN ROAD
HOLMDEL, NJ 07733-0000

Thank You for Being a Direct Express® Card Customer

| Date Range: October 2018 | | |
|---|---|---|
| | Starting Balance: | $279.10 |
| | Credits: | $2,254.20 |
| | Debits: | $2,200.75 |
| | Ending Balance: | $332.55 |

Card Number: 533248XXXXXX9246

| Date Posted | Retailer | Transaction Type | Charges | Credits |
|---|---|---|---|---|
| 10/01/2018 | | MONTHLY PAPER STATEMENT FEE | $0.75 | $0.00 |
| 10/10/2018 | ALEX J FIGLIOLIA | DEPOSIT FROM SSA | $0.00 | $2,254.20 |
| 10/17/2018 | TD BANK, HOLMDEL, NJ, USA | CASH PURCHASE | $2,200.00 | $0.00 |

Page 1 of 2

5:12 PM

11/21/18
Accrual Basis

**Alex Figliolia**
**Balance Sheet**
As of October 31, 2018

|  | Oct 31, 18 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Amboy Bank DIP | 13,069.24 |
| Direct Express Card | 332.55 |
| **Total Checking/Savings** | 13,401.79 |
| **Total Current Assets** | 13,401.79 |
| **TOTAL ASSETS** | 13,401.79 |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| Opening Balance Equity | 2,671.35 |
| Owners Equity | 6,703.04 |
| Net Income | 4,027.40 |
| **Total Equity** | 13,401.79 |
| **TOTAL LIABILITIES & EQUITY** | 13,401.79 |

5:11 PM

11/21/18

Accrual Basis

# Alex Figliolia
# Profit & Loss
### October 2018

|  | Oct 18 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Consulting Income | 17,500.00 |
| Social Security Income | 2,254.20 |
| **Total Income** | 19,754.20 |
| **Expense** | |
| Bank Service Charges | 0.75 |
| Insurance Expense | 768.94 |
| Meals, Household Supplies and E | 2,515.00 |
| Second Mortgage | 5,774.06 |
| Telephone Expense | 1,140.97 |
| Utilities | 4,441.32 |
| **Total Expense** | 14,641.04 |
| **Net Ordinary Income** | 5,113.16 |
| **Other Income/Expense** | |
| **Other Expense** | |
| US Trustee Fee | 974.30 |
| **Total Other Expense** | 974.30 |
| **Net Other Income** | -974.30 |
| **Net Income** | 4,138.86 |

5:22 PM

11/21/18

Accrual Basis

# Alex Figliolia
## Profit & Loss
### May 2017 through October 2018

| | May '17 - Oct 18 |
|---|---|
| **Ordinary Income/Expense** | |
|   **Income** | |
|     Consulting Income | 309,253.50 |
|     Social Security Income | 41,615.00 |
|   **Total Income** | 350,868.50 |
| | |
|   **Expense** | |
|     Bank Service Charges | 17.75 |
|     Insurance Expense | 63,984.43 |
|     Meals, Household Supplies and E | 47,627.31 |
|     Repairs and Maintenance | 4,995.42 |
|     Second Mortgage | 98,159.02 |
|     Taxes | 9,446.00 |
|     Telephone Expense | 10,521.33 |
|     Utilities | 73,346.27 |
|   **Total Expense** | 308,097.53 |
| **Net Ordinary Income** | 42,770.97 |
| **Other Income/Expense** | |
|   **Other Expense** | |
|     Professional Fees | 27,490.53 |
|     US Trustee Fee | 4,550.00 |
|   **Total Other Expense** | 32,040.53 |
| **Net Other Income** | -32,040.53 |
| **Net Income** | 10,730.44 |

5:30 PM
11/21/18
Accrual Basis

# Alex Figliolia
## General Ledger
### As of October 31, 2018

| Type | Date | Num | Adj | Name | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| **Amboy Bank DIP** | | | | | | | |
| Check | 10/01/2018 | 206 | | Chapel Hill Cleaners | | 165.00 | 8,983.83 |
| Deposit | 10/04/2018 | | | | 6,500.00 | | 8,818.83 |
| Check | 10/15/2018 | dm | | Verizon | | | 15,318.83 |
| Check | 10/17/2018 | dm | | Verizon | | 1,140.97 | 14,177.86 |
| Check | 10/17/2018 | dm | | CMS Medicare Payment | | 503.40 | 13,674.46 |
| Deposit | 10/19/2018 | | | | 6,000.00 | | 19,674.46 |
| Check | 10/22/2018 | 208 | | United States Trustee Payment Center | | 974.30 | 18,700.16 |
| Check | 10/25/2018 | 228 | | Horizon Blue Cross Blue Shield of NJ | | 265.54 | 18,434.62 |
| Check | 10/25/2018 | dm | | New Jersey Natural Gas | | 1,204.27 | 17,230.35 |
| Check | 10/26/2018 | 229 | | Chapel Hill Cleaners | | 150.00 | 17,080.35 |
| Deposit | 10/26/2018 | | | | 5,000.00 | | 22,080.35 |
| Check | 10/30/2018 | dm | | Bank of America | | 5,774.06 | 16,306.29 |
| Check | 10/30/2018 | dm | | First Energy | | 2,898.00 | 13,408.29 |
| Check | 10/30/2018 | dm | | First Energy | | 339.05 | 13,069.24 |
| **Total Amboy Bank DIP** | | | | | 17,500.00 | 13,414.59 | 13,069.24 |
| | | | | | | | |
| **Direct Express Card** | | | | | | | |
| Check | 10/01/2018 | | | | | 0.75 | 279.10 |
| Deposit | 10/10/2018 | | | | 2,254.20 | | 278.35 |
| Check | 10/17/2018 | dm | | TD Bank Cash Withdrawal | | 2,200.00 | 2,532.55 |
| | | | | | | | 332.55 |
| **Total Direct Express Card** | | | | | 2,254.20 | 2,200.75 | 332.55 |
| | | | | | | | |
| **Accumulated Depreciation** | | | | | | | |
| Total Accumulated Depreciation | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Furniture and Equipment** | | | | | | | |
| Total Furniture and Equipment | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Accounts Payable** | | | | | | | |
| Total Accounts Payable | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Payroll Liabilities** | | | | | | | |
| Total Payroll Liabilities | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Opening Balance Equity** | | | | | | | |
| Total Opening Balance Equity | | | | | | | -2,671.35 |
| | | | | | | | -2,671.35 |
| **Owners Draw** | | | | | | | |
| Total Owners Draw | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Owners Equity** | | | | | | | |
| Total Owners Equity | | | | | | | -6,703.04 |
| | | | | | | | -6,703.04 |
| **Consulting Income** | | | | | | | |
| Deposit | 10/04/2018 | | | | | | -191,679.25 |
| Deposit | 10/19/2018 | | | | | 6,500.00 | -198,179.25 |
| Deposit | 10/26/2018 | | | | | 6,000.00 | -204,179.25 |
| | | | | | | 5,000.00 | -209,179.25 |
| **Total Consulting Income** | | | | | 0.00 | 17,500.00 | -209,179.25 |
| | | | | | | | |
| **Social Security Income** | | | | | | | |
| Deposit | 10/10/2018 | | | | | | -20,485.80 |
| | | | | | | 2,254.20 | -22,740.00 |
| **Total Social Security Income** | | | | | 0.00 | 2,254.20 | -22,740.00 |
| | | | | | | | |
| **Advertising and Promotion** | | | | | | | |
| Total Advertising and Promotion | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Automobile Expense** | | | | | | | |
| Total Automobile Expense | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Bank Service Charges** | | | | | | | |
| Check | 10/01/2018 | | | | | | 11.75 |
| | | | | | 0.75 | | 12.50 |
| **Total Bank Service Charges** | | | | | 0.75 | 0.00 | 12.50 |
| | | | | | | | |
| **Bankruptcy Fees** | | | | | | | |
| Total Bankruptcy Fees | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Computer and Internet Expenses** | | | | | | | |
| Total Computer and Internet Expenses | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Continuing Education** | | | | | | | |
| Total Continuing Education | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Depreciation Expense** | | | | | | | |
| Total Depreciation Expense | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Dues and Subscriptions** | | | | | | | |
| Total Dues and Subscriptions | | | | | | | 0.00 |
| | | | | | | | 0.00 |

5:30 PM

11/21/18

Accrual Basis

# Alex Figliolia
## General Ledger
### As of October 31, 2018

| Type | Date | Num | Adj | Name | Debit | Credit | Balance |
|------|------|-----|-----|------|-------|--------|---------|
| **Insurance Expense** | | | | | | | |
| General Liability Insurance | | | | | | | 50,983.70 |
| Total General Liability Insurance | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| Insurance Expense - Other | | | | | | | 50,983.70 |
| Check | 10/17/2018 | dm | | CMS Medicare Payment | 503.40 | | 51,487.10 |
| Check | 10/25/2018 | 228 | | Horizon Blue Cross Blue Shield of NJ | 265.54 | | 51,752.64 |
| Total Insurance Expense - Other | | | | | 768.94 | 0.00 | 51,752.64 |
| Total Insurance Expense | | | | | 768.94 | 0.00 | 51,752.64 |
| **Interest Expense** | | | | | | | |
| Total Interest Expense | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Meals and Entertainment** | | | | | | | |
| Total Meals and Entertainment | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Meals, Household Supplies and E** | | | | | | | |
| Check | 10/01/2018 | 206 | | Chapel Hill Cleaners | 165.00 | | 22,847.01 |
| Check | 10/17/2018 | dm | | TD Bank Cash Withdrawal | 2,200.00 | | 25,047.01 |
| Check | 10/26/2018 | 229 | | Chapel Hill Cleaners | 150.00 | | 25,212.01 |
| | | | | | | | 25,362.01 |
| Total Meals, Household Supplies and E | | | | | 2,515.00 | 0.00 | 25,362.01 |
| **Office Supplies** | | | | | | | |
| Total Office Supplies | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Payroll Expenses** | | | | | | | |
| Total Payroll Expenses | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Rent Expense** | | | | | | | |
| Total Rent Expense | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Repairs and Maintenance** | | | | | | | |
| Total Repairs and Maintenance | | | | | | | 421.17 |
| | | | | | | | 421.17 |
| **Second Mortgage** | | | | | | | |
| Check | 10/30/2018 | dm | | Bank of America | 5,774.06 | | 51,966.54 |
| | | | | | | | 57,740.60 |
| Total Second Mortgage | | | | | 5,774.06 | 0.00 | 57,740.60 |
| **Taxes** | | | | | | | |
| Total Taxes | | | | | | | 9,446.00 |
| | | | | | | | 9,446.00 |
| **Telephone Expense** | | | | | | | |
| Check | 10/15/2018 | dm | | Verizon | 1,140.97 | | 5,146.90 |
| | | | | | | | 6,287.87 |
| Total Telephone Expense | | | | | 1,140.97 | 0.00 | 6,287.87 |
| **Travel Expense** | | | | | | | |
| Total Travel Expense | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Utilities** | | | | | | | |
| Check | 10/25/2018 | dm | | New Jersey Natural Gas | 1,204.27 | | 44,611.38 |
| Check | 10/30/2018 | dm | | First Energy | 2,898.00 | | 45,815.65 |
| Check | 10/30/2018 | dm | | First Energy | 339.05 | | 48,713.65 |
| | | | | | | | 49,052.70 |
| Total Utilities | | | | | 4,441.32 | 0.00 | 49,052.70 |
| **Ask My Accountant** | | | | | | | |
| Total Ask My Accountant | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **Professional Fees** | | | | | | | |
| Total Professional Fees | | | | | | | 24,566.36 |
| | | | | | | | 24,566.36 |
| **US Trustee Fee** | | | | | | | |
| Check | 10/22/2018 | 208 | | United States Trustee Payment Center | 974.30 | | 2,275.70 |
| | | | | | | | 3,250.00 |
| Total US Trustee Fee | | | | | 974.30 | 0.00 | 3,250.00 |
| **No accnt** | | | | | | | |
| Total no accnt | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **TOTAL** | | | | | 35,369.54 | 35,369.54 | 0.00 |