BUNCE D. ATKINSON, ESQ.
ATKINSON & DeBARTOLO, P.C.
The Galleria, 2 Bridge Avenue
Building Two, Third Floor
P.O. Box 8415
Red Bank, New Jersey 07701
(732) 530-5300 Fax 732-530-9877
BA9186
Attorneys for Debtor/Plan Proponent

| | |
|---|---|
| IN RE:<br><br>ALEXANDER FIGLIOLIA,<br><br>Debtor. | UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>TRENTON VICINAGE<br>CASE NO. 17-20755 |

## FIRST MODIFIED PLAN OF LIQUIDATION

Debtor/Plan Proponent respectfully submits its Plan of Liquidation pursuant to Chapter

11, Title 11 of the United States Code in the form annexed hereto and made a party hereof.

NAME OF DEBTOR/PLAN PROPONENT:   DEBTOR

By:    /s/ Alexander Figliolia
      _____
      ALEXANDER FIGLIOLIA

DATED: 11/29/18

## TABLE OF CONTENTS

Page

I.    INTRODUCTION . . . . . . . . .    1

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS    1
      A.    General Overview . . . . . .    1
      B.    Definitions . . . . . . . .    1
      C.    Unclassified Claims . . . . .    7
            1.    Administrative Expenses and Fees . . .    7
            2.    Priority Tax Claims . . . . .    8
      D.    Classified Claims and Interests . . .    9
            1.    Classes of Secured Creditors . . .    9
            2.    Non Priority Claims . . . .    11
            3.    Class of General Unsecured Claims . .    11
            4.    Classes of Equity Holders . . .    12
      E.    Acceptance or Rejection of Plan . . .    12
      F.    Means of Effectuating the Plan . . .    12
            1.    Funding for the Plan . . . .    12
            2.    Post-Confirmation Management . . .    12
            3.    Disbursing Agent . . . .    13
            4.    Time and Method of Distribution . .    13
            5.    Time Bar to Cash Payment . . .    13
            6.    DeMininus Distributions . . .    14
            7.    Finality of Distributions . . .    14
            8.    Treatment of Disputed Claims . .    14

III.  TREATMENT OF MISCELLANEOUS ITEMS . . .    16
      A.    Executory Contracts and Unexpired Leases . .    16
            1.    Assumptions . . . . .    16
            2.    Rejections . . . . .    16
      B.    Changes in Rates Subject to Regulatory Commission Approval .    17
      C.    Retention of Jurisdiction . . . .    17
      D.    Procedures for Resolving Contested Claims . . .    17
      E.    Notices Under the Plan . . . .    18

IV.   EFFECT OF CONFIRMATION OF PLAN . . .    18
      A.    Discharge . . . . . . .    18
      B.    Re-vesting of Property in the Debtor . . .    19
      C.    Modification of Plan . . . . .    19
      D.    Post-Confirmation Conversion/Dismissal . . .    19
      E.    Post-Confirmation Quarterly Fees . . .    19

# I.

## INTRODUCTION

Alexander Figliolia ("Debtor") is the Debtor in a Chapter 11 bankruptcy case. On May 25, 2017, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 Petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101, et. seq. This document is the Chapter 11 Plan of Reorganization ("Plan") proposed by Alexander Figliolia ("Proponent"). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a Liquidation plan. In other words, the Proponent seeks to accomplish payments under the Plan by making payment to creditors until the sale of the Proponent's residence. The property shall be listed for sale within 45 days of confirmation, and the sale shall take place within 15 months before March 31, 2020. The Effective Date of the proposed Plan is fifteen (15) days after the Order of Confirmation.

# II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies Claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of Claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

### B.    Definitions

1

     Scope of Definitions.  For purposes of this Plan, except as expressly otherwise provided, or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan.  In all references herein to any parties, persons, entitles or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

     1.    **Administrative Expense** shall mean any cost or expenses of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expense of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28 of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

     2.    **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been

2

interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3.    **Allowed Administrative Expense** shall mean any administrative expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4.    **Allowed Unsecured Claim** shall mean an unsecured Claim that is or has become an allowed Claim.

5.    **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended and as codified in Title 11 of the United States Code.

6.    **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7.    **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075, and also referred to as the Federal Rules of Bankruptcy Procedure.

8.    **Business Day** means and refers to any day except Saturday, Sunday and any other day on which commercial banks in New Jersey are authorized by law to close.

9.    **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Alexander Figliolia is the Debtor.

10.    **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured,

3

disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured or unsecured. All Claims as such term is defined in Section 101(5) of the Bankruptcy Code.

11.    **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

12.    **Code** shall mean Title 11 of the United States Code otherwise known as the Bankruptcy Code.

13.    **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of Bankruptcy Code.

14.    **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

15.    **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

16.    **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition date or a Claim against the Debtor's estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships or business entitles holding Claims against the Debtor.

17.    **Debt** means, refers to, and shall have the same meaning ascribed to it in Section 101(12) of the Code.

18.    **Debtor** shall mean Alexander Figliolia.

4

19.    **Disbursing Agent** shall mean Alexander Figliolia or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Order of Confirmation.

20.    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 et. seq. of the Bankruptcy Code.

21.    **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order.

22.    **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

23.    **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options or other rights to purchase any shares of stock in the Debtor.

24.    **Final Order** shall mean an Order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified or amended, and not being stayed, and the time to appeal from which or to seek review or re-hearing of which having expired, has become final and is in full force and effect.

25.    **Impaired,** when used as an adjective preceding the words "class of Claims" or "Claims of Equity Interest", shall mean that the Plan alters the legal, equitable or contractual rights of the member of that class.

26.    **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof of other entity.

27.    **Petition Date** shall mean the date on which the Debtor filed this Petition for Relief commencing the Chapter 11 Case.

5

28.    **Plan** shall mean the Plan of Liquidation filed in these proceedings, together with any additional modifications and amendments.

29.    **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Sections 507 (a)(2), (3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

30.    **Priority Tax Creditor** shall mean a creditor holding a priority tax Claim.

31.    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority in under such subsection.

32.    **Proceedings** shall mean the Chapter 11 Case of the Debtor.

33.    **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330 or 503(b) of the Bankruptcy Code.

34.    **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

35.    **Proponent** means Alexander Figliolia.

36.    **Reorganized Debtor** means the Debtor after confirmation of the Plan.

37.    **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

6

38.     <u>**Unsecured Claim**</u> shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code; or (ii) a Claim entitled to priority under Sections 503 and 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

39.     <u>**Other Definitions**</u>, a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Moreover, some terms defined herein are defined to the section in which they are used.

**C.     Unclassified Claims**

Certain types of Claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class. The treatment of these claims is provided below.

**1.     Administrative Expenses and Fees**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular Claimant agrees to a different treatment.

Court Approval of Professional Compensation and Expenses Required: The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by Statute.

2.      **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus, this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments over a period not exceeding six years from the date of the assessment of such tax.

| Description | Amount Owed | Treatment |
|---|---|---|
| • State of NJ, Div. of Taxation<br>• Type of tax =TGI-EE for years 2014 through 2016<br>• Date tax assessed = 04/2015 through 04/2017 | Total amount claimed is $73,418.73 | • Pymt interval=quarterly based upon 5 year payout.<br>• Pymt amt/interval= quarterly, $4,056.36<br>• Begin date=04/01/2019<br>• End date= 5 years or by a balloon payment for the balance upon sale of the home.<br>• Interest Rate   =4%<br>• Total Payout Amount=100% upon sale of home. |

| | | |
|---|---|---|
| • State of NJ, Div. of Taxation<br>• Type of tax =GIT-ER<br>• Date tax assessed =12/2014 through 12/2016 | $2,707.57 | • Pymt interval =quarterly based upon 5 year payout<br>• Pymt amt/interval =$149.58<br>• Begin date =04/01/2019<br>• End date =5 years or by a balloon payment for the balance upon sale of the home.<br>• Interest Rate %=4%<br>• Total Payout Amount% = 100% upon sale of the home subject to claim being expunged |
| • Internal Revenue Service<br>• Type of tax =1040, years 2013 through 2016<br>• Date tax assessed =12/1/2014 through 11/27/2017 | $436,807.46 including interest. | • Pymt interval =quarterly based upon 5 year payout<br>• Pymt amt/interval =$24,133.41<br>• Begin date =04/01/2019<br>• End date =$24,133.41 with a balloon payment for the balance upon sale of the home.<br>• Interest Rate    = 4%<br>• Total Payout Amount  % = 100% upon the sale of the home. |
| • Name = Internal Revenue Service<br>• Type of tax = FICA, FUTA, and civil penalties for period 3rd Quarter 2006, 2nd Quarter 2006, 1st Quarter 2007, 2nd Quarter 2008.<br>• Date tax assessed =12/28/2009 for civil penalties for FUTA and FICA | $235,933.88 (disputed) | • Pymt interval =quarterly<br>• Pymt amt/interval =$1,000.00<br>• Begin date =following determination of extent and validity of the claim<br>• End date =5 years after commencement of payment unless paid sooner by sale of house with a balloon payment<br>• Interest Rate    = 4%<br>• Total Payout Amount  % =100% of allowed claim as may be allowed upon sale of home, in the event payment is made Debtor shall seek a refund based upon not being obligated for these taxes. |

## D.    Classified Claims and Interests

## 1.    Classes of Secured Claims

Secured Claims are Claims secured by liens on property of the estate.  The following represent all

classes containing Debtor's secured pre-Petition Claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of:<br>•Name =Bank of New York Mellon<br>•Collateral description =105 Middletown Road, Holmdel, New Jersey<br>•Collateral value =$4,900,000<br>•Claimed Priority of security int. =1st lien<br>•Principal owed =2,955,329.37.00<br>•Pre-pet.arrearage amount = $293,732.02<br>•Post-pet.arrearage amount = unknown, to be paid on sale<br>•Total claim   amount =$3,136,294.00 | No | Yes | • Pymt interval =monthly<br>• Pymt amt/interval =$10,000.00 per month<br><br>• Balloon pymt =$3,136.294.00 plus any accrued interest or escrow advances prior to confirmation, and any unpaid post-confirmation interest.<br>• Begin date =effective date of Plan<br>• End date =24 months after effective date of Plan or upon sale of home if sooner.<br>• Interest rate    =4%<br>• Total payout   % =100%<br>• Treatment of lien = Paid in full upon sale of home. |
| 2 | Secured Claim of:<br>•Name = Bank of NY Mellon<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$4,900,000.00<br>•Claimed Priority of security int. =2nd mortgage lien<br>•Principal owed =$1,486,207.62<br>•Pre-pet. arrearage amount =$0<br>•Post-pet. arrearage amount =$0<br>•Total claim amount =$1,490,684.90 | No | No | • Pymt interval =monthly<br>• Pymt amt/interval =$5,774.06<br>• Balloon pymt =$1,192,163.09<br>• Begin date =Upon confirmation<br>• End date =11/25/2030<br>• Interest rate    =3.5%<br>• Total payout<br>   % =100%<br>• Treatment of lien =No change to the loan document, remain as second mortgage. |
| 3 | Secured Claim of:<br>•Name = IRS<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$4,900,000.00<br>•Claimed Priority of security int. =3rd lien<br>•Principal owed =$10,900.00<br>•Pre-pet. arrearage amount =$0<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $10,900.00 | No | Yes | • Pymt interval =quarterly<br>•Pymt amt/interval=$389.28<br>• Balloon pymt= N/A<br>• Begin date =04/1/2019<br>• End date =sale of home or 5 years, whichever is sooner<br>• Interest rate    =4%<br>• Total payout - % =100% upon sale of home.<br>•Treatment   of   lien   = remain as 3rd lien on real property |

10

| 4 | Secured Claim of:<br>•Name =City of NY<br>•Collateral description =None listed<br>•Collateral value = $0<br>•Claimed Priority of security int. =None listed<br>•Principal owed =$375,000.00<br>•Pre-pet. arrearage amount =N/A<br>•Post-pet. arrearage amount =N/A<br>•Total claim amount =$375,000.00 | No | Yes Debtor will seek to modify claim to a general unsecured claim | • Pymt interval =None<br>• Pymt amt/interval =None<br>• Balloon pymt =None<br>• Begin date =N/A<br>• End date =N/A<br>• Interest rate % =N/A<br>• Total payout _% =N/A<br>• Treatment of lien =No lien |

## 2.    Priority Non-Tax Claims

Certain priority non-tax Claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment. There are no such claims.

## 3.    Class of General Unsecured Claims

General unsecured Claims are unsecured Claims not entitled to priority under Code Section 507(a).  These Claims are to be treated as follows: _____

Debtor's general unsecured claims:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 5 | General unsecured claims<br>• Total amt of claims =$8,408,120.40 | YES | • Pymt interval =One time<br>• Pymt amt/interval =$50,000.<br>• Begin date =3 years following effective date of Plan or upon sale of home remaining from the sale.<br>• End date =2 years following effective date of Plan or upon sale of home if there is sufficient proceeds from Debtor's share of the sale<br>• Interest rate   =0%<br>• Total payout  % =$50,000.00 upon sale of home from Debtor's interest after payment of his exemption. |

11

4.    **Class(es) of Equity Interest Holders**

The members of this class will be treated as follows:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 6 | Alexander Figliolia | No | Retain ownership interest of home with non-debtor spouse, and exempt property. |

E.    **Acceptance or Rejection of Plan**

Each impaired class of creditors with claims against the Debtor's estate shall be entitled

to vote separately to accept or reject the Plan.  A class of Creditors shall have accepted the Plan,

if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-

half in number of holders of the allowed Claims of such class that have accepted or rejected the

Plan.  In the event that any impaired class of Creditors or Interest holders shall fail to accept the

Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the

right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b)

of the Bankruptcy Code.

F.    **Means of Effectuating the Plan.**

1.    Funding the Plan.    The Plan will be funded by the following:  The Debtor will

utilize the proceeds of the sale of his home that is owned jointly with his non-debtor spouse, his

Social Security income and his consulting income from Alex Figliolia Water & Sewer, LLC to

fund his Plan.

2.    Post-Confirmation Management.    The Debtor shall manage his own affairs

following confirmation.

3.    Disbursing Agent.    Alexander Figliolia shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan except for the monthly payments by the Debtor on account of the first and second mortgages which shall be paid by the Debtor directly.    The Disbursing Agent shall serve without bond and shall receive 5% for distribution services rendered and expenses incurred pursuant to the Plan.

4.    Time and Method of Distributions.    Distributions to the Class 5 claimants will be made quarterly commencing on the seventh month following confirmation of the Plan, and after all allowed administrative claims and priority claims have been paid in full. The amount to be paid shall be reduced by the quarterly fee due to the United States Trustee.    Subject to the provisions of Bankruptcy Rule 2002(g), and except as provided in the Plan, distributions to holders of allowed claims will be made at the address of each such holder set forth on the schedules unless superseded by the address set forth on the Proofs of Claims filed by such holders, or at the last known address of such holder if no Proof of claim is filed, or if the Distribution Agent or Debtor has been notified in writing of a change of the address.    Upon final distribution, the Distribution Agent shall take such actions as is necessary to obtain an Order closing the bankruptcy case pursuant to the Bankruptcy Code unless the case has already been closed.

5.    Time Bar to Cash Payment.    Any unclaimed property will be deemed paid to such entitled holder, and such holder will not be entitled to any future distributions under the Plan.    Any unclaimed property shall constitute available cash, and shall be redistributed to holders of allowed claims in such class on the date of the next distribution.    If the final distribution date has passed, such unclaimed property shall escheat to the State of New Jersey. The Distribution Agent shall have no obligation to make further distributions to any holder if a

13

prior distribution becomes unclaimed property. The distribution otherwise payable to such holder, shall be redistributed to holders of allowed claims in such class.

6.    DeMininus Distributions.    Any other provision of the Plan notwithstanding, the Debtor shall not be required to make interim distributions to any creditor in an amount less than $10.00 or final distribution to any creditor in an amount less than $20.00. Cash allocated to an allowed claim but withheld from an interim distribution pursuant to this subsection shall be held by the Distribution Agent for the account of, and future distribution, to the holder of such allowed claim. Cash allocated to an allowed claim, but withheld from final distribution pursuant to this section, shall be distributed as provided in the final distribution provision, and the holder of such allowed claim shall have no further interest therein or rights with respect thereto.

7.    Finality of Distributions.    All distributions made prior to the effective date pursuant to any Order of the Bankruptcy Court, or after the effective date pursuant to the provisions of the Plan, shall be deemed final, and no persons shall have any right to require or petition the Bankruptcy Court for a disgorgement of any such distribution.

8.    Treatment of Disputed Claims:

i)    Estimation of Claims. The Debtor may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code. The Bankruptcy Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including without limitation, an objection during the pendency of an appeal relating to any such objection. Subject to the provisions of Section 502(j) of the Bankruptcy Code, in the event

14

the Bankruptcy Court estimates a contingent or disputed claim, the amount
so estimated will constitute the allowed amount of such claim.  If the
estimated amount does not constitute a maximum limitation on the amount
of such claim, the Debtor may pursue supplementary proceedings to object
to the allowance of such claim.  All of the aforementioned objection,
estimation, and resolution procedures are intended to be cumulative and
not necessarily exclusive of one another.  Claims may be estimated and
subsequently compromised, settled, withdrawn, or resolved by any
mechanism approved by the Bankruptcy Court.  Upon the allowance, in
whole or in part, of any contingent or disputed claim, the Debtor shall
distribute to the claimant, its pro-rata share of the distributions made under
the Plan.

ii)    Payments and Distributions on Disputed Claims.  The Debtor shall maintain a
reserve on account of any distributable amounts required to be set aside on
account of disputed claims as necessary to provide required distributions if such
claim were an allowed claim.  At such time as a disputed claim becomes, in whole
or in part, an allowed claim, the Debtor may, but shall not be required to,
distribute to the holder thereof the distributions, if any, to which such holder is
then entitled under the Plan.  Such distribution, if any, will be made on the earlier
of the next interim distribution date or ninety (90) days of the date the Order or
Judgment of the Bankruptcy Court allowing such disputed claim becomes a Final
Order.  No interest shall be paid on the disputed claims that later become allowed,
or with respect to any distribution to such holder.

# III.

## TREATMENT OF MISCELLANEOUS ITEMS

A.    **Executory Contracts and Unexpired Leases**

1.    **Assumptions**

The following are the unexpired Leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan:  NONE

On the effective date each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.   The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

2.    **Rejections**

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected.

The Order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED UPON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS Not applicable because none have been rejected.**

Any Claim based on the rejection of an executory contract or an unexpired lease will be barred if the Proof of Claim is not timely filed, unless the Court later orders otherwise.

**B.**    **Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is  not  subject to governmental regulatory commission approval of its rates.

**C.**    **Retention of Jurisdiction**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such Orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized Debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**D.**    **Procedures for Resolving Contested Claims**

Objections to Claims and interests, except for those Claims more specifically deemed allowed in the Plan, may be filed by the reorganized Debtor or any party in interest up to and including sixty (60) days following the entry of the Order of Confirmation.  With respect to disputed Claims or interest, the Disbursing Agent will hold in a separate interest bearing reserve

account such funds as would be necessary in order to make the required distribution on the Claim or interest, as listed either in the Debtor's schedules or the filed Proof(s) of Claim.

## E.    Notices Under the Plan

All notices, requests or demand with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to:  Attorney for the Debtor/Plan Proponent:

Bunce D. Atkinson, Esq.
Atkinson & DeBartolo, P.C.
P.O. Box 8415
Red Bank, New Jersey 07701
Phone: 732-530-5300.

## IV.

## EFFECT OF CONFIRMATION OF PLAN

## A.    Discharge

This Plan provides that upon confirmation of the Plan, Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. §1141.  However, any liability imposed by the Plan will not be discharged.  If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate.  The provisions of this Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan upon confirmation thereof.

18

**B.      Revesting of property in the Debtor**

Except as provided in Section IV.D hereinafter, and except as provided elsewhere in the

Plan, the Confirmation revests all of the property of the estate in the Debtor.   All property

revested in the Debtor shall be free of all judgment liens if any, and Debtor shall be entitled to

have such judgment liens removed or record by the Clerk of the Superior Court of New Jersey.

**C.      Modification of the Plan**

The Proponent of the Plan may modify the Plan at any time before Confirmation.

However, the Court may require a new Disclosure Statement or revoting on the Plan, if

Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as

(1) the Plan had not been substantially consummated; and (2) the Court authorizes the proposed

modification after notice and a hearing.

**D.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under

Section 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan.  If

the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that

had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan,

will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested

property only to the extent that relief from stay was not previously granted by the Court during

this case.

**E.      Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 *U.S.C.* §1930(a)(6) continue to be payable to the Office of

the United States Trustee post-confirmation until such time as the case is converted, dismissed or

19

closed pursuant to a Final Decree. The Debtor shall be authorized to obtain a Court Order

closing the case prior to completion of the Plan in an effort to reduce quarterly fees.


/s/ Alexander Figliolia

BY: _____

ALEXANDER FIGLIOLIA

Dated: 11/29/18