UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : Case No. 17-20755 (MBK) |
| | : |
| | : Chapter 11 |
| Alexander J. Figliolia, | : |
| | : The Honorable Michael B. Kaplan |
| Debtors. | : |
| | : Hearing Date: February 11, 2019 at 10:00 a.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO
CONFIRMATION OF THE SECOND MODIFIED PLAN OF LIQUIDATION
PROPOSED BY ALEXANDER J. FIGLIOLIA**

The Acting United States Trustee (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby asserts this objection ("Objection") to the confirmation of the *Second Modified Plan of Liquidation* ("Second Modified Plan") (Docket No. 111), and in support of the Objection, respectfully represents as follows:

**BACKGROUND**

1. On May 25, 2017 ("Petition Date"), Alexander J. Figliolia ("Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). *See* Docket No. 1.

2. The Debtor remains in possession of his property and management of his affairs pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor co-owns real property located at 105 Middletown Road, Holmdel, NJ ("Real Property"). *See* Docket No. 12, Schedule A/B. The real property is valued at $4,900,000. *See id*.

4. On December 7, 2018, the Debtor filed the *Second Modified Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing the Liquidation Chapter 11 Plan Proposed by Alexander Figliolia* ("Second Modified Disclosure Statement"), which includes as an Exhibit the Second Modified Plan - the subject of this Objection. *See* Docket No. 111. The Second Modified Plan is not separately filed.

5. The Second Modified Plan provides, in relevant part that: (A) this is a plan of liquidation; (B) the Debtor will sell the Real Property within 12 months of confirmation and use the proceeds to pay all claims; (C) if the Real Property does not sell in 12 months, the Property will be put to auction; (D) if sale proceeds are insufficient, priority tax claims will be paid quarterly over the course of five years from confirmation until paid in full, with 4% interest; (E) unsecured claims, totaling $8,408,120.40, will share in a distribution of $50,000 (representing a less than one percent distribution), which will either be paid from sale proceeds or as a lump sum 3 years following the Effective Date[1]; (F) until such time as the Real Property is sold, and in the event sale proceeds are insufficient to make all payments, plan payments will be made from the Debtor's future earnings, including social security; (G) the Debtor will "retain ownership interest of home with non-debtor spouse, and exempt property"; (H) the Effective Date is defined as "the day on which the Confirmation Order becomes final".[2] *See* Docket No. 111.

---

[1] Conflicting information is provided under the "Means for Effectuating the Plan."
[2] Elsewhere in the Second Modified Plan, the Effective Date is described as "fifteen (15) days after the Order of Confirmation."

2

6. The Cash Flow Analysis attached to the Second Modified Disclose Statement only shows projections for months 49 to 60. *See* Docket No. 111. The monthly projections for this time frame shows income of $41,254.20 and expenses of $38,512.39, resulting in monthly net cash flow of $2,741.81. *See id*. Monthly expenses include $8,000 for rent, $2,600 for utilities, $13,000 in taxes. *See id*. At the hearing on December 3, 2018, counsel for the U.S. Trustee questioned the accuracy of these projections.

7. On December 11, 2018, the Court entered a *Revised Order Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof*. *See* Docket No. 116.

8. The Debtor's most recently filed Monthly Operating Report ("MOR") is for December 2018. *See* Docket No. 121.

9. The December 2018 MOR shows total receipts of $16,754.20 and total disbursements of $21,963.54 (comprised of total ordinary disbursements of $7,963.54 and total reorganization disbursements of $14,000), resulting in negative net monthly income of ($5,209.84). *See id*.

10. Confirmation objections have been filed by the New Jersey Division of Taxation and the City of New York. *See* Docket Nos. 122 and 124.

## LEGAL ANALYSIS

11. Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia*

*Gas Systems, Inc.*), 33 F.2d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

12. Confirmation of a chapter 11 plan requires that the Debtor meet all requirements of Section 1129(a). *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).

A. **Feasibility – 11 U.S.C. § 1129(a)(11)**

13. Section 1129(a)(11) requires a debtor to demonstrate the plan is feasible. *See generally*, 11 U.S.C. § 1129(a)(11). The standard of proof required by a debtor to prove a chapter 11 plan's feasibility is by a preponderance of the evidence. *See In re Rubicon US REIT, Inc.*, 434 B.R. 168, 174 (Bankr. D. Del. 2010); *In re Trans Max Tech., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006). The debtor must present evidence to sufficiently demonstrate that a plan has a reasonable chance of succeeding. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226. The debtor has to establish concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under a proposed plan. *See Trans Max Tech., Inc.*, 349 B.R. at 92.

14. In addition, the Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. *See Greate Bay Hotel & Casino, Inc.,* 251 B.R. at 226.

15. "The purpose of § 1129(a)(11) 'is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor could possibly attain after confirmation.'" *See In re Sound Radio, Inc.*, 103 B.R. 521, 522 (D.N.J. 1989), *aff'd sub nom Appeal of Robinson*, 908 F.2d 964 (3d Cir. 1990) (citation omitted).

16. The facts and circumstances of this case demonstrate that the Second Modified Plan is not feasible and, as a result, fails to qualify for confirmation.

17. As an initial matter, the Debtor needs $27,000 for payments on the Effective Date. *See* Docket No. 111. The Debtor's December 2018 MOR shows only $12,494.40 cash on hand, with negative net income for the month. *See* Docket No. 121. Accordingly, the Debtor does not show the ability to make payments on the Effective Date.

18. Further, the feasibility analysis in the Second Modified Disclosure Statement provides that the Debtor will "pay $10,000.00 each month to the Class I secured creditor, $5,774.06 monthly to the Class 2 secured creditor, $389.29 quarterly to the Class 3 secured creditor, and . . . $9,446.45 monthly[] to the priority creditors, pending the sale of the home." *See* Docket No. 111. These payments total $26,609.80.

19. The most recently filed MOR, December 2018, shows total receipts of $16,754.20 and total disbursements of $21,963.54 (comprised of total ordinary disbursements of $7,963.54 and total reorganization disbursements of $14,000), resulting in negative net monthly income of ($5,209.84). *See* Docket No. 121.

20. The Debtor's MORs for the past six months show average total receipts of $17,754.20. *See* Docket Nos. 98, 99, 102, 107, 120, and 121.

21. Despite the Debtor's continued representations that the "Debtor has implemented procedures to increase income[,]" the Debtor's MORs do not support such optimistic projections. These concerns are especially relevant in light of the Debtor's age of 74 and the disclosure that the Debtor experienced "health issues that required surgery" during this case. *See* Docket No. 111.

22. As the Plan does not comply with Section 1129(a)(11), confirmation should be denied.

B. **Payments within Five Years of the Order for Relief – 11 U.S.C. § 1129(a)(9)(C)**

23. Pursuant to 11 U.S.C. § 1129(a)(9)(C), the Debtor must pay claims arising under Section 507(a)(8) in full (with interest) within five years of the "order for relief," i.e., Petition Date. The Debtor's proposal is five years from confirmation of the Plan.

24. As the Plan does not comply with Section 1129(a)(9)(C), confirmation should be denied.

C. **Absolute Priority Rule – 11 U.S.C. § 1129(a)(8)**

25. Section 1129(a)(8) requires that each class of claims either be unimpaired or vote to accept the plan.[3] Section 1129(b)(1) provides an exception to Section 1129(a)(8) if the plan does not discriminate unfairly, is fair and equitable and meets all other requirements under Section 1129(a). Fair and equitable is defined by Section 1129(b)(2), including that no junior interest can receive property until all senior interests are paid in full. 11 U.S.C. § 1129(b)(2)(B)(ii). These connected statutory provisions are commonly referred to as the "absolute priority rule." *See In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511-12 (3d Cir. 2005).

26. The Second Modified Plan indicates that Class 5 general unsecured creditors will receive a less than 1% dividend and that the Debtor and non-debtor spouse will retain their ownership interest.

27. If each impaired class does not accept the Plan, the Plan will violate the absolute priority rule.

D. **Good Faith Requirement – 11 U.S.C. § 1129(a)(3)**

28. Pursuant to 11 U.S.C. § 1129(a)(3), a plan must be "proposed in good faith and not by any means forbidden by law."

---

[3] There is no voting information at this time.

29. The Bankruptcy Code does not define good faith under Section 1129(a)(3), but the Third Circuit has stated that "'for purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purpose of the Bankruptcy Code.'" *In re Combustion Engineering, Inc.*, 391 F.3d 190, 246-47 (3d Cir. 2004) (citations omitted). Good faith has also been described as requiring that "there was fundamental fairness in dealing with the creditors." *In re Lernout & Hauspie Speech Products N.V.*, 308 B.R. 672, 675 (D. Del. 2004). The requirement of good faith "must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1300 (11th Cir. 2001) (citation omitted). The burden to establish good faith is on the plan proponent. *In re PPI Enterprises, Inc.*, 324 F.3d 197, 211 (3d Cir. 2003).

30. Here, the Debtor identifies unsecured claims totaling $8,408,120.40. *See* Docket No. 111. The Debtor proposes a one-time payment of $50,000 to be shared pro rata. *See id*. This represents a less than 1% distribution to unsecured. Further, the Debtor proposes to reduce this amount by the quarterly fee due to the United States Trustee. *See id*. The Debtor also proposes serving as the Disbursing Agent and collecting "5% for distribution services rendered and expenses incurred pursuant to the Plan."[4] *See id*. The truncated plan projections show that the Debtor anticipates gross monthly income of $41,254.20 and expenses of $38,512.39, resulting in monthly net cash flow of $2,741.81. *See id*. Monthly expenses include $8,000 for rent, $2,600 for utilities, $13,000 in taxes. *See id*. Despite these high expenses and the projected monthly net cash flow of $2,741.81, the Debtor is only proposing a $50,000 payment to unsecureds to be shared pro-rata.

---

[4] It is unclear what this calculation would be based on.

31. Based on the Debtor's plan projections and the proposed treatment of creditors, including the proposal to reduce payments to unsecureds by the quarterly fee due to the U.S. Trustee, as well as the proposal to receive "5%" as disbursing agent, it does not appear that the Plan was filed in good faith pursuant to 11 U.S.C. § 1129(a)(3).

**Reservation of Rights**

32. The U.S. Trustee leaves the Debtor to meet his burden and reserves any and all rights, remedies and obligations to, inter alia, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required to assert such other grounds as may become apparent upon further factual discovery.

## CONCLUSION

WHEREFORE, it is respectfully submitted that the Court deny confirmation and grant such other relief as the Court deems just and proper.

Respectfully submitted,

ANDREW R. VARA
ACTING UNITED STATES TRUSTEE
REGION 3

By:    */s/ Lauren Bielskie*
Lauren Bielskie
Trial Attorney

Dated: February 5, 2019