WARD W. BENSON
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Telephone: 202-514-9642
Fax: 202-514-6866
Email: ward.w.benson@usdoj.com
*Counsel for the United States of America*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
(TRENTON)

| | |
|---|---|
| In re: ) | Case No. 17-bk-20755-MBK |
| ) | Chapter 11 |
| ALEXANDER FIGLIOLIA, ) | Judge Michael B. Kaplan |
| ) | |
| Debtor. ) | |
| ) | |

**UNITED STATES' OBJECTION TO CONFIRMATION AND JOINDER TO THE UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION**

The Court should deny confirmation of the debtor's plan (the "Plan").[1] It contains numerous violations of § 1129, all of which are to the detriment of his creditors, including the United States. It amounts to a bad faith attempt to stave off BNY Mellon's attempt to foreclose on his home while paying next to nothing to satisfy his millions of dollars in unsecured debts. The Court should see the plan for what it is and refuse to confirm it.

<u>IRS PRIORITY CLAIMS</u>

The Plan fails to properly provide for the IRS's priority claims.

---

[1] In addition to the arguments made here, the United States joins in the U.S. Trustee's objection to confirmation, the content of which is incorporated by reference into this brief.

1

First, the Plan uses an impermissibly long payment period. It calls for quarterly payments over the five years following confirmation. The Code requires that priority tax claims be paid within five years *of the petition date*. § 1129(a)(9)(C). The claims thus must be paid within approximately three years of confirmation, assuming the Plan is confirmed in the next two months.

Second, the Plan fails to provide for full payment of the IRS's priority claims, as is required by § 1129(a)(9)(C). The Plan calls for quarterly payments of $1,000 for five years on account of the IRS's priority claims for IRC § 6672 penalties, which were imposed for failure to pay over employees' tax withholdings. These claims totaled over $235,000 as of the petition date. The Plan thus completely fails to provide for payment of these claims. And while the debtor may dispute them, until he files an objection they are allowed, and the Plan must provide for their full payment.

Third, the Plan's proposed interest rate of 4% is too low. The interest rate for priority tax claims provided for by a plan must be the rate in effect under applicable nonbankruptcy as of the date of confirmation. *See* § 511(a). The current IRS underpayment rate is 6%. The Plan thus must provide for 6% interest on the priority tax claims.

## IRS SECURED CLAIMS

As with the IRS's priority claims, the Plan fails to properly provide for the IRS's secured claims.

First, it fails to provide for full payment, as is required by § 1129(b)(1)(A). It calls for quarterly payments of $389.28. That adds up to $7,885.60, which is substantially less than the IRS's allowed secured claim of $10,900.

Second, it inaccurately describes the property subject to the IRS's liens. Tax liens apply to all property and rights to property, whether real or personal. 26 U.S.C. § 6321. The IRS's secured claim is based on the value of the debtor's unencumbered personal property listed on his schedules. Thus, while the Plan calls for the IRS to retain a third-priority lien on the debtor's home, it must instead provide that the IRS retain its first-priority liens on the debtor's personal property.

Third, the Plan's interest rate is too low. As with the priority claims, the Plan provides an interest rate of 4%. The statutorily required rate is 6%, and so the IRS's secured claims must be paid at this higher rate.

## FEASIBILITY

The Plan does not meet the feasibility requirement of § 1129(a)(11), which mandates that confirmation not be likely to be followed by the need for further reorganization. The Plan's feasibility is premised on the sale of the debtor's home. According to the disclosure statement, it has a taxed assessment value of $4,270,400 and has been appraised at $4,900,000. These numbers are suspect. According to the Monmouth County's website, the property's assessed value in 2018 was $3,381,500. The website Zillow estimates its value at $3,442,338. As of the petition date, the debtor owed a total of $4,626,978 on his first and second mortgages on the property. Any sale of the property thus is unlikely even to pay off the mortgage claims, let alone to yield the surplus necessary to pay the priority and secured tax claims of the IRS and the State of New Jersey.

## ABSOLUTE PRIORITY RULE

The Plan violates the absolute priority rule codified in § 1129(b)(2)(B), which provides that if a class of claims is not paid in full under a plan, no more junior class of claims or interests

may receive any property under the plan. In an individual Chapter 11 case, this means that unless general unsecured claims are paid in full, the debtor may not retain any prepetition property under the plan. *Brown v. Ferroni (In re Brown)*, 505 B.R. 638, 648-649 (E.D. Pa. 2014); *Zachary v. California Bank & Trust*, 811 F.3d 1191, 1197-1198 (9th Cir. 2016) (noting that all circuit courts to rule on the question have found the absolute priority rule applies to prepetition property in individual Chapter 11 cases). The Plan provides for the debtor to retain his multi-million dollar home, while creditors holding millions in general unsecured claims will receive their pro rata shares of only $50,000. This is a blatant and downright insulting violation of the absolute priority rule.

## DISCHARGE AND RELEASE

The Plan contains inappropriate discharge and release language. It provides that "upon confirmation, the Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. §1141." (Plan IV(A)). In a case involving an individual debtor, confirmation does not discharge any debts until the court grants a discharge upon completion of all payments required by the plan. 11 U.S.C. § 1141(d)(5). Accordingly, there is no basis for the discharge language in the Plan.

## LIMITATIONS ON CONVERSION/DISMISSAL

The Plan impermissibly limits the right of creditors to move for conversion or dismissal of the case post-confirmation. It permits any creditor or party in interest to move for dismissal or conversion "if there is a default in performing under the Plan." (Plan IV(D)). To the extent this provision would prohibit such parties from moving for dismissal or conversion for other reasons, there is no basis for such relief. It is particularly prejudicial to the United States, which has the right to move for dismissal or conversion if the debtor fails to comply with his post-petition tax

filing and payment requirements.  11 U.S.C. § 1112(b)(4)(I).  The Court should therefore decline to grant such relief.

### DISBURSEMENT AGENT FEES

The Plan, without any justification, calls for the debtor to receive "5% for distribution services rendered and expenses incurred pursuant to the Plan."  (Plan II(F)(3)).  Five percent of what, exactly, is not clear.  Whatever it refers to, though, there is no basis for the debtor to receive a fee for fulfilling his duties under the Plan, which appear to be nothing more than writing several checks on a quarterly basis.  The debtor should not receive any special compensation for doing so.

### BAD FAITH

The Plan has not been proposed in good faith, as is required by § 1129(a)(3).

According to the debtor's disclosure statement, this case was filed in response to a state court foreclosure action against his home.  (Disclosure Statement II(D)).  The debtor admits that he has not resolved his dispute with BNY Mellon, the mortgagee who commenced the foreclosure action.  (*Id.*).  Now he proposes to try to sell the home within twelve months of confirmation, and then to sell it "at public auction" if he is unable to do so.

Given the debtor's history, this is a transparent attempt to forestall the inevitable foreclosure for another year, all while discharging millions of dollars of tax liabilities in return for a paltry $50,000.  This is an unconscionable result, and the Court should not permit it to happen.

WHEREFORE THE UNITED STATES OF AMERICA RESPECTFULLY REQUESTS that the Court deny confirmation of the Plan and further deny the debtor the opportunity to file an amended plan.

Dated: March 25, 2019

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Ward W. Benson*
WARD W. BENSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: 202-514-9642
Fax: 202-514-6866
Email: ward.w.benson@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that the foregoing OBJECTION TO CONFIRMATION was filed with the clerk of the court on March 25, 2019, using the CM/ECF system, which will send notification of such filing to all parties appearing in said system.

*/s/ Ward W. Benson*
WARD W. BENSON
