Atkinson & DeBartolo, P.C.
The Galleria, 2 Bridge Avenue
Building Two, Third Floor
P.O. Box 8415
Red Bank, New Jersey 07701
732-530-5300
Attorneys for Alexander Figliolia
By: Bunce D. Atkinson, Esq.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

In re:

|  |  |
|---|---|
| ALEXANDER FIGLIOLIA, | Chapter 11 |
| Debtor. | Case No. 17-20755 |

**THIRD MODIFIED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING THE LIQUIDATION CHAPTER 11 PLAN PROPOSED BY ALEXANDER FIGLIOLIA.**

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS ORIGINAL PLAN OF LIQUIDATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF LIQUIDATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

Dated:

05/10/2019

Proponent     _Alexander Figliolia_

By:     _Alexander Figliolia_

# TABLE OF CONTENTS

Page

I. INTRODUCTION...................................................................................................................5
   A.  Purpose of This Document.........................................................................................5
   B.  Confirmation Procedures ...........................................................................................7
      1.  Time and Place of the Confirmation Hearing ...................................................8
      2.  Deadline for Voting for or Against the Plan .....................................................8
      3.  Deadline for Objecting to the Confirmation of the Plan....................................8
      4.  Identity of Person to Contact for More Information Regarding the Plan ...........8
   C.  Disclaimer ..................................................................................................................8

II. BACKGROUND ................................................................................................................10
   A.  Description and History of the Debtor's Business....................................................10
   B.  Principals/Affiliates of Debtor's Business ...............................................................10
   C.  Management of the Debtor Before and During the Bankruptcy................................10
   D.  Events Leading to Chapter 11 Filing .......................................................................10
   E.  Significant Events During the Bankruptcy...............................................................10
      1.  Bankruptcy Proceedings .................................................................................10
      2.  Other Legal Proceedings.................................................................................12
      3.  Actual and Projected Recovery of Preferential or Fraudulent Transfers ..........13
      4.  Procedures Implemented to Resolve Financial Problems..................................13
      5.  Current and Historical Financial Conditions....................................................13

III. SUMMARY OF THE PLAN OF REORGANIZATION....................................................14
   A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan ...........14
   B.  Unclassified Claims .................................................................................................14
      1.  Administrative Expenses and Fees ..................................................................14
      2.  Priority Tax Claims .........................................................................................16
   C.  Classified Claims and Interests ...............................................................................18
      1.  Classes of Secured Claims ..............................................................................18
      2.  Classes of Priority Unsecured Claims .............................................................23
      3.  Class of General Unsecured Claims .................................................................24

    4.   Class(es) of Interest Holders .................................................................25

D.  Means of Effectuating the Plan ...............................................................25

    1.   Funding for the Plan ........................................................................25

    2.   Post-confirmation Management ........................................................26

    3.   Disbursing Agent.............................................................................26

E.  Other Provisions of the Plan...................................................................26

    1.   Executory Contracts and Unexpired Leases .....................................26

    2.   Changes in Rates Subject to Regulatory Commission Approval .......26

    3.   Retention of Jurisdiction .................................................................26

    4.   Procedures for Resolving Contested Claims ....................................27

    5.   Effective Date .................................................................................27

    6.   Modification ...................................................................................27

F.  Tax Consequences of Plan .....................................................................27

G.  Risk Factors .........................................................................................28

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES....................................28

A.  Who May Vote or Object ......................................................................29

    1.   Who May Object to Confirmation of the Plan .................................29

    2.   Who May Vote to Accept/Reject the Plan .......................................29

        a. What Is an Allowed Claim/Interest …...…………………………………………29

        b. What Is an Impaired Claim/Interest.………………………………………………30

    3.   Who Is Not Entitled to Vote ...........................................................30

    4.   Who Can Vote in More Than One Class ..........................................31

    5.   Votes Necessary to Confirm the Plan...............................................31

    6.   Votes Necessary for a Class to Accept the Plan................................31

    7.   Treatment of Nonaccepting Classes ................................................31

    **8.**   Request for Confirmation Despite Nonacceptance by Impaired Class(es)...........................32

B.  Liquidation Analysis .............................................................................32

C.  Feasibility.............................................................................................34

V. EFFECT OF CONFIRMATION OF PLAN...............................................................37

A.   Discharge ............................................................................................37

B.  Revesting of Property in the Debtor .......................................................37

C.  Modification of Plan .............................................................................37

3

D.   Post-Confirmation Conversion/Dismissal..................................................................................38

**Error! Bookmark not defined.**

# I.

## INTRODUCTION

Alexander Figliolia is the debtor in a Chapter 11 Bankruptcy. On May 25, 2017 the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 bankruptcy petition under the United States Bankruptcy Code ("Code"), 11 *U.S.C.* § 101, et seq., Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS EXHIBIT A.

This is a liquidation plan. The Plan provides for the sale of the Proponent's home located at 105 Middletown Road, Holmdel, New Jersey, which is co-owned with the non-debtor spouse, Janet Figliolia. Pending the sale, the Proponent proposes to pay $10,000.00 on account of the existing first mortgage, and make quarterly payments on priority claims. The Plan provides for payment in full of all secured creditors and priority claimants with a dividend to unsecured creditors from the sale of the home. If the sale price is insufficient to pay the priority claimants and unsecured creditors at the time of closing, any balance due to them will be paid over the remaining life of the Plan.

## A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

    (1)    **WHO CAN VOTE OR OBJECT,**

    (2)    **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

    (3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

    (4)    **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

    (5)    **THE EFFECT OF CONFIRMATION, AND**

    (6)    **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has

determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.    Confirmation Procedures**

Persons Potentially Eligible to Vote on the Plan

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. All shareholders of record as of the date of approval of this Disclosure Statement may vote on the Plan. The Ballot Form that you received does not constitute a proof of claim. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, U.S. Court House, (insert address). The Clerk of the Bankruptcy Court will not provide this information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN,

THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

1.      **Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on _____ at **10:00 A.M.**, in **Courtroom 8**, United States Bankruptcy Court, 402 East State Street, Trenton, New Jersey  08608.

2.      **Deadline for Voting for or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Counsel for the Plan Proponent, Bunce D. Atkinson, Esq., c/o Atkinson & DeBartolo, P.C., P.O. Box 8415, Red Bank, New Jersey 07701.

Your ballot must be received by _____ or it will not be counted.

3.      **Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Counsel for the Plan Proponent, Bunce D. Atkinson, Esq., c/o Atkinson & DeBartolo, P.C., P.O. Box 8415, Red Bank, New Jersey 07701 by _____.

4.      **Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Counsel for the Plan Proponent, Bunce D. Atkinson, Esq., c/o Atkinson & DeBartolo, P.C., P.O. Box 8415, Red Bank, New Jersey 07701, phone number: (732) 530-5300.

C.    **Disclaimer**

The financial data relied upon in formulating the plan is based on Debtor's financial records and projections.  The information contained in this Disclosure Statement is provided by the Debtor.

The Plan Proponent represents that everything stated in the Disclosure Statement is true to the best of the Proponent's knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

## II.

## BACKGROUND

**A.**    **Description and History of the Debtor's Business**

The Debtor is an individual who is 74 years old. He works as a consultant for Alex

Figliolia Water & Sewer, LLC, an entity in which he has no ownership interest. The Limited

Liability Company is owned by the Debtor's brother.

**B.**    **Principals/Affiliates of Debtor's Business** N/A.

**C.**    **Management of the Debtor Before and During the Bankruptcy.**

The Debtor who is an individual will continue to manage his financial affairs

**D.**    **Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The Debtor filed his Chapter 11 petition on May 25, 2017 in an effort to save his home located

at 105 Middletown Road, Holmdel, New Jersey, which he owns jointly with his non-debtor wife,

Janet Figliolia. At the time of the filing of the petition, a foreclosure action was pending in the

Superior Court of New Jersey entitled *Bank of New York Mellon v. Alexander Figliolia, et al.,* Docket

No. F-031570-16. During the pendency of the foreclosure case, the Debtor was unsuccessful in

attempting to amicably resolve the lawsuit with the holder of the first mortgage with a mortgage

modification agreement.

**E.**    **Significant Events During the Bankruptcy**

    **1.**    **Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this

case:

    1.    The Debtor filed his petition for relief under Chapter 11 on May 25, 2017.

2.  The First Meeting of Creditors was conducted on August 17, 2017.

3.  An Order was entered granting the employment of Atkinson & DeBartolo, P.C. as counsel for the Debtor on June 16, 2017.

4.  An Order was entered granting the employment of Barbara Rizzi, CPA, as accountant for the Debtor on June 19, 2017.

5.  An Order granting a motion to extend time to object to discharge filed by Robert Napolitano was entered on October 6, 2017.

6.  An Order extending the time of exclusivity period for filing Debtor's Disclosure Statement and Plan for an additional 60 days until November 22, 2017 was entered on October 19, 2017.

7.  An Order granting attorney fees and costs to Atkinson & DeBartolo, P.C. through August 28, 2017 was entered on November 2, 2017.

8.  On November 3, 2017, Biagio and Filomena Napolitano filed an adversary proceeding, Case No. 17-01702, seeking to have a debt claimed to be due and owing to them declared nondischargeable.

9.  On December 20, 2017, an Order was entered granting Debtor's motion to modify the Proof of Claim #10 of the State of New Jersey to a general unsecured claim.

10. On December 20, 2017, an Order was entered granting Debtor's motion to modify the Proof of Claim #1 of the State of New York to a general unsecured claim and expunging a portion of the claim.

11. On February 14, 2018, an Order was entered requiring the Debtor to file his Disclosure Statement and Plan by April 30, 2018.

12. On November 5, 2018 the hearing on the Amended Disclosure Statement and Plan

11

was extended to December 3, 2018.

13. On November 5, 2018, Atkinson & DeBartolo, P.C. filed a Fee Application for $21,660.00 plus costs of $210.62 for the period April 19, 2018 through October 31, 2018. The hearing on the application is scheduled for December 6, 2018.

14. On November 30, 2018, the Debtor filed a First Modified Disclosure Statement and Plan.

15. On December 7, 2018, the Debtor filed a Second Modified Disclosure Statement and Plan.

16. On April 11, 2019, ReMax Central was appointed as the real estate broker to sell the Debtor's home at 105 Middletown Road, Holmdel, New Jersey.

17. In April 2019, the property located at 105 Middletown Road, Holmdel, New Jersey, was listed for sale for $8,800,000.00.

The Court has approved the employment of the following professionals:

1. Atkinson & DeBartolo, P.C., as attorneys for the Debtor-In-Possession by Order entered June 16, 2017.

2. Barbara Rizzi, CPA as the certified public account for the Debtor by Order entered June 19, 2017.

Currently, the following significant adversary proceedings and motions are still pending:

The Debtor intends to file a motion to expunge or modify Claim 6-2 of the IRS, and Claim 13 of the City of New York.

## 2.    Other Legal Proceedings

In addition to the proceeding discussed above, the Debtor is currently involved in the following non-bankruptcy legal proceedings: The Debtor is a defendant in a case pending in the

## II.

## BACKGROUND

**A.    Description and History of the Debtor's Business**

The Debtor is an individual who is 74 years old.  He works as a consultant for Alex

Figliolia Water & Sewer, LLC, an entity in which he has no ownership interest.  The Limited

Liability Company is owned by the Debtor's brother.

**B.    Principals/Affiliates of Debtor's Business** N/A.

**C.    Management of the Debtor Before and During the Bankruptcy.**

The Debtor who is an individual will continue to manage his financial affairs

**D.    Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The Debtor filed his Chapter 11 petition on May 25, 2017 in an effort to save his home located

at 105 Middletown Road, Holmdel, New Jersey, which he owns jointly with his non-debtor wife,

Janet Figliolia.  At the time of the filing of the petition, a foreclosure action was pending in the

Superior Court of New Jersey entitled *Bank of New York Mellon v. Alexander Figliolia, et al.,* Docket

No. F-031570-16.  During the pendency of the foreclosure case, the Debtor was unsuccessful in

attempting to amicably resolve the lawsuit with the holder of the first mortgage with a mortgage

modification agreement.

**E.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this

case:

1. The Debtor filed his petition for relief under Chapter 11 on May 25, 2017.

United States District Court, Eastern District of New York, *Campoverde v. Alex Figliolia Water & Sewer, LLC, et al.,* Case No. 15-cv-7353. The Debtor consented to relief from the automatic stay to enable the United States District Court to determine whether the Debtor is individually liable, and if so, for what amount. In the event the Debtor is determined to be liable, the amount of the general unsecured claim #15 of Campoverde will be as determined in the United States District Court.

### 3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers

There are no actual or projected recoveries of preferential transfers or fraudulent transfers.

### 4.    Procedures Implemented to Resolve Financial Problems

During the pendency of the Chapter 11, the Debtor experienced health issues that required surgery. This resulted in the Debtor not being able to perform as many hours of service as a consultant as he would have liked. The Debtor has started to heal, and he has increased his workload in an effort to increase his income for purposes effectuating a Plan. The Debtor earned approximately $425,000.00 per annum in 2014 and 2015. The Debtor is increasing his workload to attain a rate of income so he can make required payments under the Plan pending a sale of the home, and subsequent to the sale if the sale price is insufficient to pay priority creditors.

### 5.    Current and Historical Financial Conditions

The Debtor's primary asset is his single family home located at 105 Middletown Road, Holmdel, New Jersey, which he owns jointly with his non-debtor spouse, Janet Figliolia. The Plan provides for the sale of the real property. Fifty percent (50%) of the net proceeds of sale will be the property of the co-owner, Janet Figliolia. At the time of the filing of the petition, the home was assessed by the Township of Holmdel for real estate tax purposes at $4,270,400.00. Subsequently, it was reassessed for tax purposes only at $3,597,400.00. In connection with the Chapter 11 proceeding, the Debtor obtained a market analysis from Bottone Realty Group, Inc. valuing the real

13

property at $4,900,000.00. The home is located on 4.41 acres. The Debtor hired ReMax to sell the

real property. The broker has recommended and listed the property for $8,800,000.00. The Debtor

is current in the payment of the second mortgage, and is current on his monthly operating reports.

Pending confirmation, the Debtor has been making adequate protection payments to the first

mortgagee of $10,000.00 per month commencing December 2018. Interest will continue to accrue

at the contractual rate. Because the $10,000.00 is less than the regular monthly payment, the total

debt owed to the first mortgage holder will increase. Based on the most recently filed Monthly

Operating Report for the month of February 2019, the Debtor received $41,500.00 of consulting

income and $2,700.00 Social Security in the month of February 2019. His income totaled $44,200.00

in February 2019. A copy of the Debtor's most recent Monthly Operating Report is attached hereto.

### III.

### SUMMARY OF THE PLAN OF REORGANIZATION

**A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan**

The Plan classifies claims and interests in various classes. The Plan states whether each class

of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will

receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes. They are not considered impaired

and they do not vote on the Plan because they are automatically entitled to specific treatment

provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following

claims in a class:

**1.    Administrative Expenses and Fees**

Administrative expenses are claims for fees, costs or expenses of administering the Debtor's

Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code.  The Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the Office of the United States Trustee which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists **all** of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan:

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Atkinson & DeBartolo, PC | $35,000.00 | Subject to Court Approval of fees and costs. Paid in full on Effective Date unless otherwise agreed. | Administrative/Priority |
| Barbara Rizzi, CPA | $0.00 | Paid in full on Effective Date unless otherwise agreed | Administrative/Priority |
|  |  |  |  |
|  |  |  |  |
| Clerk's Office Fees | $0.00 | Paid in full on Effective Date |  |
| Office of U.S. Trustee Fees | $0.00 | Paid in full on Effective Date | Administrative/Priority |
|  | $35,000.00 |  |  |

**Court Approval of Professional Compensation Required:**

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application.  Only the amount of

15

compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan. Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute.

As indicated above, the Debtor will need to pay $$35,000.00 of administrative claims and fees on the effective date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

### 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment, and other taxes described by section 507(a)(8) of the Code.[39] Unless the holder of such a section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim in regular installments paid [with interest as determined by applicable non-bankruptcy law] over a period not exceeding 5 years from the order for relief.

The following chart lists <u>all</u> of the Debtor's Section 507(a)(8)[40] priority tax claims and their

16

treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| • State of NJ, Div. of Taxation<br>• Type of tax =TGI-EE for years<br>  2014 through 2016<br>• Date tax assessed = 04/2015 through 04/2017 | Total amount claimed is $73,418.73 | • Pymt interval=quarterly based upon 5 year payout from May 25, 2017 the date of the Order of relief.<br>• Pymt amt/interval = quarterly, $5,000.00 with a balloon payment on May 1, 2022.<br>• Begin date=09/01/2019<br>• End date= 5 years following confirmation unless paid in full upon sale of the home.<br>• Interest Rate%=statutory, currently 8.25%<br>• Total Payout Amount=100% upon sale of home. If the Debtor's share of sale proceeds after payment of the secured creditors and his exemption is sufficient, this claim will be paid upon sale. If the proceeds are insufficient to pay the claim in full, the balance will be paid in equal quarterly payments of $5,000.00 with a balloon payment on May 1, 2022. |
| • State of NJ, Div. of Taxation<br>• Type of tax =GIT-ER<br>• Date tax assessed =12/2014 through 12/2016 | $2,707.57 | • Pymt interval =quarterly based upon 5 year payout from May 25, 2017, the date of the order of relief.<br>• Pymt amt/interval =$220.00 quarterly.<br>• Begin date =09/01/2019<br>• End date =September 1, 2021 following confirmation unless paid in full upon sale of the home.<br>• Interest Rate % Statutory, currently 8.25%<br>• Total Payout Amount% = 100% upon sale of the home subject to claim being expunged. If the Debtor's share of sale proceeds after payment of the secured creditor and of his exemption is sufficient, this claim will be paid upon sale. If the proceeds are insufficient to pay in full, the balance will be paid in equal quarterly payments commencing September 1, 2019 and ending September 1, 2021 for any remaining balance. |

| | | |
|---|---|---|
| • Internal Revenue Service<br>• Type of tax =1040, years 2013 through 2016<br>• Date tax assessed =12/1/2014 through 11/27/2017 | $436,807.46 including interest. | • Pymt interval =quarterly based upon 5 year payout from May 25, 2017 the date of the Order of Relief<br>• Pymt amt/interval =$24,133.41<br>• Begin date =09/01/2019<br>• End date =5 years following the date of the Order of Relief unless paid in full upon sale of the home.<br>• Interest Rate% = 6%<br>• Total Payout<br>Amount % = 100% upon the sale of the home. If the Debtor's share of sale proceeds after payment of his exemption is sufficient, this claim will be paid upon sale.  If the proceeds are insufficient to pay in full, the balance will be paid in equal quarterly payments of $24,133.41  over the balance of the life of the Plan with a balloon payment on May 1, 2022. |
| • Name = Internal Revenue Service<br>• Type of tax = FICA, FUTA, and civil penalties for period 3rd Quarter 2006, 2nd Quarter 2006, 1st Quarter 2007, 2nd Quarter 2008.<br>• Date tax assessed =12/28/2009 for civil penalties for FUTA and FICA | $235,933.88 (disputed) | • Pymt interval =quarterly<br>• Pymt amt/interval =$1,000.00<br>• Begin date =following determination of extent and validity of the claim<br>• End date =5 years after commencement of the case unless paid in full upon sale of home.<br>• Interest Rate %= 6%<br>• Total Payout<br>Amount  % =100% of allowed claim as may be allowed upon sale of home, in the event payment is made Debtor shall seek a refund based upon not being obligated for these taxes. If the Debtor's share of sale proceeds after payment of his exemption is sufficient, this claim will be paid upon sale.  If the proceeds are insufficient to pay in full, the balance will be paid in equal quarterly payments over the balance of the life of the Plan with a balloon payment in May 1, 2022. If a refund is received, it will be applied to any outstanding priority claim balances. |

C.    **Classified Claims and Interests**

1.    **Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  The following chart

lists all classes of creditors containing the holders of the Debtor's secured pre-petition claims and

their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of:<br>•Name =Bank of New York Mellon<br>•Collateral description =105 Middletown Road, Holmdel, New Jersey<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =1st lien<br>•Principal owed =2,955,329.37.00<br>•Pre-pet.arrearage amount = $293,732.02<br>•Post-pet.arrearage amount = unknown, to be paid on sale<br>•Total claim   amount =$3,474,709.06 as of February 6, 2019 | No | Yes | • Pymt interval =monthly<br>• Pymt amt/interval =$10,000.00 per month<br>• Balloon pymt =$3,474,709.06 plus any accrued interest or escrow advances prior to confirmation, and any unpaid post-confirmation interest upon sale of the property.<br>• Begin date =effective date of Plan<br>• End date = Upon sale of home.<br>• Interest rate % =Contract rate<br>• Total payout   % =100%<br>• Treatment of lien = Paid in full upon sale of home on or before January 31, 2020.  If a contract is pending on January 31, 2020 and closing will occur in 60 days, the time will be extended to enable the closing to take place. If a contract of sale is not obtained prior to January 31, 2020, a public auction will take place within 60 days thereafter.  The claimant shall be permitted to credit bid its lien claim at the auction. |
| 2 | Secured Claim of:<br>•Name = Bank of NY Mellon<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =2nd mortgage lien<br>•Principal owed =$1,486,207.62<br>•Pre-pet. arrearage amount =$0<br>•Post-pet. arrearage amount =$0<br>•Total claim amount =$1,490.684.90 less payments made pending sale. | No | No | • Pymt interval =monthly<br>• Pymt amt/interval =$5,774.06<br>• Balloon pymt =$1,192,163.09<br>• Begin date =Upon confirmation<br>• End date =11/25/2030 as set forth in the mortgage<br>• Interest rate % =3.5%<br>• Total payout   % =100%<br>• Treatment of lien =No change to the loan document, remain as second mortgage to be paid in full upon sale of the home. |

19

| 3 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =3rd lien<br>•Principal owed =$30,297.98<br>•Pre-pet. arrearage amount =$30,297.98.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $30,297.98 as a result of a Certificate of Debt docketed August 10, 2006, Judgment DJ-201633-06 | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate % = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 3rd lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st and 2nd secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |
| 4 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2004<br>•Principal owed =$85,629.47<br>•Pre-pet. arrearage amount =$85,629.47.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $85,629.47 as a result of a Certificate of Debt docketed August 30, 2007, Judgment DJ-237902-07 | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims, and the 3rd secured claim and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate % = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 4th lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st, 2nd and 3rd secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |

| 5 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2006<br>•Principal owed =$103,774.27<br>•Pre-pet. arrearage amount =$103,774.27.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $103,774.27 as a result of a Certificate of Debt docketed January 15, 2009, Judgment DJ-16236-09. | No | Yes | • Pymt interval =none<br>• Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st, 2nd mortgage claims, the 3rd and 4th secured claims, and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate % = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 5th lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st, 2nd, 3rd and 4th secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |
| 6 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2008<br>•Principal owed =$131,900.00<br>•Pre-pet. arrearage amount =$131,900.00.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $131,900.00 as a result of a Certificate of Debt docketed November 29, 2010, Judgment DJ-303034-10. | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims, the 3rd, 4th and 5th secured claims, and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate % = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 6th lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st, 2nd 3rd, 4th and 5th secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim |

| 7 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2005, 2007, 2009 and 2010.<br>•Principal owed =$251,281.46<br>•Pre-pet. arrearage amount =$251,281.46.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $251,281.46as a result of a Certificate of Debt docketed May 10, 2012, Judgment DJ-99386-12. | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims and the 3rd, 4th, 5th and 6th secured claims, and the cost of sale.  If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>•Interest rate % = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 7th lien on real property to be paid from the Debtor's share of the sale proceeds.  If there are insufficient sale proceeds after payment of the 1st, 2nd, 3rd, 4th, 5th, and 6th secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |

| 8 | Secured Claim of:<br>•Name = IRS<br>•Collateral description<br>=105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =3rd lien<br>•Principal owed =$10,900.00<br>•Pre-pet. arrearage amount =$10,900.00<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $10,900.00 | No | Yes | • Pymt interval =quarterly<br>•Pymt amt/interval=$389.28<br>• Balloon pymt= N/A<br>• Begin date =06/1/2019<br>• End date =sale of home if there are insufficient proceeds to pay the claim after secured class 1, 2, 3 4, 5, 6 and 7, it will be treated as an unsecured claim. in full the balance will be paid only 5 years, from the Order of Relief<br>• Interest rate % =4%<br>• Total payout-% =100% upon sale of home if funds are available after secured claims 1, 2, 3, 4, 5, 6, and 7.<br>•Treatment of lien = remain as 8th lien on real property to be paid in full from Debtor's share of the sale proceeds.  If there are insufficient sale proceeds the claim will be paid in full within 4 years of Order of Relief. Any deficiency following the sale will be treated as a priority claim. |
| 9 | Secured Claim of:<br>•Name =City of NY<br>•Collateral description =None listed<br>•Collateral value = $0<br>•Claimed Priority of security int. =None listed<br>•Principal owed =$375,000.00<br>•Pre-pet. arrearage amount =N/A<br>•Post-pet. arrearage amount =N/A<br>•Total claim amount =$375,000.00 | No | Yes Debtor will seek to modify claim to a general unsecured claim because it does not represent a penalty owed by the Debtor | • Pymt interval =None<br>• Pymt amt/interval =None<br>• Balloon pymt =None<br>• Begin date =N/A<br>• End date =N/A<br>• Interest rate % =N/A<br>• Total payout _% =N/A<br>• Treatment of lien =No lien |

## 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount

of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7)[53] priority unsecured claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| N/A | Priority unsecured claim pursuant to • Total amt of claims = | N/A | • Paid in full in cash on Effective Date |
| N/A | Priority unsecured claim pursuant to • Total amt of claims = | N/A | • Paid in full in cash on Effective Date |

### 3.    Class of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 10 | General unsecured claims • Total amt of claims =$8,408,120.40 | YES | • Pymt interval =One time • Pymt amt/interval =$50,000. • Begin date = • End date =The payment will be made in full from Debtor's share of the proceeds of the sale of the home after payment of all secured claims, Debtor's exemption, administrative claims, costs of closing, and priority claims.  If the claim is not paid in full upon sale, the balance due will be paid as a lump sum  May 27, 2022, 5 years after the filing of the petition. The amount paid will not be reduced by post confirmation payments required to be made to the United States Trustee. • Interest rate % =0% |

4.     **Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor

are interest holders. If the Debtor is a partnership, the interest holders include both general and

limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following

chart identifies the Plan's treatment of the class[61] of interest holders:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 1 | Alexander Figliolia | Yes | Retain only exemption in personal property. The Debtor will use his exemption in the real property to fund the Plan. |

D.     **Means of Effectuating the Plan**

1.     **Funding for the Plan**

The Plan will be funded by the following: The Debtor will utilize his Social Security

income and his consulting income from Alex Figliolia Water & Sewer, LLC to fund his Plan

for the monthly and quarterly payments. A lump sum will be made from the sale of the

Debtor's interest in the marital home, which is co-owned by his wife, Janet Figliolia.  Janet

Figliolia has consented to the sale. The property has been listed for sale for $8,800,000.00 by

the broker, ReMax Central.  It shall be sold on or before January 31, 2020.  If a contract of

sale is pending on January 31, 2020, and the closing is scheduled to take place within 60 days,

the date of sale will be extended to pre-contract date.  If a contract is not obtained by

January 31, 2020, the proponent will employ an auctioneer and the property will be sold at

public auction within 60 days.  The first mortgage holder shall be entitled to credit bid its full

claim including any and all post-petition arrears. Failure to conduct an auction will permit the first mortgage holder to file a certification of default and obtain immediate stay relief.

**2.    Post-confirmation Management**

By the Debtor, Alexander Figliolia

**3.    Disbursing Agent**

The Debtor, Alexander Figliolia, shall act as the disbursing agent for the purpose of making all distributions to secured creditors, the priority creditors and the general unsecured class provided for under the Plan. The Plan Proponent will pay direct the first and second mortgage. The Disbursing Agent shall not be compensated.

**E.    Other Provisions of the Plan**

**1.    Executory Contracts and Unexpired Leases**

The Plan provides that all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor in writing or previously assumed by Court Order, shall be deemed rejected. All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

**2.    Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not   subject to governmental regulatory commission approval of its rates.[66]

**3.    Retention of Jurisdiction**

The Court will retain jurisdiction as provided in III, C, of the Plan.

26

### 4.    Procedures for Resolving Contested Claims

The Debtor and/or the Disbursing Agent shall have 60 days subsequent to confirmation to object to the allowance of claims, except for the claim of Campoverde which is being determined by the United States District Court for the Eastern District of New York. The Proponent has reviewed the claims that have been filed. The Proponent intends to object or cause the Disbursing Agent to object to the following number and amounts of claims in each class:

1.  The IRS priority Claim 6-3.

2.  The secured claim of the City of New York.

### 5.    Effective Date

The Plan will become effective on the Effective Date, which is the date on which the order of confirmation becomes final.

### 6.    Modification

The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

### F.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the

tax implications of any action.

The following are the tax consequences that the Plan will have on the Debtor's tax liability: The Debtor does not believe there are any tax consequences to his Plan.

### G.    Risk Factors

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation: Because the real property is worth more than the two mortgage secured claims, and the Debtor's wife and co-owner has consented to the sale, and following the sale Debtor will have sufficient income to pay any remaining priority and unsecured Plan payments.  The primary risk is the Debtor's age of 74 and the Plan provides for him to continue consulting until May 2022 if the Debtor's share of proceeds of the sale of the home are insufficient to pay the classes of creditors pursuant to the Plan.

### IV.

### CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.   The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary

28

of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

## A.    Who May Vote or Object

### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

#### a.    What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS OCTOBER 4, 2017.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that classes 1, 3, 4 and 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class 2 is unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who Is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8)[73]; and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and

(a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8.).

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (b) in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (b) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may

31

nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 <u>U.S.C.</u> §1129(b) and applicable case law.

8.    **Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The party proposing this Plan asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

B.    **Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons:

In the event the Plan is not confirmed, and the case is converted to a Chapter 7, the holder of the first mortgage and/or the second mortgage holder will seek relief from the automatic stay. Based upon the Debtor' share of the equity in the property that could pay a dividend to general unsecured creditors after payment of administrative expenses, it is believed a Chapter 7 Trustee would abandon his interest in the property. A Chapter 7 Trustee could not sell the home which is owned jointly with the non-debtor spouse, Janet Figliolia, unless the Trustee was successful in a lawsuit brought pursuant to 11 U.S.C. § 363(h). Based upon the lack of equity, the Trustee might not be successful. The case would then be a no asset case with priority creditors and unsecured creditors receiving nothing. The State of New Jersey and the IRS as the holder of a junior liens would be foreclosed, as could the second mortgage holder. Under the Debtor's Plan, the first and second mortgages will be paid in full, and the junior liens of the State of New Jersey and the IRS third lien will be paid in full if there is sufficient proceeds of sale. Additionally, allowed priority claims will be paid in full. Finally, there will be a dividend of $50,000.00 to general unsecured creditors. If there is insufficient money available from Debtor's share of the sale of the home, the payment to unsecured creditors will be made in May 2022, five (5) years following the Order of Relief.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation:

33

**Assets**

| | | |
|---|---|---|
| Real property appraised value (owned jointly, w/Janet Figliolia, his wife who would be entitled to 50% of any net equity). | | $4,900,000.00 |

Minus: 1st Mortgage $3,136,294.00
2nd Mortgage $1,490,684.00
State of NJ, 3rd, 4th, 5th
6th and 7th secured liens $ 602,883.18
IRS Lien $ 10,900.00
Costs of Sale $ 294,000.00

Net equity $ 0.00

Personal Property $ 6,025.00
Watch -exempt $ 5,000.00
Clothing-exempt $ 1,000.00
Used golf clubs-exempt $ 25.00

Net Equity $ 0.00

**Liabilities**

Priority Claims:
Chapter 7 admin. Estimated Trustee expenses $ 143,250.00

Chapter 11 admin. Expenses $ 30,000.00

Other priority claims $ 748,867.64

Total priority claims $ 892,117.64

Amount available for unsecured claims
(total assets minus priority claims) $ 0.00

Total unsecured claims $8,408,120.40
Estimated dividend in Chapter 7
(amount available - unsecured claims) 0%

C.    **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date  $35,000.00

**To Pay:** Administrative claims                              -35,000.00

**To Pay:** Statutory costs & charges                    -     0.00

**To Pay:** Other Plan Payments due on Effective Date    -     0.00

Balance after paying these amounts . . . . . . .    $     0.00

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $ 10,638.08 | Cash in DIP Account February 28, 2019 |
| +24,361.92 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| + | Borrowing |
| + | Capital Contributions |
| + | Other |
| + 35,000.00 | Total |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent believes that this second aspect of the feasibility requirement is met for the following reasons: The Debtor will have sufficient income from his Social Security income and his consulting for Alex Figliolia Water & Sewer LLC to fund his Plan pending the sale of the home. During the years 2014 and 2015, the Proponent had income as a consultant of approximately $468,000.00 per annum plus Social Security income.  Because the company for which he provides

35

consulting work is owned by his brother, there is little likelihood that the Plan Proponent will be unable to continue to perform consulting services. Additionally, the Plan Proponent is dedicating his Social Security to the Plan. It is unlikely to decrease in the next three (3) years.

In summary, the Plan proposes to pay $10,000.00 each month to the Class I secured creditor, $5,774.06 monthly to the Class 2 secured creditor, $389.29 quarterly to the Class 3 secured creditor, and $28,339.35 quarterly ($9,446.45 monthly) to the priority creditors, pending the sale of the home. Following the sale of the home, the Debtor will need a maximum of $10,576.09 per month to pay priority creditors. It will be less if all or a portion of priority creditor claims are paid from the sale. Debtor believes all valid priority claims will be paid following the sale of the home from his 50% share of the sale proceeds. As Debtor's financial projections demonstrate, Debtor will have an average cash flow, after paying living expenses and post-confirmation taxes, of $30.75 during the first year of the Plan. If the Debtor's share of the proceeds of the sale of the home are sufficient, the final Plan payment will be paid within six (6) months from confirmation of the Plan. If the sale proceeds are insufficient to pay all priority claims and classes, the Plan will continue until 5 years after the Order of Relief to enable the Debtor to complete the Plan payments. The Plan proponent contends that Debtor's financial projections are feasible in light of the financial records maintained by the debtor prior to and during the pendency of the bankruptcy case. As discussed earlier in this Disclosure Statement at Section (II.E.4), Debtor has implemented procedures to increase income and has obtained consent of the non-debtor spouse to sell the jointly owned home.

Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

36

## V.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

The Plan provides that upon completion of the Plan, or upon Order of the Court, the Debtor

shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the

extent specified in 11 U.S.C. §1141.   However, any liability imposed by the Plan will not be

discharged. If Confirmation of the Plan does not occur or if, after Confirmation occurs, the Debtor

elects to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained

in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its

estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any

person in any further proceeding involving the Debtor or its estate.   The provisions of the Plan shall

be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such

Claims or Equity Interest holders are impaired or whether such parties accept the Plan, upon

Confirmation thereof.

### B.    Revesting of Property in the Debtor

Except as provided in the Plan, the confirmation of the Plan revests all of the property of

the estate in the Debtor.

### C.    Modification of Plan

The Proponent may modify the Plan at any time before confirmation. However, the Court

may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan

before confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as

(1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b). If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 <u>U.S.C.</u> § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.[91]

Date: 05/10/19

ALEXANDER J. FIGLIOLIA

In re: _Alexander Figlidia_
　　　　Debtor

Case No. _17-20755/MBK_
Reporting Period _2/1/19 - 2/28/19_

## INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS
( This Form must be submitted for each Bank Account maintained by the Debtor)

Amounts reported should be per the debtor's books, not the bank statement. The beginning cash should be the ending cash from the prior month or, if this is the first report, the amount should be the balance on the date the petition was filed. Attach the bank statements and a detailed list of all disbursements made during the report period that includes the date, the check number, the payee, the transaction description, and the amount. A bank reconciliation must be attached for each account. [See MOR-1 (INDV) (CONT)]

| | | |
|---|---|---|
| Cash - Beginning of Month | 13,342.12 | 192,184.19 |
| | | |
| Wages (Net) | | |
| Interest and Dividend Income | | |
| Alimony and Child Support | | |
| Social Security and Pension Income | 2,700 | 51,523.40 |
| Sale of Assets | | |
| Other Income (attach schedule)  Consulting | 41,500 | 400,453.40 |
| **Total Receipts** | 44,200 | 451,976.90 |
| | | |
| | | |
| Mortgage Payment(s) | 15,774.06 | 135,481.20 |
| Rental Payment(s) | -0- | |
| Other Secured Note Payments | -0- | |
| Utilities | 8,310.01 | 103,279.09 |
| Insurance | 11,437.00 | 77,830.25 |
| Auto Expense | | |
| Lease Payments | | |
| IRA Contributions | | |
| Repairs and Maintenance | | 7,995.42 |
| Medical Expenses | | |
| Household Expenses | 3,185 | 58,720.31 |
| Charitable Contributions | | |
| Alimony and Child Support Payments | | |
| Taxes - Real Estate | | |
| Taxes - Personal Property | | |
| Taxes - Other (attach schedule) | -0- | 9,416.00 |
| Travel and Entertainment | | |
| Gifts | | |
| Other (attach schedule)  Bank Charges | .75 | 20.15 |
| **Total Ordinary Disbursements** | 38,707.02 | 389,776.01 |
| | | |
| Professional Fees | 7,870.62 | 49,361.15 |
| U.S. Trustee Fees | 325.00 | 4,875.00 |
| Other Reorganization Expenses (attach schedule) | -0- | -0- |
| **Total Reorganization Items** | 8,195.62 | 54,236.15 |
| **Total Disbursements (Ordinary + Reorganization)** | 46,903.04 | 444,009.17 |
| Net Cash Flow (Total Receipts - Total Disbursements) | (2,703.04) | 7,967.73 |
| Cash - End of Month (Must equal reconciled bank statement) | 10,639.08 | 200,151.13 |

FORM MOR-1(INDV)
(8/99)

In re _Alexander F. Nidia_    Case No. _17-20755 / MBK_
Debtor                        Reporting Period: _2/1/19 - 2/28/19_

### INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS - continuation sheet

| BREAKDOWN OF "OTHER" CATEGORY | Current Month Actual | Cumulative Filing to Date Actual |
|---|---|---|
| Other Income | | |
| _Consulting_ | 41,500 | 400,453.40 |
| Other Taxes | | |
| _NJ_ | | |
| _Fed_ | | 9,446 |
| Other Ordinary Disbursements | | |
| _Bank Charges_ | .75 | 20.75 |
| Other Reorganization Expenses | | |
| | | |
| | | |

FORM MOR-1 (INDV) (CON'T)
(9/99)

UNITED STATES BANKRUPTCY COURT
_____ DISTRICT OF _____

In re Alexander Figliolia

Case No. 17-20755/MBK

Reporting Period: 2/1/19 - 2/28/19

## MONTHLY OPERATING REPORT
### (INDIVIDUAL WAGE EARNERS)
File with Court and submit copy to United States Trustee within 20 days after end of month

Include FORM MOR-1 (INDV) if debtor is a wage earner.
Substitute FORM MOR-2 (RE) for MOR-2 if case is a Single Asset Real Estate case.
Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | | | |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 (INDV) | | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | | |
| Copies of bank statements | | | |
| Cash disbursements journals | | | |
| Statement of Operations | | | |
| Balance Sheet | | | |
| Status of Postpetition Taxes | | | |
| Copies of IRS Form 6123 or payment receipt | | | |
| Copies of tax returns filed during reporting period | | | |
| Summary of Unpaid Postpetition Debts | | | |
| Listing of aged accounts payable | | | |
| Accounts Receivable Reconciliation and Aging | | | |
| Debtor Questionnaire | | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that the documents attached to this report
are true and correct to the best of my knowledge and belief.

X _Alexander Figliolia_
Signature of Debtor

Date 3/19/2019

_____
Signature of Joint Debtor

Date _____

_____
Signature of Authorized Individual*

Date _____

_____
Printed Name of Authorized Individual

Title of Authorized Individual _____

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM MOR (INDV)
(9/99)

7:11 PM

04/16/19

Accrual Basis

**Alex Figliolia**
**Balance Sheet**
**As of February 28, 2019**

|  | Feb 28, 19 |
|---|---|
| **ASSETS** | |
|   Current Assets | |
|     Checking/Savings | |
|       Amboy Bank DIP | 10,301.13 |
|       Direct Express Card | 337.95 |
|     **Total Checking/Savings** | 10,639.08 |
|   **Total Current Assets** | 10,639.08 |
| **TOTAL ASSETS** | 10,639.08 |
| **LIABILITIES & EQUITY** | |
|   Equity | |
|     Opening Balance Equity | 2,671.35 |
|     Owners Equity | 10,262.40 |
|     Net Income | -2,294.67 |
|   **Total Equity** | 10,639.08 |
| **TOTAL LIABILITIES & EQUITY** | 10,639.08 |

7:05 PM

04/16/19
Accrual Basis

# Alex Figliolia
# Profit & Loss
### February 2019

|  | Feb 19 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Consulting Income | 41,500.00 |
| Social Security Income | 2,700.00 |
| **Total Income** | 44,200.00 |
| | |
| **Expense** | |
| Bank Service Charges | 0.75 |
| First Mortgage | 10,000.00 |
| Insurance Expense | 11,437.00 |
| Meals, Household Supplies and E | 3,185.00 |
| Second Mortgage | 5,774.06 |
| Telephone Expense | 589.41 |
| Utilities | 7,721.20 |
| **Total Expense** | 38,707.42 |
| | |
| **Net Ordinary Income** | 5,492.58 |
| | |
| **Other Income/Expense** | |
| **Other Expense** | |
| Professional Fees | 7,870.62 |
| US Trustee Fee | 325.00 |
| **Total Other Expense** | 8,195.62 |
| | |
| **Net Other Income** | -8,195.62 |
| | |
| **Net Income** | -2,703.04 |

7:12 PM

04/16/19

Accrual Basis

## Alex Figliolia
## General Ledger
### As of February 28, 2019

| Type | Date | Num | Adj | Name | Memo | Debit | Credit | Balance |
|------|------|-----|-----|------|------|-------|--------|---------|
| **Amboy Bank DIP** | | | | | | | | 12,703.42 |
| Check | 02/01/2019 | 211 | | United States Trustee Payment Center | | | 325.00 | 12,378.42 |
| Check | 02/05/2019 | 213 | | Atkinson & Debartolo PC | | | 7,870.82 | 4,507.60 |
| Check | 02/06/2019 | dm | | Verizon | | | 589.41 | 3,918.39 |
| Check | 02/06/2019 | dm | | First Energy | | | 140.23 | 3,778.16 |
| Check | 02/06/2019 | dm | | Bank of America | | | 5,774.06 | -1,995.90 |
| Check | 02/08/2019 | 214 | | Chapel Hill Cleaners | | | 185.00 | -2,180.90 |
| Check | 02/11/2019 | dm | | New Jersey Natural Gas | | | 1,041.09 | -3,221.99 |
| Check | 02/11/2019 | dm | | First Energy | | | 2,898.00 | -6,119.99 |
| Check | 02/11/2019 | dm | | American Water | | | 470.53 | -6,590.52 |
| Check | 02/14/2019 | dm | | AIG Insurance | | | 11,437.00 | -18,027.52 |
| Check | 02/19/2019 | 233 | | Nation Star | | | 10,000.00 | -28,027.52 |
| Deposit | 02/28/2019 | | | | Deposit | 41,500.00 | | 13,472.48 |
| Check | 02/28/2019 | dm | | First Energy | | | 266.35 | 13,204.13 |
| Check | 02/28/2019 | dm | | First Energy | | | 2,903.00 | 10,301.13 |
| **Total Amboy Bank DIP** | | | | | | 41,500.00 | 43,902.29 | 10,301.13 |
| **Direct Express Card** | | | | | | | | 638.70 |
| Check | 02/01/2019 | dm | | | | | 0.75 | 637.95 |
| Deposit | 02/13/2019 | | | | Deposit | 2,700.00 | | 3,337.95 |
| Check | 02/18/2019 | dm | | TD Bank Cash Withdrawal | | | 3,000.00 | 337.95 |
| **Total Direct Express Card** | | | | | | 2,700.00 | 3,000.75 | 337.95 |
| **Accumulated Depreciation** | | | | | | | | 0.00 |
| **Total Accumulated Depreciation** | | | | | | | | 0.00 |
| **Furniture and Equipment** | | | | | | | | 0.00 |
| **Total Furniture and Equipment** | | | | | | | | 0.00 |
| **Accounts Payable** | | | | | | | | 0.00 |
| **Total Accounts Payable** | | | | | | | | 0.00 |
| **Payroll Liabilities** | | | | | | | | 0.00 |
| **Total Payroll Liabilities** | | | | | | | | 0.00 |
| **Opening Balance Equity** | | | | | | | | -2,671.35 |
| **Total Opening Balance Equity** | | | | | | | | -2,671.35 |
| **Owners Draw** | | | | | | | | 0.00 |
| **Total Owners Draw** | | | | | | | | 0.00 |
| **Owners Equity** | | | | | | | | -10,262.40 |
| **Total Owners Equity** | | | | | | | | -10,262.40 |
| **Consulting Income** | | | | | | | | -23,200.00 |
| Deposit | 02/28/2019 | | | | Deposit | | 5,000.00 | -28,200.00 |
| Deposit | 02/28/2019 | | | | Deposit | | 4,500.00 | -32,700.00 |
| Deposit | 02/28/2019 | | | | Deposit | | 6,500.00 | -39,200.00 |
| Deposit | 02/28/2019 | | | | Deposit | | 5,500.00 | -44,700.00 |
| Deposit | 02/28/2019 | | | | Deposit | | 7,000.00 | -51,700.00 |
| Deposit | 02/28/2019 | | | | Deposit | | 7,000.00 | -58,700.00 |
| Deposit | 02/28/2019 | | | | Deposit | | 6,000.00 | -64,700.00 |
| **Total Consulting Income** | | | | | | 0.00 | 41,500.00 | -64,700.00 |
| **Social Security Income** | | | | | | | | -2,700.00 |
| Deposit | 02/13/2019 | | | | Deposit | | 2,700.00 | -5,400.00 |
| **Total Social Security Income** | | | | | | 0.00 | 2,700.00 | -5,400.00 |
| **Advertising and Promotion** | | | | | | | | 0.00 |
| **Total Advertising and Promotion** | | | | | | | | 0.00 |
| **Automobile Expense** | | | | | | | | 0.00 |
| **Total Automobile Expense** | | | | | | | | 0.00 |
| **Bank Service Charges** | | | | | | | | 0.75 |
| Check | 02/01/2019 | dm | | | | 0.75 | | 1.50 |
| **Total Bank Service Charges** | | | | | | 0.75 | 0.00 | 1.50 |
| **Bankruptcy Fees** | | | | | | | | 0.00 |
| **Total Bankruptcy Fees** | | | | | | | | 0.00 |
| **Computer and Internet Expenses** | | | | | | | | 0.00 |
| **Total Computer and Internet Expenses** | | | | | | | | 0.00 |
| **Continuing Education** | | | | | | | | 0.00 |
| **Total Continuing Education** | | | | | | | | 0.00 |
| **Depreciation Expense** | | | | | | | | 0.00 |
| **Total Depreciation Expense** | | | | | | | | 0.00 |
| **Dues and Subscriptions** | | | | | | | | 0.00 |
| **Total Dues and Subscriptions** | | | | | | | | 0.00 |
| **First Mortgage** | | | | | | | | 10,000.00 |
| Check | 02/19/2019 | 233 | | Nation Star | | 10,000.00 | | 20,000.00 |
| **Total First Mortgage** | | | | | | 10,000.00 | 0.00 | 20,000.00 |

7:12 PM
04/16/19
Accrual Basis

**Alex Figliolia**
## General Ledger
As of February 28, 2019

| Type | Date | Num | Adj | Name | Memo | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|
| **Insurance Expense** | | | | | | | | |
| General Liability Insurance | | | | | | | | 1,358.94 |
| Total General Liability Insurance | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| Insurance Expense - Other | | | | | | | | 1,358.94 |
| Check | 02/14/2019 | dm | | AIG Insurance | | 11,437.00 | | 12,795.94 |
| Total Insurance Expense - Other | | | | | | 11,437.00 | 0.00 | 12,795.94 |
| Total Insurance Expense | | | | | | 11,437.00 | 0.00 | 12,795.94 |
| **Interest Expense** | | | | | | | | |
| Total Interest Expense | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Meals and Entertainment** | | | | | | | | |
| Total Meals and Entertainment | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Meals, Household Supplies and E** | | | | | | | | |
| Check | 02/08/2019 | 214 | | Chapel Hill Cleaners | | 185.00 | | 2,651.00 |
| Check | 02/18/2019 | dm | | TD Bank Cash Withdrawal | | 3,000.00 | | 2,836.00 |
| | | | | | | | | 5,836.00 |
| Total Meals, Household Supplies and E | | | | | | 3,185.00 | 0.00 | 5,836.00 |
| **Office Supplies** | | | | | | | | |
| Total Office Supplies | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Payroll Expenses** | | | | | | | | |
| Total Payroll Expenses | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Rent Expense** | | | | | | | | |
| Total Rent Expense | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Repairs and Maintenance** | | | | | | | | |
| Total Repairs and Maintenance | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Second Mortgage** | | | | | | | | |
| Check | 02/06/2019 | dm | | Bank of America | | 5,774.06 | | 5,774.06 |
| | | | | | | | | 11,548.12 |
| Total Second Mortgage | | | | | | 5,774.06 | 0.00 | 11,548.12 |
| **Taxes** | | | | | | | | |
| Total Taxes | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Telephone Expense** | | | | | | | | |
| Check | 02/06/2019 | dm | | Verizon | | 589.41 | | 579.65 |
| | | | | | | | | 1,169.06 |
| Total Telephone Expense | | | | | | 589.41 | 0.00 | 1,169.06 |
| **Travel Expense** | | | | | | | | |
| Total Travel Expense | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Utilities** | | | | | | | | |
| Check | 02/08/2019 | dm | | First Energy | | 140.23 | | 5,127.23 |
| Check | 02/11/2019 | dm | | New Jersey Natural Gas | | 1,041.09 | | 5,267.46 |
| Check | 02/11/2019 | dm | | First Energy | | 2,698.00 | | 6,308.55 |
| Check | 02/11/2019 | dm | | American Water | | 470.53 | | 9,206.55 |
| Check | 02/28/2019 | dm | | First Energy | | 268.35 | | 9,677.08 |
| Check | 02/28/2019 | dm | | First Energy | | 2,903.00 | | 9,945.43 |
| | | | | | | | | 12,848.43 |
| Total Utilities | | | | | | 7,721.20 | 0.00 | 12,848.43 |
| **Ask My Accountant** | | | | | | | | |
| Total Ask My Accountant | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **Professional Fees** | | | | | | | | |
| Check | 02/05/2019 | 213 | | Atkinson & Debartolo PC | | 7,870.62 | | 0.00 |
| | | | | | | | | 7,870.62 |
| Total Professional Fees | | | | | | 7,870.62 | 0.00 | 7,870.62 |
| **US Trustee Fee** | | | | | | | | |
| Check | 02/01/2019 | 211 | | United States Trustee Payment Center | | 325.00 | | 0.00 |
| | | | | | | | | 325.00 |
| Total US Trustee Fee | | | | | | 325.00 | 0.00 | 325.00 |
| **No accnt** | | | | | | | | |
| Total no accnt | | | | | | | | 0.00 |
| | | | | | | | | 0.00 |
| **TOTAL** | | | | | | 91,103.04 | 91,103.04 | 0.00 |

6:51 PM

04/16/19

# Alex Figliolia
## Reconciliation Summary
### Amboy Bank DIP, Period Ending 02/28/2019

| | Feb 28, 19 |
|---|---|
| **Beginning Balance** | 12,703.42 |
| Cleared Transactions | |
| Checks and Payments - 12 items | -33,902.29 |
| Deposits and Credits - 1 item | 41,500.00 |
| Total Cleared Transactions | 7,597.71 |
| **Cleared Balance** | 20,301.13 |
| Uncleared Transactions | |
| Checks and Payments - 2 items | -10,316.80 |
| Total Uncleared Transactions | -10,316.80 |
| **Register Balance as of 02/28/2019** | 9,984.33 |
| New Transactions | |
| Checks and Payments - 5 items | -7,597.48 |
| Deposits and Credits - 5 items | 29,000.00 |
| Total New Transactions | 21,402.52 |
| **Ending Balance** | 31,386.85 |

6:51 PM
04/16/19

# Alex Figliolia
# Reconciliation Detail
## Amboy Bank DIP, Period Ending 02/28/2019

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 12,703.42 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 12 items** | | | | | | |
| Check | 02/01/2019 | 211 | United States Truste... | X | -325.00 | -325.00 |
| Check | 02/05/2019 | 213 | Atkinson & Debartol... | X | -7,870.62 | -8,195.62 |
| Check | 02/06/2019 | dm | Bank of America | X | -5,774.06 | -13,969.68 |
| Check | 02/06/2019 | dm | Verizon | X | -589.41 | -14,559.09 |
| Check | 02/06/2019 | dm | First Energy | X | -140.23 | -14,699.32 |
| Check | 02/08/2019 | 214 | Chapel Hill Cleaners | X | -185.00 | -14,884.32 |
| Check | 02/11/2019 | dm | First Energy | X | -2,898.00 | -17,782.32 |
| Check | 02/11/2019 | dm | New Jersey Natural ... | X | -1,041.09 | -18,823.41 |
| Check | 02/11/2019 | dm | American Water | X | -470.53 | -19,293.94 |
| Check | 02/14/2019 | dm | AIG Insurance | X | -11,437.00 | -30,730.94 |
| Check | 02/28/2019 | dm | First Energy | X | -2,903.00 | -33,633.94 |
| Check | 02/28/2019 | dm | First Energy | X | -268.35 | -33,902.29 |
| **Total Checks and Payments** | | | | | -33,902.29 | -33,902.29 |
| **Deposits and Credits - 1 item** | | | | | | |
| Deposit | 02/28/2019 | | | X | 41,500.00 | 41,500.00 |
| **Total Deposits and Credits** | | | | | 41,500.00 | 41,500.00 |
| **Total Cleared Transactions** | | | | | 7,597.71 | 7,597.71 |
| **Cleared Balance** | | | | | 7,597.71 | 20,301.13 |
| **Uncleared Transactions** | | | | | | |
| **Checks and Payments - 2 items** | | | | | | |
| Check | 03/21/2018 | 236 | Silver Script Ins Co | | -316.80 | -316.80 |
| Check | 02/19/2019 | 233 | Nation Star | | -10,000.00 | -10,316.80 |
| **Total Checks and Payments** | | | | | -10,316.80 | -10,316.80 |
| **Total Uncleared Transactions** | | | | | -10,316.80 | -10,316.80 |
| **Register Balance as of 02/28/2019** | | | | | -2,719.09 | 9,984.33 |
| **New Transactions** | | | | | | |
| **Checks and Payments - 5 items** | | | | | | |
| Check | 03/01/2019 | dm | Bank of America | | -5,774.06 | -5,774.06 |
| Check | 03/01/2019 | 215 | Horizon Blue Cross ... | | -280.94 | -6,055.00 |
| Check | 03/04/2019 | dm | Verizon | | -579.58 | -6,634.58 |
| Check | 03/05/2019 | dm | CMS Medicare Pay... | | -646.10 | -7,280.68 |
| Check | 03/21/2019 | 237 | Silver Script Ins Co | | -316.80 | -7,597.48 |
| **Total Checks and Payments** | | | | | -7,597.48 | -7,597.48 |
| **Deposits and Credits - 5 items** | | | | | | |
| Deposit | 03/01/2019 | | | * | 6,000.00 | 6,000.00 |
| Deposit | 03/08/2019 | | | * | 5,000.00 | 11,000.00 |
| Deposit | 03/15/2019 | | | * | 6,000.00 | 17,000.00 |
| Deposit | 03/25/2019 | | | * | 6,000.00 | 23,000.00 |
| Deposit | 03/29/2019 | | | * | 6,000.00 | 29,000.00 |
| **Total Deposits and Credits** | | | | | 29,000.00 | 29,000.00 |
| **Total New Transactions** | | | | | 21,402.52 | 21,402.52 |
| **Ending Balance** | | | | | 18,683.43 | 31,386.85 |

For the period **02-01-2019 to 02-28-2019** age 1 of 2

For customer service
or current rates
call: 732-591-2530

Write to:
Amboy Bank
3590 U. S. Highway 9
Old Bridge, NJ 08857

Visit us at
www.amboybank.com

Amboy 24
(Telephone Banking)
call 1-877-24AMBOY

000000000000000000000000000000000000000
000000000000000000000000000000000000000

ALEXANDER J FIGLIOLIA
DEBTOR IN POSSESSION
105 MIDDLETOWN RD
HOLMDEL      NJ  07733

## Amboy Bank helps you meet your savings goals!

### Visit your local branch or go to amboybank.com
### to see today's special offers

## Senior Checking Account

Account number:

### Account Balance Summary

| | |
|---|---|
| Beginning Balance on 01-31 | $12,703.42 |
| Deposits and other credits (+) | $41,500.00 |
| Withdrawals, checks and other debits (-) | $33,902.29 |
| Ending Balance on 02-28 | $20,301.13 |

### Deposits and Other Credits

| Date | Description | Amount | Date | Description | Amount |
|---|---|---|---|---|---|
| 02-04 | DEPOSIT | 5,000.00 | 02-15 | DEPOSIT | 7,000.00 |
| 02-07 | DEPOSIT | 4,500.00 | 02-19 | DEPOSIT | 7,000.00 |
| 02-08 | DEPOSIT | 6,500.00 | 02-25 | DEPOSIT | 6,000.00 |
| 02-12 | DEPOSIT | 5,500.00 | | | |

### Checks

| Check# | Date | Amount | Check# | Date | Amount | Check# | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 211* | 02-01 | 325.00 | 213 | 02-06 | 7,870.62 | 214 | 02-12 | 185.00 |

*Indicates a gap in check number sequence

### Withdrawals and Other Debits

| Date | Description | Amount | Date | Description | Amount |
|---|---|---|---|---|---|
| 02-06 | 7862783582 BILLMATRIX BILLPAYFEE | 3.50 | 02-06 | XXXXX2013 Bank of America MORTGAGE | 5,774.06 |
| 02-06 | 100054438609 FIRSTENERGY OPCO FE ECHECK | 140.23 | 02-11 | 6952959 PMNTUS SVC FEE SERVICE FEE | 1.95 |
| 02-06 | 7862783581 FIS*VERIZON BILL PAY | 585.91 | 02-11 | 8917638 AMERICAN-WATER UTIL-PMNT | 468.58 |
| 02-06 | 100009694421 FIRSTENERGY OPCO FE ECHECK | 2,898.00 | | | |

For the period 02-01-2019 to 02-28-2019

ALEXANDER J FIGLIOLIA

## Senior Checking Account                              Account number:

### Withdrawals and Other Debits (cont.)

| Date | Description | Amount | Date | Description | Amount |
|------|-------------|--------|------|-------------|--------|
| 02-11 | 14536705020719 NJ NATURALGAS EBILL | 1,041.09 | 02-28 | 100009694421 FIRSTENERGY OPCO FE ECHECK | 2,898.00 |
| 02-14 | AIGONEXXXXX3291 PCS AIGPCSPAYS | 11,437.00 | 02-28 | SERVICE CHARGE | 5.00 |
| 02-28 | 100054438609 FIRSTENERGY OPCO FE ECHECK | 268.35 | | | |

211    $325.00   2/1/2019



211    $325.00   2/1/2019



213    $7,870.62  2/6/2019



213    $7,870.62  2/6/2019



214    $185.00   2/12/2019



214    $185.00   2/12/2019

3:30 PM
04/16/19

## Alex Figliolia
## Reconciliation Summary
### Direct Express Card, Period Ending 02/28/2019

|  | Feb 28, 19 |
|---|---|
| **Beginning Balance** | 638.70 |
| **Cleared Transactions** |  |
| Checks and Payments - 2 items | -3,000.75 |
| Deposits and Credits - 1 item | 2,700.00 |
| **Total Cleared Transactions** | -300.75 |
| **Cleared Balance** | 337.95 |
| **Register Balance as of 02/28/2019** | 337.95 |
| **Ending Balance** | 337.95 |

Page 1

3:30 PM

04/16/19

**Alex Figliolia**
## Reconciliation Detail
### Direct Express Card, Period Ending 02/28/2019

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 638.70 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 2 items** | | | | | | |
| Check | 02/01/2019 | dm | | X | -0.75 | -0.75 |
| Check | 02/18/2019 | dm | TD Bank Cash With... | X | -3,000.00 | -3,000.75 |
| Total Checks and Payments | | | | | -3,000.75 | -3,000.75 |
| **Deposits and Credits - 1 item** | | | | | | |
| Deposit | 02/13/2019 | | | X | 2,700.00 | 2,700.00 |
| Total Deposits and Credits | | | | | 2,700.00 | 2,700.00 |
| Total Cleared Transactions | | | | | -300.75 | -300.75 |
| Cleared Balance | | | | | -300.75 | 337.95 |
| Register Balance as of 02/28/2019 | | | | | -300.75 | 337.95 |
| **Ending Balance** | | | | | -300.75 | 337.95 |

**DIRECT EXPRESS** >>

Direct Express® Debit Card Program
P.O. Box 245998
San Antonio, TX 78224



MEMBER FDIC

## Monthly Account Statement

L2ACSADTPQ  053211

ALEX J FIGLIOLIA
105 MIDDLETOWN ROAD
HOLMDEL, NJ 07733-0000

To contact us

**Customer Service: (888) 741-1115**

Hearing impaired. (866) 569-0447
International: (765) 778-8290 (Collect)

**Visit our web site**
www.USDirectExpress.com

**Write to us**
Direct Express® Card Services
P.O. Box 245998
San Antonio, TX 78224

Thank You for Being a Direct Express® Card Customer

Date Range: February 2019

| | |
|---|---|
| Starting Balance: | **$638.70** |
| Credits: | **$2,700.00** |
| Debits: | **$3,000.75** |
| Ending Balance | **$337.95** |

Card Number: 533248XXXXXX9246

| Date Posted | Retailer | Transaction Type | Charges | Credits |
|---|---|---|---|---|
| 02/01/2019 | | MONTHLY PAPER STATEMENT FEE | $0.75 | $0.00 |
| 02/13/2019 | ALEX J FIGLIOLIA | DEPOSIT FROM SSA | $0.00 | $2,700.00 |
| 02/18/2019 | TD BANK, HOLMDEL, NJ, USA | CASH PURCHASE | $3,000.00 | $0.00 |

Alex Figliolia Cash Flow Analysis

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 | $ 39,000.00 |
| Social Security Income | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 |
| Total Income | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 | 41,700.00 |
| | | | | | | | | | | | | |
| 1st Mortgage - 3,126,294 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| 2nd Mortgage - 1,192,163.09 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 | 5,774.06 |
| IRS 389.28 Monthly 10,900 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NJ 5,000 Quarterly - 73,418.73*** | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 |
| NJ 220.00 Quarterly GIT-ER - 2,707.57 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 |
| IRS 24,133.41 Quarterly 1040 -436,807.46*** | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly - 235,933.88 disputed***** | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec. Claims 50,000 - 8,408,120.40****** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 |
| Home Insurance 35,950.00 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 | 2,995.33 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Household Repairs | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 | 525.00 |
| Current Taxes | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Total Expense | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 | 41,561.46 |
| | | | | | | | | | | | | |
| Net Cash Flow | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 | 138.54 |

*** BALLOON PAYMENT MAY 2022
***** BALLOON PAYMENNT MAY 2022
***** BALLOON PAYMENT MAY 2022 IF ALLOWED
****** IF NOT PAID SALE OF HOUSE PAY MAY 2022

Year 1

Alex Figliolia Cash Flow Analysis

| | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 |
| Social Security Income | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 |
| **Total Income** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** |
| | | | | | | | | | | | | |
| Rent | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 |
| IRS 389.28 Monthly 10,900 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NJ 5,000.00 Quarterly | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 |
| NJ 220.00 Quarterly GIT-ER | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 |
| IRS 24,133.41 Quarterly 1040 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec Claims 50,000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Current Taxes | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **Total Expense** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** |
| | | | | | | | | | | | | |
| **Net Cash Flow** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** |

Year 2

**Alex Figliolia Cash Flow Analysis**

| | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income from Consulting | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 |
| Social Security Income | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 | 2,700.00 |
| **Total Income** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** | **37,700.00** |
| Rent | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 |
| IRS 389.28 Monthly | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 | 389.28 |
| NJ 5000.00 Quarterly | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 | 1,666.66 |
| NJ 220.00 Quarterly GIT-ER | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 | 73.33 |
| IRS 24,133.41 Quarterly 1040 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 | 8,044.47 |
| IRS 1000 Quarterly | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 | 333.33 |
| Unsec Claims 50,000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 2,600.00 |
| Health Ins Premiums | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 |
| Current Taxes | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| Household Food, Misc. etc | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **Total Expense** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** | **36,767.07** |
| **Net Cash Flow** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** | **932.93** |

Year 3

# EXHIBIT A

BUNCE D. ATKINSON, ESQ.
ATKINSON & DeBARTOLO, P.C.
The Galleria, 2 Bridge Avenue
Building Two, Third Floor
P.O. Box 8415
Red Bank, New Jersey  07701
(732) 530-5300 Fax 732-530-9877
BA9186
Attorneys for Debtor/Plan Proponent

| | |
|---|---|
| IN RE:<br><br>ALEXANDER FIGLIOLIA,<br><br>Debtor. | UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>TRENTON VICINAGE<br>CASE NO. 17-20755 |

## THIRD MODIFIED  PLAN OF LIQUIDATION

Debtor/Plan Proponent respectfully submits its Plan of Liquidation pursuant to Chapter

11, Title 11 of the United States Code in the form annexed hereto and made a party hereof.

NAME OF DEBTOR/PLAN PROPONENT:    DEBTOR

By:    _Alexander Figliolia_
        ALEXANDER FIGLIOLIA

DATED:  05/10/2019

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................ 1

II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS    1
    A.  General Overview ....................................................... 1
    B.  Definitions ............................................................. 2
    C.  Unclassified Claims ................................................... 7
        1.  Administrative Expenses and Fees ............................. 7
        2.  Priority Tax Claims ......................................... 8
    D.  Classified Claims and Interests ....................................... 10
        1.  Classes of Secured Creditors ................................ 10
        2.  Non Priority Claims ......................................... 15
        3.  Class of General Unsecured Claims ........................... 15
        4.  Classes of Equity Holders ................................... 16
    E.  Acceptance or Rejection of Plan ...................................... 16
    F.  Means of Effectuating the Plan ....................................... 16
        1.  Funding for the Plan ........................................ 16
        2.  Post-Confirmation Management ................................ 16
        3.  Disbursing Agent ........................................... 17
        4.  Time and Method of Distribution ............................. 17
        5.  Time Bar to Cash Payment .................................... 17
        6.  DeMininus Distributions ..................................... 18
        7.  Finality of Distributions ................................... 18
        8.  Treatment of Disputed Claims ................................ 18

III. TREATMENT OF MISCELLANEOUS ITEMS ................................... 20
    A.  Executory Contracts and Unexpired Leases ............................ 20
        1.  Assumptions ................................................. 20
        2.  Rejections .................................................. 20
    B.  Changes in Rates Subject to Regulatory Commission Approval .......... 21
    C.  Retention of Jurisdiction ............................................ 21
    D.  Procedures for Resolving Contested Claims ............................ 21
    E.  Notices Under the Plan ............................................... 22

IV. EFFECT OF CONFIRMATION OF PLAN ...................................... 22
    A.  Discharge ............................................................. 22
    B.  Re-vesting of Property in the Debtor ................................. 23
    C.  Modification of Plan ................................................. 23
    D.  Post-Confirmation Conversion/Dismissal .............................. 23
    E.  Post-Confirmation Quarterly Fees .................................... 24

# I.

## INTRODUCTION

Alexander Figliolia ("Debtor") is the Debtor in a Chapter 11 bankruptcy case. On May 25, 2017, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 Petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101, et. seq. This document is the Chapter 11 Plan of Reorganization ("Plan") proposed by Alexander Figliolia ("Proponent"). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a Liquidation plan. In other words, the Proponent seeks to accomplish payments under the Plan by making payment to creditors until the sale of the Proponent's residence which is owned jointly with his non-debtor spouse, Janet Figliolia. The property shall be listed for sale within 45 days of confirmation, and the sale shall take place on or before January 31, 2020. If a contract is not obtained for the sale, the home will be auctioned at public auction within 60 days. The Effective Date of the proposed Plan is fifteen (15) days after the Order of Confirmation.

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.     General Overview

As required by the Bankruptcy Code, the Plan classifies Claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of Claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

**B.**    **Definitions**

Scope of Definitions.  For purposes of this Plan, except as expressly otherwise provided, or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan.  In all references herein to any parties, persons, entitles or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.    **Administrative Expense** shall mean any cost or expenses of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expense of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28 of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

2.    **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the

2

Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3.      **Allowed Administrative Expense** shall mean any administrative expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4.      **Allowed Unsecured Claim** shall mean an unsecured Claim that is or has become an allowed Claim.

5.      **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended and as codified in Title 11 of the United States Code.

6.      **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7.      **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075, and also referred to as the Federal Rules of Bankruptcy Procedure.

8.      **Business Day** means and refers to any day except Saturday, Sunday and any other day on which commercial banks in New Jersey are authorized by law to close.

9.      **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Alexander Figliolia is the Debtor.

3

10.     <u>Claim</u> shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured or unsecured.  All Claims as such term is defined in Section 101(5) of the Bankruptcy Code.

11.     <u>Class</u> shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

12.     <u>Code</u> shall mean Title 11 of the United States Code otherwise known as the Bankruptcy Code.

13.     <u>Confirmation</u> shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of Bankruptcy Code.

14.     <u>Confirmation Hearing</u> shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

15.     <u>Confirmation Order</u> shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

16.     <u>Creditor</u> shall mean any person that has a Claim against the Debtor that arose on or before the Petition date or a Claim against the Debtor's estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.  This includes all persons, corporations, partnerships or business entitles holding Claims against the Debtor.

17.     <u>Debt</u> means, refers to, and shall have the same meaning ascribed to it in Section 101(12) of the Code.

4

18.    **Debtor** shall mean Alexander Figliolia.

19.    **Disbursing Agent** shall mean Alexander Figliolia or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Order of Confirmation.

20.    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 et. seq. of the Bankruptcy Code.

21.    **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order.

22.    **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

23.    **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options or other rights to purchase any shares of stock in the Debtor.

24.    **Final Order** shall mean an Order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified or amended, and not being stayed, and the time to appeal from which or to seek review or re-hearing of which having expired, has become final and is in full force and effect.

25.    **Impaired,** when used as an adjective preceding the words "class of Claims" or "Claims of Equity Interest", shall mean that the Plan alters the legal, equitable or contractual rights of the member of that class.

26.    **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof of other entity.

5

27.    **Petition Date** shall mean the date on which the Debtor filed this Petition for Relief commencing the Chapter 11 Case.

28.    **Plan** shall mean the Plan of Liquidation filed in these proceedings, together with any additional modifications and amendments.

29.    **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Sections 507 (a)(2), (3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

30.    **Priority Tax Creditor** shall mean a creditor holding a priority tax Claim.

31.    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority in under such subsection.

32.    **Proceedings** shall mean the Chapter 11 Case of the Debtor.

33.    **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330 or 503(b) of the Bankruptcy Code.

34.    **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

35.    **Proponent** means Alexander Figliolia.

36.    **Reorganized Debtor** means the Debtor after confirmation of the Plan.

37.    **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the

6

Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

38.    <u>Unsecured Claim</u> shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code; or (ii) a Claim entitled to priority under Sections 503 and 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

39.    <u>Other Definitions</u>, a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Moreover, some terms defined herein are defined to the section in which they are used.

## C.    **Unclassified Claims**

Certain types of Claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class. The treatment of these claims is provided below.

## 1.    **Administrative Expenses and Fees**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the

7

Chapter 11 Case.  The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular Claimant agrees to a different treatment.

Court Approval of Professional Compensation and Expenses Required:  The Court must approve all professional compensation and expenses.  Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date.  Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan.  No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by Statute.

2.    **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires, and thus, this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments over a period not exceeding six years from the date of the assessment of such tax.

| Description | Amount Owed | Treatment |
|---|---|---|
| • State of NJ, Div. of Taxation<br>• Type of tax =TGI-EE for years<br>    2014 through 2016<br>• Date tax assessed = 04/2015<br>    through 04/2017 | Total amount claimed is $73,418.73 | • Pymt interval =quarterly based upon 5 year payout from May 25, 2017 the date of the Order of relief.<br>• Pymt amt/interval = quarterly, $5.000.00 with a balloon payment on May 1, 2022.<br>• Begin date =09/01/2019<br>• End date = 5 years following confirmation unless paid in full upon sale of the home.<br>• Interest Rate   =statutory, currently 8.25%<br>• Total Payout Amount=100% upon sale of home.  If the Debtor's share of sale proceeds after payment of the secured creditors and his exemption is sufficient, this claim will be paid upon sale.  If the proceeds are insufficient to pay the claim in full, the balance will be paid in equal quarterly payments of $5,000.00 with a balloon payment on May 1, 2022. |
| • State of NJ, Div. of Taxation<br>• Type of tax =GIT-ER<br>• Date tax assessed =12/2014 through 12/2016 | $2,707.57 | • Pymt interval =quarterly based upon 5 year payout from May 25, 2017, the date of the order of relief.<br>• Pymt amt/interval =$220.00 quarterly.<br>• Begin date =09/01/2019<br>• End date =September 1, 2021 following confirmation unless paid in full upon sale of the home.<br>• Interest Rate     Statutory, currently 8.25<br>• Total Payout Amount   = 100   upon sale of the home subject to claim being expunged.  If the Debtor's share of sale proceeds after payment of the secured creditor and of his exemption is sufficient, this claim will be paid upon sale.  If the proceeds are insufficient to pay in full, the balance will be paid in equal quarterly payments commencing September 1, 2019 and ending September 1, 2021 for any remaining balance. |

9

| | | |
|---|---|---|
| • Internal Revenue Service<br>• Type of tax =1040, years 2013 through 2016<br>• Date tax assessed =12/1/2014 through 11/27/2017 | $436,807.46 including interest. | • Pymt interval =quarterly based upon 5 year payout from May 25, 2017 the date of the Order of Relief<br>• Pymt amt/interval =$24,133.41<br>• Begin date =09/01/2019<br>• End date =5 years following the date of the Order of Relief unless paid in full upon sale of the home.<br>• Interest Rate    = 6%<br>• Total Payout<br>Amount  % = 100% upon the sale of the home. If the Debtor's share of sale proceeds after payment of his exemption is sufficient, this claim will be paid upon sale.  If the proceeds are insufficient to pay in full, the balance will be paid in equal quarterly payments of $24,133.41  over the balance of the life of the Plan with a balloon payment on May 1, 2022. |
| • Name = Internal Revenue Service<br>• Type of tax = FICA, FUTA, and civil penalties for period 3rd Quarter 2006, 2nd Quarter 2006, 1st Quarter 2007, 2nd Quarter 2008.<br>• Date tax assessed =12/28/2009 for civil penalties for FUTA and FICA | $235,933.88 (disputed) | • Pymt interval =quarterly<br>• Pymt amt/interval =$1,000.00<br>• Begin date =following determination of extent and validity of the claim<br>• End date =5 years after commencement of the case unless paid in full upon sale of home.<br>• Interest Rate    = 6%<br>• Total Payout<br>Amount  % =100% of allowed claim as may be allowed upon sale of home, in the event payment is made Debtor shall seek a refund based upon not being obligated for these taxes. If the Debtor's share of sale proceeds after payment of his exemption is sufficient, this claim will be paid upon sale.  If the proceeds are insufficient to pay in full, the balance will be paid in equal quarterly payments over the balance of the life of the Plan with a balloon payment in May 1, 2022. If a refund is received, it will be applied to any outstanding priority claim balances. |

D.    **Classified Claims and Interests**

1.    **Classes of Secured Claims**

Secured Claims are Claims secured by liens on property of the estate.  The following represent all

classes containing Debtor's secured pre-Petition Claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of:<br>•Name =Bank of New York Mellon<br>•Collateral description =105 Middletown Road, Holmdel, New Jersey<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =1st lien<br>•Principal owed =2,955,329.37.00<br>•Pre-pet.arrearage amount = $293,732.02<br>•Post-pet.arrearage amount = unknown, to be paid on sale<br>•Total claim amount =$3,474,709.06 as of February 6, 2019 | No | Yes | • Pymt interval =monthly<br>• Pymt amt/interval =$10,000.00 per month<br>• Balloon pymt =$3,474,709.06 plus any accrued interest or escrow advances prior to confirmation, and any unpaid post-confirmation interest upon sale of the property.<br>• Begin date =effective date of Plan<br>• End date = Upon sale of home.<br>• Interest rate     =Contract rate<br>• Total payout     =100<br>• Treatment of lien = Paid in full upon sale of home on or before January 31, 2020.  If a contract is pending on January 31, 2020 and closing will occur in 60 days, the time will be extended to enable the closing to take place.  If a contract of sale is not obtained prior to January 31, 2020, a public auction will take place within 60 days thereafter.  The claimant shall be permitted to credit bid its lien claim at the auction. |
| 2 | Secured Claim of:<br>•Name = Bank of NY Mellon<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =2nd mortgage lien<br>•Principal owed =$1,486,207.62<br>•Pre-pet. arrearage amount =$0<br>•Post-pet. arrearage amount =$0<br>•Total claim amount =$1,490.684.90 less payments made pending sale. | No | No | • Pymt interval =monthly<br>• Pymt amt/interval =$5,774.06<br>• Balloon pymt =$1,192,163.09<br>• Begin date =Upon confirmation<br>• End date =11/25/2030 as set forth in the mortgage<br>• Interest rate     =3.5%<br>• Total payout  % =100%<br>• Treatment of lien =No change to the loan document, remain as second mortgage to be paid in full upon sale of the home. |

| 3 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =3rd lien<br>•Principal owed =$30,297.98<br>•Pre-pet. arrearage amount =$30,297.98.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $30,297.98 as a result of a Certificate of Debt docketed August 10, 2006, Judgment DJ-201633-06 | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate % = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 3rd lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st and 2nd secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |
| 4 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2004<br>•Principal owed =$85,629.47<br>•Pre-pet. arrearage amount =$85,629.47.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $85,629.47 as a result of a Certificate of Debt docketed August 30, 2007, Judgment DJ-237902-07 | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims, and the 3rd secured claim and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate    = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 4th lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st, 2nd and 3rd secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |

12

| 5 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2006<br>•Principal owed =$103,774.27<br>•Pre-pet. arrearage amount =$103,774.27.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $103,774.27 as a result of a Certificate of Debt docketed January 15, 2009, Judgment DJ-16236-09. | No | Yes | • Pymt interval =none<br>• Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st, 2nd mortgage claims, the 3rd and 4th secured claims, and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate = Statutory<br>• Total payout - % =100% upon sale of home.<br>•Treatment of lien = remain as 5th lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st, 2nd, 3rd and 4th secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |
| 6 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2008<br>•Principal owed =$131,900.00<br>•Pre-pet. arrearage amount =$131,900.00.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $131,900.00 as a result of a Certificate of Debt docketed November 29, 2010, Judgment DJ-303034-10. | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims, the 3rd, 4th and 5th secured claims, and the cost of sale. If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>• Interest rate = Statutory<br>• Total payout - % =100% upon sale of home.<br>•Treatment of lien = remain as 6th lien on real property to be paid from the Debtor's share of the sale proceeds. If there are insufficient sale proceeds after payment of the 1st, 2nd 3rd, 4th and 5th secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim |

| 7 | Secured Claim of:<br>•Name = State of New Jersey, Division of Taxation<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =TGI-EE taxes for 2005, 2007, 2009 and 2010.<br>•Principal owed =$251,281.46<br>•Pre-pet. arrearage amount =$251,281.46.<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $251,281.46 as a result of a Certificate of Debt docketed May 10, 2012, Judgment DJ-99386-12. | No | Yes | • Pymt interval =none<br>•Pymt amt/interval=$0<br>• Balloon pymt= N/A<br>• Begin date = None<br>• End date =sale of home if there are sufficient monies available from the Debtor's share of the proceeds after paying the 1st and 2nd mortgage claims and the 3rd, 4th, 5th and 6th secured claims, and the cost of sale.  If there are insufficient monies, the claim will be treated as a general unsecured claim as per prior order of the Court.<br>•Interest rate    = Statutory<br>• Total payout-% =100% upon sale of home.<br>•Treatment of lien = remain as 7th lien on real property to be paid from the Debtor's share of the sale proceeds.  If there are insufficient sale proceeds after payment of the 1st, 2nd, 3rd, 4th, 5th, and 6th secured claims, and the real estate broker fees, the balance of the claim will be treated as a general unsecured claim. |
| 8 | Secured Claim of:<br>•Name = IRS<br>•Collateral description =105 Middletown Road, Holmdel, NJ<br>•Collateral value =$8,800,000.00<br>•Claimed Priority of security int. =3rd lien<br>•Principal owed =$10,900.00<br>•Pre-pet. arrearage amount =$10,900.00<br>•Post-pet. arrearage amount =$0<br>•Total claim amount = $10,900.00 | No | Yes | • Pymt interval =quarterly<br>•Pymt amt/interval=$389.28<br>• Balloon pymt= N/A<br>• Begin date =06/1/2019<br>• End date =sale of home if there are insufficient proceeds to pay the claim after secured class 1, 2, 3 4, 5, 6 and 7, it will be treated as an unsecured claim. in full the balance will be paid only 5 years, from the Order of Relief<br>• Interest rate % =4%<br>• Total payout-% =100% upon sale of home if funds are available after secured claims 1, 2, 3, 4, 5, 6, and 7.<br>•Treatment of lien = remain as 8th lien on real property to be paid in full from Debtor's share of the sale proceeds.  If there are insufficient sale proceeds the claim will be paid in full within 4 years of Order of Relief. Any deficiency following the sale will be treated as a priority claim. |

14

| 9 | Secured Claim of:<br>•Name =City of NY<br>•Collateral description<br>=None listed<br>•Collateral value = $0<br>•Claimed Priority of security int.<br>=None listed<br>•Principal owed =$375,000.00<br>•Pre-pet. arrearage amount<br>=N/A<br>•Post-pet. arrearage amount<br>=N/A<br>•Total claim amount =$375,000.00 | No | Yes<br>Debtor will<br>seek to modify<br>claim to a<br>general<br>unsecured<br>claim because<br>it does not<br>represent a<br>penalty owed<br>by the Debtor | • Pymt interval =None<br>• Pymt amt/interval =None<br>• Balloon pymt =None<br>• Begin date =N/A<br>• End date =N/A<br>• Interest rate    =N/A<br>• Total payout<br>  _% =N/A<br>• Treatment of lien =No lien |

## 2.    <u>Priority Non-Tax Claims</u>

Certain priority non-tax Claims that are referred to in Code Sections 507(a)(3), (4), (5),

(6), and (7) are entitled to priority treatment. There are no such claims

## 3.    <u>Class of General Unsecured Claims</u>

General unsecured Claims are unsecured Claims not entitled to priority under Code

Section 507(a).  These Claims are to be treated as follows:

Debtor's general unsecured claims:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 10 | General unsecured claims<br>• Total amt of claims<br>=$8,408,120.40 | YES | • Pymt interval =One time<br>• Pymt amt/interval =$50,000.<br>• Begin date =<br>• End date =The payment will be made in full from Debtor's share of the proceeds of the sale of the home after payment of all secured claims, Debtor's exemption, administrative claims, costs of closing, and priority claims.  If the claim is not paid in full upon sale, the balance due will be paid as a lump sum  May 27, 2022, 5 years after the filing of the petition. The amount paid will not be reduced by post confirmation payments required to be made to the United States Trustee.<br>• Interest rate    =0% |

15

4.    **Class(es) of Equity Interest Holders**

The members of this class will be treated as follows:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 1 | Alexander Figliolia | Yes | Retain only exemption in personal property. The Debtor will use his exemption in the real property to fund the Plan. |

**E.    Acceptance or Rejection of Plan**

Each impaired class of creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan, if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

**F.    Means of Effectuating the Plan.**

1.    Funding the Plan.    The Plan will be funded by the following: The Debtor will utilize the proceeds of the sale of his home located at 105 Middletown Road, Holmdel, New Jersey, that is owned jointly with his non-debtor spouse, his Social Security income and his consulting income from Alex Figliolia Water & Sewer, LLC to fund his Plan.

2.    Post-Confirmation Management.    The Debtor shall manage his own affairs following confirmation.

16

3.    Disbursing Agent.    Alexander Figliolia shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan including the monthly payments by the Debtor on account of the first and second mortgages which shall be paid by the Debtor directly.    The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

4.    Time and Method of Distributions.    Distributions to the Class 5 claimants will be made quarterly commencing on the seventh month following confirmation of the Plan, and after all allowed administrative claims and priority claims have been paid in full. The amount to be paid shall be reduced by the quarterly fee due to the United States Trustee.   Subject to the provisions of Bankruptcy Rule 2002(g), and except as provided in the Plan, distributions to holders of allowed claims will be made at the address of each such holder set forth on the schedules unless superseded by the address set forth on the Proofs of Claims filed by such holders, or at the last known address of such holder if no Proof of claim is filed, or if the Distribution Agent or Debtor has been notified in writing of a change of the address.   Upon final distribution, the Distribution Agent shall take such actions as is necessary to obtain an Order closing the bankruptcy case pursuant to the Bankruptcy Code unless the case has already been closed.

5.    Time Bar to Cash Payment.   Any unclaimed property will be deemed paid to such entitled holder, and such holder will not be entitled to any future distributions under the Plan.   Any unclaimed property shall constitute available cash, and shall be redistributed to holders of allowed claims in such class on the date of the next distribution.   If the final distribution date has passed, such unclaimed property shall escheat to the State of New Jersey. The Distribution Agent shall have no obligation to make further distributions to any holder if a

17

prior distribution becomes unclaimed property. The distribution otherwise payable to such holder, shall be redistributed to holders of allowed claims in such class.

6.      DeMininus Distributions.      Any other provision of the Plan notwithstanding, the Debtor shall not be required to make interim distributions to any creditor in an amount less than $10.00 or final distribution to any creditor in an amount less than $20.00. Cash allocated to an allowed claim but withheld from an interim distribution pursuant to this subsection shall be held by the Distribution Agent for the account of, and future distribution, to the holder of such allowed claim. Cash allocated to an allowed claim, but withheld from final distribution pursuant to this section, shall be distributed as provided in the final distribution provision, and the holder of such allowed claim shall have no further interest therein or rights with respect thereto.

7.      Finality of Distributions.      All distributions made prior to the effective date pursuant to any Order of the Bankruptcy Court, or after the effective date pursuant to the provisions of the Plan, shall be deemed final, and no persons shall have any right to require or petition the Bankruptcy Court for a disgorgement of any such distribution.

8.      Treatment of Disputed Claims:

i)      Estimation of Claims. The Debtor may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code. The Bankruptcy Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including without limitation, an objection during the pendency of an appeal relating to any such objection. Subject to the provisions of Section 502(j) of the Bankruptcy Code, in the event

18

the Bankruptcy Court estimates a contingent or disputed claim, the amount so estimated will constitute the allowed amount of such claim. If the estimated amount does not constitute a maximum limitation on the amount of such claim, the Debtor may pursue supplementary proceedings to object to the allowance of such claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Upon the allowance, in whole or in part, of any contingent or disputed claim, the Debtor shall distribute to the claimant, its pro-rata share of the distributions made under the Plan.

ii) Payments and Distributions on Disputed Claims. The Debtor shall maintain a reserve on account of any distributable amounts required to be set aside on account of disputed claims as necessary to provide required distributions if such claim were an allowed claim. At such time as a disputed claim becomes, in whole or in part, an allowed claim, the Debtor may, but shall not be required to, distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan. Such distribution, if any, will be made on the earlier of the next interim distribution date or ninety (90) days of the date the Order or Judgment of the Bankruptcy Court allowing such disputed claim becomes a Final Order. No interest shall be paid on the disputed claims that later become allowed, or with respect to any distribution to such holder.

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

A.    **Executory Contracts and Unexpired Leases**

1.    **Assumptions**

The following are the unexpired Leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan:  NONE

On the effective date each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.   The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

2.    **Rejections**

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected.

The Order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.   If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED UPON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS Not applicable because none have been rejected.**

20

Any Claim based on the rejection of an executory contract or an unexpired lease will be barred if the Proof of Claim is not timely filed, unless the Court later orders otherwise.

**B.**    **Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is  not  subject to governmental regulatory commission approval of its rates.

**C.**    **Retention of Jurisdiction**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such Orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized Debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**D.**    **Procedures for Resolving Contested Claims**

Objections to Claims and interests, except for those Claims more specifically deemed allowed in the Plan, may be filed by the reorganized Debtor or any party in interest up to and including sixty (60) days following the entry of the Order of Confirmation.  With respect to disputed Claims or interest, the Disbursing Agent will hold in a separate interest bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim or interest, as listed either in the Debtor's schedules or the filed Proof(s) of Claim.    This

21

provision to hold funds in a reserve account shall not apply to unsecured claims. If a disputed unsecured claim is not resolved prior to distribution, the unsecured pro-rata share will be held in escrow by the Disbursement Agent.

## E.    Notices Under the Plan

All notices, requests or demand with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to:  Attorney for the Debtor/Plan Proponent:

Bunce D. Atkinson, Esq.
Atkinson & DeBartolo, P.C.
P.O. Box 8415
Red Bank, New Jersey 07701
Phone: 732-530-5300.

AND

Alexander Figliolia*
105 Middletown Road
Holmdel, NJ 07733-2205

*Upon sale of the real property, a new address will be posted on the docket for service of
 notice.

**IV.**

**EFFECT OF CONFIRMATION OF PLAN**

## A.    Discharge

This Plan provides that upon completion of the Plan or upon Court Order, the Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. §1141. However, any liability imposed by the Plan will not be discharged. If Confirmation of this Plan does not occur, the Plan shall be deemed null and void. In such

event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate. The provisions of this Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan upon confirmation thereof.

**B.    Revesting of property in the Debtor**

Except as provided in Section IV.D hereinafter, and except as provided elsewhere in the Plan, the Confirmation revests all of the property of the estate in the Debtor. All property revested in the Debtor shall be free of all judgment liens if any, and Debtor shall be entitled to have such judgment liens removed or record by the Clerk of the Superior Court of New Jersey.

**C.    Modification of the Plan**

The Proponent of the Plan may modify the Plan at any time before Confirmation. However, the Court may require a new Disclosure Statement or revoting on the Plan, if Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan had not been substantially consummated; and (2) the Court authorizes the proposed modification after notice and a hearing.

**D.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan,

23

will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

**E.    Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 *U.S.C.* §1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed or closed pursuant to a Final Decree.  The Debtor shall be authorized to obtain a Court Order closing the case prior to completion of the Plan in an effort to reduce quarterly fees.

BY: _____
      ALEXANDER FIGLIOLIA

Dated:

24