UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Case No. 17-20755 (MBK) |
|  | Chapter 11 |
| Alexander Figliolia, |  |
|  | The Honorable Michael B. Kaplan |
| Debtor. |  |
|  | Hearing Date: July 18, 2019 at 10:00 a.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO
THE ADEQUACY OF THE DEBTOR'S THIRD MODIFIED DISCLOSURE
STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE
DESCRIBING THE LIQUIDATION CHAPTER 11 PLAN PROPOSED BY
ALEXANDER FIGLIOLIA**

The Acting United States Trustee (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby asserts this objection ("Objection") to the adequacy of the *Third Modified Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing the Liquidation Chapter 11 Plan Proposed By Alexander Figliolia* ("Third Modified Disclosure Statement") (Docket No. 139), and in support of the Objection, respectfully represents as follows:

## **BACKGROUND**

1. On May 25, 2017 ("Petition Date"), Alexander Figliolia ("Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. *See* Docket No. 1.

2. The Debtor continues to manage his property and his financial affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor co-owns real property located at 105 Middletown Road, Holmdel, NJ. *See* Docket No. 12, Schedule A/B. The real property is valued at $4,900,000. *See id*. Schedule D identifies mortgages, tax liens and judgments totaling $10,097,144.95. *See* Docket Nos. 1 and 12.

4. On May 17, 2019, over a year after the Debtor filed his *Original Plan of Liquidation* and two years from the Petition Date, the Debtor filed the Third Modified Disclosure Statement and corresponding *Third Modified Plan of Liquidation*. *See* Docket No. 139.

5. The Third Modified Disclosure Statement provides that the Debtor is liquidating and will fund the plan with a sale of the Debtor's real property as well as his consulting income and Social Security income. *See* Docket No. 139, page 25. The real property, valued on the Liquidation Analysis at $4,900,000, is listed for sale for $8,800,000. *See id*. at pages 25 and 34. If the real property is not under contract by January 31, 2020, the Debtor will auction the property. *See id*. at page 25. The dividend to unsecured creditors is less than 1% and payment will be made as a lump sum either upon sale of the real property, or if the sale proceeds are insufficient, in May 2022. *See id*. at page 24.

6.    The Debtor's most recently filed monthly operating report ("MOR") is for May 2019. *See* Docket No. 144. The May 2019 MOR shows negative cash flow of ($7,339.91). *See id*. Similarly, the April 2019 MOR shows negative cash flow of ($7,689.55). *See* Docket No. 143.

7.    Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*), 33 F.2d 294, 295-96 (3d Cir. 1994) (nothing that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

## LEGAL ANALYSIS

8.    Pursuant to Section 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" to allow parties to make an informed judgment about a plan of reorganization or liquidation. Section 1125(a)(1) defines "adequate information" as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

See 11 U.S.C. § 1125.

9. Full disclosure is a fundamental policy in the reorganization process. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1980), *cert. denied*, 109 S. Ct. 495 (1988) ("[W]e cannot overemphasize the Debtor's obligation to provide sufficient data to satisfy the code standard of 'adequate information.'"); s*ee also In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("Given the necessity for adequate information in the Disclosure Statement and the paramount position Section 1125 occupies in the Chapter 11 process, there is little, if any, room for harmless error.").

10. The Third Modified Disclosure Statement provides that the Debtor is liquidating and will fund the plan with a sale of the Debtor's real property as well as his consulting income and Social Security income. *See* Docket No. 139, page 25. The Real Property, valued on the Liquidation Analysis at $4,900,000, is listed for sale for $8,800,000. *See id*. at pages 25 and 34. Despite proposing a sale in the Original Plan of Liquidation, filed over a year ago, the Debtor has not described the marketing efforts or whether there have been any offers to date.

11. The Debtor's Cash Flow Analysis requires additional information. Despite proposing a sale or auction during the first quarter of 2020, the Debtor's Cash Flow Analysis shows continued payments on the first and second mortgage for the first year of the plan, totaling $15,774.06/month, as well as utilities in the amount of $4,600/month, homeowners insurance in the amount of $2,995.33/month and taxes in the amount of $4,500/month. *See* Docket No. 136, page 55. The Debtor does not explain why these payments continue for 12 months.

12. The Cash Flow Analysis shows that in month 13 through the end of the plan, the Debtor anticipates a monthly rental expense of $8,000, monthly utility expense of $2,600 and

Case 17-20755-MBK    Doc 147    Filed 07/03/19    Entered 07/03/19 15:48:56    Desc Main
Document    Page 5 of 7

monthly taxes of $13,000. *See id*. at pages 56 and 57. The Debtor does not provide any explanation as to why he needs to expend these amounts after vacating the real property.

13. This information is relevant as the Debtor is proposing to pay unsecured creditors a total of $50,000 to be shared pro rata, resulting in less than 1% dividend.

14. In addition to the objections to adequacy of the Third Modified Disclosure Statement, courts have held that where a proposed plan is not confirmable on its face, it will not approve a disclosure statement with respect to that plan because to do so would be an exercise in futility. *See In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994); *In re Washington Associates*, 141 B.R. 275 (Bankr. S.D.N.Y. 1992); *In re Eastern Marine Electric Co-op, Inc.*, 125 B.R. 392 (Bankr. D. Me. 1991); and *In re McCall*, 44 B.R. 242, 243 (Bankr. E.D. Pa. 1984).

15. Confirmation of a chapter 11 plan requires that the debtor meet all the requirements of Section 1129(a). *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000). Under Section 1129(a)(11), a debtor must demonstrate that the plan is feasible. A debtor has to establish concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under a proposed plan. *See Trans Max Tech, Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006). Here, the Debtor must show he can make payments on the Effective Date and over the life of the plan.

16. The Debtor states he will pay administrative claims of $35,000 on the Effective Date, unless otherwise agreed. There is no indication that claimants agreed to be paid later. The Debtor states he will have sufficient cash on the Effective date from "cash in DIP account now" and "additional cash DIP will accumulate from net earnings between now and Effective Date." *See* Docket No. 139, page 35. The Debtor states he has $10,638.08 in cash and will have additional

available cash of $24,361.92 by the Effective Date, totaling $35,000. *See id*. However, the Debtor's most recently filed MOR shows the Debtor had $9,129.53 in his account as of May 31, 2019. *See* Docket No. 144. Further, the Debtor's May 2019 MOR shows the Debtor had negative cash flow of ($7,339.91). *See id*. Accordingly, the Debtor has not established the ability to make payments on the Effective Date.

17. Further, the Debtor has to show the ability to make payments over time. The Debtor's Cash Flow Analysis shows anticipated total monthly income of $41,700. *See* Docket No. 139, page 55. The Debtor's itemized expenses total $41,561.46. *See id*. However, the Debtor's May 2019 MOR reflects that the Debtor's receipts for the month total $24,700. *See* Docket No. 144. If the Debtor's income does not increase, the Debtor will have a monthly shortfall of approximately ($16,861). The Debtor has not established concrete evidence that he will have an increase of over $16,000 in his monthly earnings and, therefore, no evidence that he can perform under the plan.

Reservation of Rights

18. The U.S. Trustee leaves the Debtor to meet his burden and reserves any and all rights, remedies and obligations to, inter alia, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required to assert such other grounds as may become apparent upon further factual discovery.

## **CONCLUSION**

WHEREFORE, it is respectfully submitted that the Court not approve the Third Modified Disclosure Statement, and grant such other relief as the Court deems just and proper.

                Respectfully submitted,

                ANDREW R. VARA
                ACTING UNITED STATES TRUSTEE
                REGION 3

                By:    */s/ Lauren Bielskie*
                          Lauren Bielskie
                          Trial Attorney

Dated: July 3, 2019