UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : Case No. 17-20755 (MBK) |
| | : |
| | : Chapter 11 |
| Alexander J. Figliolia, | : |
| | : The Honorable Michael B. Kaplan |
| Debtors. | : |
| | : Hearing Date: September 19, 2019 at 10:00 a.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO
CONFIRMATION OF THE SECOND MODIFIED PLAN OF LIQUIDATION
PROPOSED BY ALEXANDER J. FIGLIOLIA**

The Acting United States Trustee (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby asserts this objection ("Objection") to the confirmation of the *Amended Third Modified Plan of Liquidation* ("Amended Third Modified Plan") (Docket No. 152), and in support of the Objection, respectfully represents as follows:

**BACKGROUND**

1.     On May 25, 2017 ("Petition Date"), Alexander J. Figliolia ("Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). *See* Docket No. 1.

2. The Debtor remains in possession of his property and management of his affairs pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor co-owns real property located at 105 Middletown Road, Holmdel, NJ ("Real Property"). *See* Docket No. 12, Schedule A/B. The real property is valued at $4,900,000. *See id*.

4. On August 14, 2019, the Debtor filed the *Amended Third Modified Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing the Liquidation Chapter 11 Plan Proposed by Alexander Figliolia* ("Amended Third Modified Disclosure Statement"), which includes as an Exhibit the Amended Third Modified Plan - the subject of this Objection. *See* Docket No. 152 at page 60. The Amended Third Modified Plan is not separately filed.

5. The Amended Third Modified Plan provides, in relevant part that: (A) this is a plan of liquidation; (B) the Debtor will sell the Real Property by January 31, 2020, and use the proceeds to pay all claims; (C) if the Real Property does not sell, the Property will be put to auction; (D) if sale proceeds are insufficient, priority tax claims will be paid quarterly; (E) unsecured claims, totaling $8,408,120.40, will share in a distribution of $50,000 (representing a less than one percent distribution), which will either be paid from sale proceeds or as a lump sum on May 27, 2022; (F) until such time as the Real Property is sold, and in the event sale proceeds are insufficient to make all payments, plan payments will be made from the Debtor's future earnings, including social security; (G) the Effective Date is defined as "the day on which the Confirmation Order becomes final".[1] *See* Docket No. 152

6. The Cash Flow Analysis attached to the Amended Third Modified Disclosure Statement shows income of $41,700/month for months 1-12, and $37,700 for months 13-36. *See*

---

[1] Elsewhere in the Second Modified Plan, the Effective Date is described as "fifteen (15) days after the Order of Confirmation."

2

Docket No. 152. The total expenses in months 1-12 is $41,561.46/month, and in months 13-36 the total is $36,767.07. *See id*. Despite stating that the Real Property will be sold in January 2020 (month 5 of the plan if confirmed in September 2019), or auctioned thereafter, the projections in months 6-12 of the Amended Third Modified Plan continue to show payments of $10,000/month on account of the first mortgage, $5,774.06/month on account of the second mortgage, $4,600/month on account of utilities, $2,995.33/month on account of home insurance, and $4,500/month on account of taxes. *See id*. There is a footnote that states "[t]he payment on the mortgage although listed for 12 months, will cease upon sale of the home. At that time, the rent payments of $8,000 per month will commence saving approximately $7,774.06 per month. Additionally, home insurance of $2,995.33 will be eliminated following the sale of the home. Utilities will also be reduced. However, monthly income tax will increase as set forth in months 13-36 because the Debtor will no longer have a large mortgage deduction." *See id*. In months 13-36, the expenses include $8,000/month in rent, $2,600/month in utilities, and $13,000/month in taxes. *See id.*

7. Despite filing the Amended Third Modified Plan in August 2019, the Debtor attaches the February 2019 MOR. *See id*.

8. The Debtor's most recently filed Monthly Operating Report ("MOR") is for July 2019. *See* Docket No. 156.

9. The July 2019 MOR shows cash beginning of the month of $2,585.72, total receipts of $15,400 and total disbursements of $14,664.43, resulting in net cash flow of $735.57. *See id*. The June 2019 MOR shows cash beginning of the month of $9,129.53, total receipts of $8,700 and total disbursements of $15,253.81, resulting in negative net cash flow of ($6,553.81). *See* Docket No. 155.

10. An internet search shows the Real Property is currently listed for $5,900,000.

## LEGAL ANALYSIS

11. Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*), 33 F.2d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

12. Confirmation of a chapter 11 plan requires that the Debtor meet all requirements of Section 1129(a). *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).

### A. **Feasibility – 11 U.S.C. § 1129(a)(11)**

13. Section 1129(a)(11) requires a debtor to demonstrate the plan is feasible. *See generally*, 11 U.S.C. § 1129(a)(11). The standard of proof required by a debtor to prove a chapter 11 plan's feasibility is by a preponderance of the evidence. *See In re Rubicon US REIT, Inc.*, 434 B.R. 168, 174 (Bankr. D. Del. 2010); *In re Trans Max Tech., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006). The debtor must present evidence to sufficiently demonstrate that a plan has a reasonable chance of succeeding. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226. The debtor has to establish concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under a proposed plan. *See Trans Max Tech., Inc.*, 349 B.R. at 92.

14. In addition, the Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. *See Greate Bay Hotel & Casino, Inc.,* 251 B.R. at 226.

15. "The purpose of § 1129(a)(11) 'is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor could possibly attain after confirmation.'" *See In re Sound Radio, Inc.*, 103 B.R. 521, 522 (D.N.J. 1989), *aff'd sub nom Appeal of Robinson*, 908 F.2d 964 (3d Cir. 1990) (citation omitted).

16. The facts and circumstances of this case demonstrate that the Amended Third Modified Plan is not feasible and, as a result, fails to qualify for confirmation.

17. As an initial matter, the Debtor needs $35,000 for payments on the Effective Date. *See* Docket No. 152. The Debtor's July 2019 MOR shows only $3,311.29 cash on hand, with net cash flow of only $735.57. *See* Docket No. 156. Accordingly, the Debtor does not show the ability to make payments on the Effective Date.

18. Until the Real Property sells, the Debtor will have to make monthly plan payments of at least $25,947.80 as well as regular monthly expense payments of $15,280.33. *See* Docket No. 152. This totals $41,228.13/month. The Debtor's most recently filed MOR, July 2019, shows total receipts of $15,400. *See* Docket No. 156. The June 2019 MOR shows total receipts of $8,700. *See* Docket No. 155. The Debtor's MORs for the past six months show average total receipts of $24,816.67. *See* Docket Nos. 136, 137, 143, 144, 155 and 156. This is woefully inadequate to make the projected monthly payments.

19. Because the Debtor does not show an ability to make plan payments, success of the Amended Third Modified Plan depends on a sale of the Real Property for more than $6,800,000. *See* Docket No. 152. The Debtor's Real Property appraised for $4,900,000. *See id.* Despite this

5

figure, the Debtor listed the Real Property for $8,800,000, which the Debtor states is based on the recommendation of the retained realtor. *See id.* Debtor lowered the list price to $7,200,000 in or about July 2019. *See id.* An internet search shows the Real Property is currently listed for $5,900,000. The Debtor did not disclose whether there has been any interest in the Real Property or any offers.

20. As the Plan does not comply with Section 1129(a)(11), confirmation should be denied.

**B. Good Faith Requirement – 11 U.S.C. § 1129(a)(3)**

21. Pursuant to 11 U.S.C. § 1129(a)(3), a plan must be "proposed in good faith and not by any means forbidden by law."

22. The Bankruptcy Code does not define good faith under Section 1129(a)(3), but the Third Circuit has stated that "'for purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purpose of the Bankruptcy Code.'" *In re Combustion Engineering, Inc.*, 391 F.3d 190, 246-47 (3d Cir. 2004) (citations omitted). Good faith has also been described as requiring that "there was fundamental fairness in dealing with the creditors." *In re Lernout & Hauspie Speech Products N.V.*, 308 B.R. 672, 675 (D. Del. 2004). The requirement of good faith "must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1300 (11th Cir. 2001) (citation omitted). The burden to establish good faith is on the plan proponent. *In re PPI Enterprises, Inc.*, 324 F.3d 197, 211 (3d Cir. 2003).

23. The Debtor has been in bankruptcy since May 2017. The Debtor is now on his Amended Third Modified Plan. None of the plans filed by the Debtor show feasibility as the

6

Debtor's plan projections are not supported by the MORs. At all times, the Debtor has remained in possession of Real Property valued as of the Petition Date at $4,900,000.

24. Despite valuing the Real Property at $4,900,000, the Real Property was originally listed for sale at $8,800,000. It is currently listed for sale at $5,900,000. Even if the Real Property sold at full asking price, the realtor would be entitled to a commission of 4%, resulting in net sale proceeds of $5,664,000. The secured claims alone total $5,240,761.18, without accounting for interest that accrued since February 2019. It is not clear if a sale would pay anything beyond secured claims.

25. Again, the Debtor identifies unsecured claims totaling $8,408,120.40. *See* Docket No. 152. The Debtor proposes a one-time payment of $50,000 to be shared pro rata. *See id.* This represents a less than 1% distribution to unsecured. This payment is not scheduled to be made until May 27, 2022. *See id.* Again, the plan projections show that the Debtor anticipates gross monthly income between $47,700 and $37,700, with monthly expenses between $41,561.48 and $36,767.00 for the life of the plan, all while making a nominal distribution to unsecureds that will not be funded until two and a half years from now. *See id.*

26. Based on the Debtor's inability to propose a feasible plan despite filing the Amended Third Modified Plan, which proposes a pro rata distribution of $50,000 on account of $8,408,120 in unsecured debt, while projecting monthly expenses that exceed $40,000, it does not appear that the Plan was filed in good faith pursuant to 11 U.S.C. § 1129(a)(3).

**Reservation of Rights**

27. The U.S. Trustee leaves the Debtor to meet his burden and reserves any and all rights, remedies and obligations to, inter alia, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be

deemed necessary or as may be required to assert such other grounds as may become apparent upon further factual discovery.

## **CONCLUSION**

WHEREFORE, it is respectfully submitted that the Court deny confirmation and grant such other relief as the Court deems just and proper.

        Respectfully submitted,

        ANDREW R. VARA
        ACTING UNITED STATES TRUSTEE
        REGION 3

By:   */s/ Lauren Bielskie*
        Lauren Bielskie
        Trial Attorney

Dated: September 12, 2019